IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WELL GO USA, INC. <br> A TEXAS CORPORATION, <br><br> PLAINTIFF, <br><br> VS. <br><br> UNKNOWN PARTICIPANTS IN FILESHARING SWARM IDENTIFIED BY HASH: B7FEC872874D0CC9B1372ECE-5ED07AD7420A3BBB <br><br> DEFENDANTS. | § § § § § § § § § § § § § | C.A. NO.: 4:11-cv-00554 A |

## MOTION FOR LEAVE TO TAKE EXPEDITED DISCOVERY

Plaintiff, by counsel, respectfully moves this Court for leave to take expedited discovery from the nonparty internet service providers listed in Exhibit 1. This discovery shall be limited to the identifying information of service providers' subscribers whose accounts were witnessed as being involved in the joint acts of copyright infringement detailed in Plaintiff's Complaint. The only impediment to discovery at this stage is a provision of the Cable Communications Policy Act that prohibits the disclosure of personally identifiable information of service providers' subscribers without a court order. 47 U.S.C. § 551.

## BACKGROUND

With the enactment of the Digital Millennium Copyright Act ("DMCA"), Congress provided copyright holders a simple and efficient mechanism to obtain the identities of alleged infringers: the Copyright Act subpoena provision. 17 U.S.C. § 512(h). This provision enables copyright holders to seek redress for infringement directly from the responsible parties, typically

alleviating the need for litigation altogether. Per this provision, a copyright holder can file a "512(h) subpoena" with the Clerk of any United States District Court, then serve the subpoena upon the internet service provider that is providing internet service to the alleged infringer. *Id.* No other legal actions need exist for the issuance of such a subpoena nor does the issuance require prior judicial oversight. *Id.* Upon receiving this type of subpoena, "the service provider shall expeditiously disclose to the copyright owner ... the information required by the subpoena..." *Id.* This information must be narrowly tailored to cover only identifying information. *Id.* Notably, this provision is intended to operate, "notwithstanding any other provision of law." *Id.* Courts have interpreted this clause as it pertains to the Cable Act in particular, clarifying that § 512(h) does indeed supersede other statutes such as the Cable Act. *Recording Indus. Ass'n v. Charter Communs., Inc.* 393 F.3d 771 (8th Cir. Mo. 2005)

On its face, this Copyright Act subpoena provision appears perfectly suited for the matter at hand. By providing the contact information of culpable internet subscribers, this provision obviates the need for this sort of John Doe lawsuit altogether. Indeed, this process worked well for some five years. But with the explosive growth of the internet, so too was there an explosive increase in internet piracy.[1] Service providers soon became deluged with 512(h) records requests resulting from the infringing acts of countless numbers of their customers. In response, one of the nation's largest service providers, Verizon, proposed a limitation to the statute during a 2003 trial in Washington D.C., putting forth the notion that the law did not apply to copyright infringers engaged in peer-to-peer file sharing, which has since become the most egregious,

---

[1] See *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004; *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) and *MGM Studios, Inc. v. Grokster, Ltd.* 545 U.S. 913 (2005)
Grokster

evasive and popular type of internet infringement ever known.[2] *In re Verizon Internet Servs.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2003) ("Verizon I") The D.C. District Court found this contention preposterous, stating, "There is no logical connection between the line Verizon seeks to draw and the objectives Congress sought to achieve through the DMCA. Verizon's reading would thus undermine the balance Congress established in the DMCA, and does not comport with the Act's purpose and history." *Id.*

Later, the D.C. Circuit Court reached the opposite conclusion and overturned this ruling on appeal. *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229 (D.C. Cir. 2003) ("Verizon II"). In doing so, the court deprived copyright holders of any means to seek to redress for peer-to-peer infringement in the D.C. Circuit, except the "sue first and ask questions later" approach of John Doe lawsuits such as this one. Most service providers now refuse to comply with 512(h) subpoenas, citing the D.C. decision, and agree only to comply with traditional Rule 45 subpoenas, and then only if they are issued pursuant to a court order.

This is an extremely costly and time-consuming alternative. If every infringer must first be sued before she can be contacted about her wrongdoing, copyright holders would never have the means, nor would the courts, to permit any meaningful avenue for recourse regarding the harm suffered daily from internet piracy.

## **ARGUMENT**

The Fifth Circuit has yet to impose any restrictions on section 512(h) of the Copyright Act. Thus, Plaintiff routinely issues Copyright Act subpoenas to numerous service providers that continue to accept the statute as written. Because of counsel's course of dealing with the listed service providers in other cases, Plaintiff does not seek a ruling to enforce 17 U.S.C. § 512(h)

---

[2] Peer-to-peer file sharing was at the heart of the *Napster*, *Aimster* and *Grokster* cases.

(the Copyright Act subpoena provision) at this time. Instead, Plaintiff merely seeks leave to serve Rule 45 subpoenas on those service providers refusing to accept § 512(h) subpoenas.

This discovery is solely for the purpose of determining the identities of the subscribers whose accounts were used in the infringing activities detailed in Plaintiff's Complaint. Without this information, Plaintiff has no means to pursue its infringement claims or otherwise seek redress for the unlawful acts at issue. Federal district courts throughout the country have granted expedited discovery in lawsuits similar to this one.[3] In the cases cited and others like them, plaintiffs have obtained the identities of persons from service providers through expedited discovery using information similar to that gathered by Plaintiff in the instant case and they have used that information as the basis for their subpoenas to the service providers. Plaintiff respectfully requests that this Court grant this motion for expedited discovery upon those service providers listed in Exhibit 1.

Plaintiff specifically requests permission to serve a Rule 45 subpoena on these service providers for the narrow purpose of obtaining the true name, address, telephone number, e-mail address, and Media Access Control ("MAC") address (data available only to the service providers that identifies the specific computer used for the infringing activity) of each subscriber that it has identified to date and those it identifies in the future during the course of this litigation. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot pursue its lawsuit to protect its film from ongoing and repeated infringement. Additionally, this information is very easily obtainable by the nonparty service providers. Larger, more sophisticated service providers, such as Verizon, have even automated

---

[3] Cases include *Disney Enterprises, Inc., et al. v. Does 1-18*, Case No. 05-RB-339(CBS) (D. Colo.) (Shaffer, C.); *Paramount Pictures Corporation, et al. v. Does 1-8*, Case No. 05-535 (D.N.J.) (Wolfson, F.); *Twentieth Century Fox Film Corporation, et al. v. Does 1-9*, Case No. 04-2006 (EGS) (D.D.C.) (Sullivan, E.); *Warner Bros.*

this lookup process and used it for at least two years to notify subscribers of infringement complaints within only 24 hours of Verizon receiving the complaint. *See* Exhibit 2, Verizon Infringement Notice with receipt/notification timestamps highlighted.

If the Court grants this Motion, Plaintiff will serve necessary subpoenas requesting the identifying information in a timely manner. If a service provider cannot identify one or more of the subscribers but does identify an intermediary provider as the entity providing internet access to the responsible subscriber, Plaintiff will then serve a subpoena on that provider requesting the identifying information for the relevant subscriber within a reasonable timeframe. In either case, these service providers will be able to notify their subscribers that this information is being sought, and each subscriber will have the opportunity to raise any objections before this Court prior to the return date of the subpoena. Thus, to the extent that any subscriber wishes to object, he or she will be able to do so.

Courts consider the following factors when granting motions for expedited discovery to identify anonymous internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe Defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *see also Rocker Mgmt. LLC v. John Does*, No. 03-MC-33 2003 WL 22149380, *1-2, (N.D. Cal. 2003) (applying *Seescandy.com* standard to identify persons who posted libelous statements on Yahoo! message board; denying request for expedited discovery where the postings in question were not libelous). Plaintiff here is able to demonstrate each one of these factors.

---

*Entertainment Inc., et al. v. Does 1-7*, Case No. 05 CV 0883 (S.D.N.Y.) (Cote, D.)

First, Plaintiff has sufficiently identified the Doe Defendants through the unique IP address of the internet account each Doe Defendant used at the time of the unauthorized distribution of the copyrighted film. *See Seescandy.com*, 185 F.R.D. at 578-80; *see also* Exhibit 3, List of IP Addresses Identifying the Accounts by Which the Infringement Occurred. These internet subscribers gained access to the internet through connections provided by the listed service providers. Only said service providers can identify the responsible internet subscribers by name. They do this by matching listed IP addresses with subscriber accounts found in their internal activity logs. Thus, Plaintiff can show that all of the internet subscribers are "real persons" whose names are known to the service provider and who can be sued in federal court.

Second, Plaintiff has specifically identified the steps taken to identify Defendants' true identities. *Exhibit 3*. Plaintiff has obtained each subscriber's IP address and the date and time of the infringing activities that occurred via the subscribers' accounts, has traced each IP address to specific service providers. *Id.* Therefore, Plaintiff has obtained all the information it possibly can about the internet subscribers without discovery from the service providers.

Third, Plaintiff has asserted a prima facie claim for direct copyright infringement in its Complaint that can withstand a motion to dismiss. Specifically, Plaintiff has alleged that: (a) it is the copyright owner of the work in question, and (b) the Doe Defendants reproduced and/or distributed the copyrighted work without Plaintiff's authorization using the internet subscriber accounts described by the listed IP addresses. *See Complaint*. These allegations state a claim for copyright infringement. See 17 U.S.C. §106(1)(3); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (U.S. Jan. 12, 2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If

the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights.  Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").

For the foregoing reasons, Plaintiff respectfully submits that the Court should grant the Motion for Leave to Take Expedited Discovery and enter an Order requiring the nonparty internet service providers to respond in a timely manner to a Rule 45 subpoena that is narrowly tailored to seek information to identify the internet subscribers whose accounts were used in the infringement of Plaintiff's copyrighted works.

Respectfully Submitted,

s/ *C. F. Stone*

Evan Stone
State Bar No. 24072371
624 W. University Dr., #386
Denton, Texas  76201
Phone: 469-248-5238
Fax:  310-756-1201
E-mail: lawoffice@wolfe-stone.com