UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| WELL GO USA, INC.,　§<br>　§<br>　　Plaintiff,　§<br>　§<br>v.　§<br>　§<br>UNKNOWN PARTICIPANTS IN　§<br>FILESHARING SWARM,　§<br>　§<br>　　Defendants.　§ | Case No. 4:11-cv-00554 |

**TIME WARNER CABLE INC.'S MOTION TO QUASH SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Time Warner Cable Inc. ("TWC"), which operates as an Internet Service Provider under the name "Road Runner," hereby moves to quash the subpoena issued to it. The subpoena demands that TWC provide identifying information in connection with 128 Internet Protocol ("IP") addresses that supposedly correspond to TWC subscribers who are defendants in the cases.

## I.    INTRODUCTION

TWC moves to quash the subpoena in this case for three reasons. First, compliance with the subpoena would be excessively burdensome and expensive. Second, those large burdens arise because Mr. Stone has, once again, improperly attempted to join in a single litigation numerous unrelated actors in violation of Rule 20. Finally, Mr. Stone has not properly served the subpoena on TWC.

The Court therefore should quash the subpoena issued to TWC. In the alternative, the Court may wish to transfer this case to Judge Furgeson, who already has handled more than a dozen of Mr. Stone's identical cases and is intimately familiar with the issues.

## II. BACKGROUND

In this lawsuit, plaintiff's attorney Evan Stone alleges that hundreds of unknown defendants allegedly violated his client's copyrights in a movie by downloading or distributing the movie on the Internet using the "BitTorrent" peer-to-peer protocol. (*See* Compl. at 3.)

Prior to filing this lawsuit, Mr. Stone filed *sixteen* other virtually identical lawsuits in this judicial district, each also alleging that hundreds or thousands of unknown defendants unlawfully downloaded his clients' movies using the "BitTorrent" protocol. *Every one* of those lawsuits was summarily dismissed by this Court, principally for improper joinder of the defendants. *See Lucas Entm't, Inc. v. Does 1-65*, No. 3:10-cv-1407-F (N.D. Tex. filed July 17, 2010); *Lucas Entm't Inc. v. Does 1-185*, No. 3:10-cv-1537-F (N.D. Tex. filed Aug. 9, 2010); *VCX Ltd. Inc. v. Does 1-113,* No. 3:10-cv-1702-F (N.D. Tex. filed Aug. 27, 2010); *LFP Internet Group LLC v. Does 1-635*, No. 3:10-cv-1863-F (N.D. Tex. filed Sept. 17, 2010); *Mick Haig Productions, e.K. v. Does 1-670*, No. 3:10-cv-1900-N (N.D. Tex. filed Sept. 21, 2010); *LFP Internet Group LLC v. Does 1-319*, No. 3:10-cv-2094-F (N.D. Tex. filed Oct. 15, 2010); *LFP Internet Group LLC v. Does 1-3,120*, No. 3:10-cv-2095-F (N.D. Tex. filed Oct. 17, 2010); *LFP Internet Group LLC v. Does 1-1,106*, No. 3:10-cv-2096-F (N.D. Tex. filed Oct. 18, 2010); *LFP Internet Group LLC v. Does 1-2,619*, No. 3:10-cv-2139-F (N.D. Tex. filed Oct. 22, 2010); *Harmony Films Ltd. v. Does 1-739*, No. 3:10-cv-2412-F (N.D. Tex. filed Nov. 25, 2010); *Adult Source Media v. Does 1-247*, No. 3:10-cv-2605-F (N.D. Tex. filed Dec. 21, 2010); *D&E Media, LLC v. Does 1-258*, No. 3:11-cv-00001-F (N.D. Tex. filed Jan 2, 2011); *Serious Bidness, LLC v. Does 1-109*, No. 3:11-cv-00002-F (N.D. Tex. filed Jan. 2, 2011); *Steve Hardeman, LLC v. Does 1-168*, No. 3:11-cv-00056-F (N.D. Tex. filed Jan. 10, 2011); *Justin Slayer Int'l, Inc. v. Does 1-1,254*, No. 3:11-cv-

00101-P (N.D. Tex. filed Jan. 17, 2011); *Funimation Entm't v. Does 1-1,337*, No. 3:11-cv-00147-F (N.D. Tex. filed Jan. 24, 2011).

As one example of why all these cases were rejected, Judge Furgeson held that there was no plausible allegation that the defendants "are in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions" merely by downloading or distributing a movie using the BitTorrent protocol. *LFP Internet Group*, No. 10-cv-2096, Dkt. No. 7, at 2 (N.D. Tex. filed Feb. 10, 2011). Judge Furgeson held that the Complaint alleged that each defendant used the BitTorrent protocol to download the movie, but "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Id.* at 3 (quotation omitted). Moreover, "permissive joinder is improper … because each Defendant will also likely have a different defense." *Id*. at 4. Judge Furgeson accordingly severed each defendant, *id*. at 5-6, and ordered the plaintiff to show cause why he should not appoint pro bono counsel to represent the interests of the remaining anonymous defendant. *LFP Internet Group*, No. 10-cv-2096, Dkt. No. 8 (N.D. Tex. filed Feb. 11, 2011).

During the pendency of these lawsuits, Mr. Stone also repeatedly engaged in unlawful discovery. Mr. Stone served a patently unlawful subpoena on TWC from this Court immediately after Judge Furgeson had vacated his order authorizing early discovery. Judge Furgeson promptly granted TWC's motion to quash the subpoena. *In re: Subpoena to Time Warner Cable Inc.*, No. 11-MC-41-F, Dkt. 9 (N.D. Tex. filed May 9, 2011). Judge Furgeson also considered Mr. Stone's "pattern of issuing improper subpoenas" and expressed his view that "the Court understands TWC's frustration." *Id*. at 3-4.

Indeed, that was not the first time that Mr. Stone had attempted to issue facially unlawful subpoenas. Mr. Stone tried the same tactic in the U.S. District Court for the Eastern District of

Texas—in a transparent attempt to avoid the judges of the Northern District of Texas that had already rejected his litigation strategy—and his subpoena was immediately quashed by that Court. *See* Order, *In re: Subpoena to Time Warner Cable Inc.*, No. 4:11-MC-00019, Dkt. No. 12 (E.D. Tex. April 5, 2011).

And, most recently, Mr. Stone was severely sanctioned and chastised by Judge Godbey of this Court for his discovery activities. Order, *Mick Haig Prods., e.K. v. Does 1-670*, No. 3:10-cv-1900-N, Dkt. No. 17 (N.D. Tex. Sept. 9, 2011). In that case, the Court criticized Mr. Stone's "staggering chutzpah" in serving unauthorized discovery, *id.* at 12, and "wanton abuse" of the discovery system, *id.* at 11, and ordered him to pay a $10,000 fine plus attorneys' fees, as well as inform all courts in all pending proceedings of its order, *id.* at 16-17. The Court also specifically recognized that the tactic of seeking discovery regarding Doe defendants and then sending them settlement demands was frequently improper because "in more than a few cases, the allegations against the does turn out to be false." *Id.* at 3.

TWC was not a party to any of Mr. Stone's cases, and is not a party to the instant case. TWC became involved as a third party because Mr. Stone filed his lawsuits but did not know the identities of the Doe defendants, so he repeatedly served numerous highly burdensome subpoenas on TWC seeking information about hundreds or thousands of its subscribers based on lists of IP addresses. Having had his litigation strategy unanimously rejected, Mr. Stone evidently now has decided to take a seventeenth bite at the apple.

### III.  ARGUMENT

**A.  The Court Should Quash the Subpoena Because Compliance Would Cause TWC to Incur Undue Burdens.**

    **1.  Legal Standard**

Federal Rule of Civil Procedure 45 provides that a court must quash or modify a subpoena that "fails to allow a reasonable time to comply" or that "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3); *see also* Fed. R. Civ. P. 45(c)(1).  Rule 45 also places an obligation on parties and their attorneys to take reasonable steps to reduce undue burdens on non-parties.  Fed. R. Civ. P. 45(c)(1).  It further provides that a court must enforce this affirmative duty through sanctions—including lost earnings and reasonable attorney's fees.  *Id.*

In addition, Rule 26 requires a court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C); *see Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) (Rule 26 applies to and constrains Rule 45 subpoenas).  An undue burden under both Rule 26 and Rule 45 is one that is unreasonable or oppressive in light of all the circumstances of the case.  *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).  "A subpoena imposes an undue burden on a party when a subpoena is overbroad."  *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008); *accord Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998).  Courts have found that a third-party subpoena can be overbroad based on the "time and expense required" to respond, including the "volume of material requested, the ease of searching for the requested documents in the form presented, and whether compliance threatens the normal operations of the responding [party]."  *Williams*, 178 F.R.D. at 109 (citation omitted).  If responding would require an inordinate amount of time and resources, the court may quash the subpoena or limit it.  *Id.*

Courts must be particularly sensitive to the burdens placed on non-parties, and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in the Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also Williams*, 178 F.R.D. at 109 (status as nonparty entitled to special consideration). The advisory committee notes to Rule 45 state that one purpose of the Rule is to ensure that "a non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45 advisory committee's note, 1991 Amendments.

### 2. Compliance with Mr. Stone's Subpoena Would Cause TWC to Incur Undue Burdens.

Responding to the instant subpoena (or future subpoenas) would impose a significant burden on TWC. TWC's compliance team comprises six full-time employees. (Ex. 2 at ¶ 3.) The work of TWC's compliance team consists principally of assisting law enforcement in combating serious crimes, including child endangerment, money laundering, and identity theft. (Ex. 2 at ¶¶ 3, 7.) TWC also responds to requests relating to terrorist threats. (Ex. 2 ¶¶ 3, 7.) Working at full capacity, TWC responds to these requests as quickly as it can. Even without these additional requests by the instant plaintiff (and from related identical copyright lawsuits), law enforcement would prefer that TWC respond more quickly. Every additional IP lookup that TWC performs for these cases would cause an additional delay in responding to law enforcement.

Looking up identifying information based on an IP address often requires both centralized efforts at TWC's corporate offices as well as local efforts at the local operations center where the relevant subscriber is located. (Ex. 2 at ¶¶ 5, 6.) This process is time consuming and can require the attention of multiple people in multiple locations. (Ex. 2 at ¶¶ 5,

6.) The time and effort that TWC must expend to ensure accuracy of its lookups are critical because the stakes are high; a subscriber that TWC identifies might face criminal action from law enforcement, or might face being named in a civil suit such as this one (and given the "adult" nature of some of the films, the interests in ensuring accurate identification in these cases are especially high).

TWC has performed a cost study that establishes that TWC's cost of looking up identifying information from one IP address is approximately $45. (Ex. 2 at ¶ 11.) TWC incurs this cost on the basis of each IP address that it looks up, regardless of whether the IP addresses correlates to a subscriber that is the subject of another of plaintiff's requests or a subscriber that is otherwise unknown to plaintiff. (Ex. 2 at ¶ 11.) In other words, if two IP addresses each relate to the same subscriber, TWC incurs costs for two IP searches. (Ex. 2 at ¶ 11.) The cost to TWC to respond to these subpoenas would be approximately $5,760 (128 IP addresses x $45 per IP address), plus the costs of notifying each subscriber.

In addition to its law enforcement obligations, TWC also is in the process of responding to numerous other civil copyright plaintiffs whose discovery demands have placed a tremendous strain on TWC's resources. Consistent with its law enforcement obligations and its overall capacity constraints, TWC has determined that it cannot reasonably respond to more than 20 total IP lookups per month for Mr. Stone's lawsuit, including any future ones that he intends to file. Any greater number would place an unreasonable and unwarranted strain on TWC's resources.

The reality is that Mr. Stone has chosen to pursue a novel litigation strategy—suing hundreds of defendants at once—that creates very significant burdens on non-parties. Pursuing this particular litigation strategy, with the significant burdens that it generates, was entirely his

choice. The inherent challenge of responding to competing demands makes this a zero sum equation. TWC either can respond to law enforcement, or it will have to sharply curtail its law enforcement activities to assist Mr. Stone's entertainment clients.

In essence, what Mr. Stone seeks is to force TWC to significantly alter its business operations to suit his preferred litigation strategy. TWC is not aware of *any* case that has required a non-party business to significantly alter its business operations to suit a party's litigation strategy. Indeed, the case law is directly to the contrary. *See Linder*, 180 F.R.D. at 175 (undue burden is one in which "compliance threatens the normal operations of the responding [party]"). And such an outcome would be directly contrary to Rule 45's express protections for third parties. Moreover, it is not as though TWC is seeking to avoid complying with lawful subpoenas, including subpoenas in copyright cases—it has an entire team dedicated to doing so. What has changed is the scope of these copyright cases. An attorney who chooses to increase the size of his lawsuits exponentially cannot be surprised that non-parties lack the resources to comply.

Consequently, because compliance with the subpoena would cause TWC to incur extensive and undue burdens, the Court should quash the subpoena.

**B.     The Burdens on TWC Are Caused by Improper Joinder.**

Rule 20 permits – but does not require – joinder of parties when (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and when (2) there is at least one common question of law or fact linking all claims. *See* Fed. R. Civ. P. 20(a). However, "even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) (internal citations omitted). In particular, the Fifth Circuit has held that "district courts

have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims." *Id.*

This type of mass copyright litigation is a particularly poor candidate for joinder. First, the conduct alleged here by various disparate defendants is not plausibly part of the same "transaction or occurrence." The defendants here are in different locations, using different computers, at different dates and times, and using different Internet Service Providers. Indeed, the subpoena issued to TWC reveals a wide range of dates and times when the alleged infringing activities occurred. (*See* Ex. 1.) A person who sits down at his home computer and downloads a movie using the BitTorrent protocol has no idea from whom he is downloading the movie, no idea how many people he may be interacting with, no idea whether others are even at their computers at the time (BitTorrent may be running on a computer even if no one is around), and no idea whether others who downloaded the same movie did so a week ago or a year ago. There is no allegation anywhere in the complaint that any defendant knows who any other defendant is, or has ever met any other defendant. Indeed, there is no allegation of any connection among defendants whatsoever except via randomly routed bits of electronic data.

Second, as should be apparent from the foregoing description, individual factual questions and individual defenses will overwhelm any common issues in the case. For example, Doe 1 may be a person with an unsecured wireless network whose neighbor actually logged onto the network did the downloading. Doe 2 may have a minor child who engaged in the alleged infringement. Doe 3 may simply have been misidentified through an inaccurate IP address search. Doe 4 may have had an unrelated friend who used his computer while visiting and downloaded the material. Doe 5 may have a fair use defense to his conduct. Doe 6 may in fact

have engaged in unlawful copyright infringement. None of these individual factual questions and defenses can be efficiently resolved through the blunt tool of a single lawsuit.

For these reasons, courts around the country have almost uniformly rejected this form of mass copyright litigation on joinder grounds, and have severed or dismissed the litigation prior to discovery. As stated above, this Court has rejected more than a dozen of Mr. Stone's cases on that ground, but in addition, courts around the country have reached the same conclusion. *See, e.g., Third World Media, LLC v. Does 1,243*, No. 3:l0-cv-00090-JPB, Dkt. No. 66 (N.D. W. Va. Dec. 15, 2010); *CP Prods., Inc. v. Does 1-300*, No. 10-cv-6255, Dkt. No. 32 (N.D. Ill. Feb. 24, 2011); *Lightspeed v. Does 1-1,000*, No. 1:10-cv-5604, Dkt. No. 53 (N.D. Ill. Mar. 31, 2011); *Millennium TGA, Inc. v. Does 1-21*, No. 3:11-cv-2258, Dkt. No. 8 (N.D. Cal. May 12, 2011); *Future Blue Inc. v. Does 1-300*, No. 1:10-cv-6256, Dkt. No. 65 (N.D. Ill. June 8, 2011); *Boy Racer, Inc. v. Does 1-60*, No. 3:11-cv-1738, Dkt. No. 24 (N.D. Cal. Aug. 19, 2011); *Laface Records, LLC v. Does 1 - 38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008).

Mr. Stone appears to be attempting to bolster his joinder strategy by alleging that the BitTorrent protocol "is designed to be used by a *group* of people working together," and that the defendants engaged in "joint acts" of sending and receiving pieces of files. (*See* Compl. ¶¶ 8, 10.) But those allegations do not remotely establish that the defendants' activities are part of the same transaction or occurrence. Nothing about the BitTorrent protocol changes the individualized nature of each alleged act of infringement, as well as the individualized facts and defenses, as described above. Many courts have addressed these allegations in the specific context of BitTorrent, and have expressly rejected them as a basis for joinder. *See, e.g., Boy Racer, Inc. v. Does 1-60*, No. 3:11-cv-1738, Dkt. No. 24 (N.D. Cal. Aug. 19, 2011); *Diabolic*

*Video Prods. v. Does 1-2,099*, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011); *Lightspeed v. Does 1-1,000*, No. 1:10-cv-5604, Dkt. No. 53 (N.D. Ill. March 31, 2011).

For example, one court recently issued a thorough decision that surveys the case law and explains why the majority view, which rejects joinder, is the proper approach for BitTorrent cases. In *Hard Drive Prods., Inc. v. Does 1-188*, No. 11-cv-1566-JCS, Dkt. 26 (N.D. Cal. filed Aug. 23, 2011), the court reviewed motions to quash subpoenas in a case in which the plaintiff alleged that all the Doe defendants were part of a single BitTorrent "swarm"—exactly like this case. The Court acknowledged that a small number of judges had decided not to sever the defendants prior to discovery, but held that the heavy weight of opinions severing Doe defendants was persuasive with regard to BitTorrent cases. According to the court, the nature of BitTorrent does not mean that one Doe defendant necessarily "participated in or contributed to the downloading of" any other Doe defendant. *Id*. at 18. Indeed, files uploaded by one person might have gone to a specific Doe defendant, or instead "may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.*" *Id.* (emphasis in original). The court also recognized that keeping the defendants joined would result in a "logistically unmanageable case," would "force the Court to address the unique defenses that are likely to be advanced by each individual Defendant," and "will likely cause prejudice to the putative defendants." *Id*. at 19. The court accordingly granted all outstanding motions to dismiss, and severed and dismissed the Doe defendants. *Id*. at 20.[1]

Moreover, it bears emphasis that Mr. Stone's attempt to join all these disparate defendants in a single lawsuit is about the financial implications to him and his client, not about

---

[1] A minority of courts have chosen to wait until some discovery is complete before adjudicating the joinder issue. But as one court has recognized, "courts and commentators have noted that a consequence of postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars [from lost court filing fees] and only encourages Plaintiffs … to join (or misjoin) as many doe defendants as possible." *Arista Records, LLC v. Doe*, 2008 U.S. Dist. LEXIS 90183, *17 (N.D. Ohio Nov. 3, 2008).

whether the litigation would be more efficient. Mr. Stone has acknowledged that his plan is not to litigate these cases to the end, but rather to send demand settlement letters to each defendant and obtain quick settlements.[2] But the economics of Mr. Stone's litigation style do not provide his client and him the same level of profit if he actually has to pay the proper filing fee in each case. As the Supreme Court has stated, "[i]n deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc.v. Sanders*, 437 U.S. 340, 352 n.17 (1978).

Thus, the Court should rule as Judge Furgeson has and hold, consistent with the majority of courts across the country, that joinder is improper. The Court accordingly should quash the subpoena issued to TWC or modify it to cover only a single Doe defendant.

**C.    The Court Should Quash the Subpoena Because Plaintiff Did Not Properly Serve TWC.**

Rule 45 provides that service "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Mr. Stone has never purported to serve TWC other than via email. To TWC's knowledge, no court has ever endorsed email service of a third party subpoena absent consent from the receiving party.

The long-standing view of most courts has been that the only permissible means of serving a third party subpoena under Rule 45 is in-person service. That is because a Rule 45 subpoena is "intended to secure the personal appearance of and production of documents by an otherwise unwilling witness through threat of judicial sanctions for noncompliance." *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980). Because of the significant stakes and the fact that the receiving party is an outsider to the litigation, "the

---

[2]    *See* Patrick Michels, "Evan Stone's Battle Against Porn Pirates," Dallas Observer (April 21, 2011) http://www.dallasobserver.com/2011-04-21/news/barely-legal/.

majority rule is that personal service of a subpoena is required, and that service by mail or other substituted service is insufficient." 9 Moore's Federal Practice, § 45.21 at 49-50 (3d ed. 2010); *see also* 9A Wright & Miller, Federal Practice and Procedure § 2454 at 397 (3d ed. 2008) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required."). That appears to be the prevailing rule in this Circuit. *Omikoshi Japanese Rest. v. Scottsdale Ins. Co.*, 2008 U.S. Dist. LEXIS 91615, *2-3 (E.D. La. Nov. 5, 2008) (certified mail service of subpoena insufficient because personal service required); *Scottsdale Ins. Co. v. Educ. Mgmt.*, 2007 U.S. Dist. LEXIS 53895, *10 (E.D. La. July 25, 2007). Mr. Stone's attempt to serve the subpoena unquestionably fails this rule.

A minority of courts now have begun to permit service via certified mail and/or FedEx, on the theory that these methods carry sufficient reliability to provide a reasonable likelihood that the subpoenaed party actually received the subpoena. *See, e.g., Hall v. Sullivan*, 229 F.R.D. 501 (D. Md. 2005) (acknowledging that "majority of courts" require in-person service, but nevertheless allowing service by FedEx); *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind. 1994) (acknowledging weight of cases, but allowing service by certified mail). That is not the law in this Circuit, but even if it were, that would not help Mr. Stone. He has not purported to serve TWC via FedEx or certified mail, and even the minority view does not endorse electronic service. *See, e.g.*, *Firefighters' Inst. for Racial Equal. v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (even if Rule 45 permits service by means other than personal delivery, fax service is unacceptable).

Finally, even for routine discovery that does not implicate the concerns underlying compulsory process such as a subpoena, Mr. Stone's service would be improper. For routine pleadings and discovery, Rule 5 endorses electronic service only if "the person consented in

writing." Fed. R. Civ. P. 5(c)(2)(E). Rule 5 is more lenient than any form of service that courts have endorsed for a Rule 45 subpoena, but even under that more lenient rule, Mr. Stone's service failed because he did not have consent in writing from TWC.

Because service was plainly improper, the Court should quash the subpoena.

## IV.   CONCLUSION

For the foregoing reasons, the Court should quash the subpoena issued to TWC. Alternatively, the Court may wish to transfer this case to Judge Furgeson.

September 19, 2011                                     Respectfully submitted,

                                                                */s/ John T. Cox III*
                                                         John T. Cox III
                                                         Texas Bar No. 24003722
                                                         Elizabeth Y. McElroy
                                                         Texas Bar No. 24067758
                                                         **LYNN TILLOTSON PINKER & COX, LLP**
                                                         2100 Ross Avenue, Suite 2700
                                                         Dallas, Texas  75201
                                                         (214) 981-3800 Telephone
                                                         (214) 981-3839 Facsimile

                                                         Alexander Maltas (pro hac vice)
                                                         LATHAM & WATKINS LLP
                                                         555 11th St. NW, Suite 1000
                                                         Washington, DC  20004
                                                         (202) 637-2200 Telephone
                                                         (202) 637-2201 Facsimile

                                                         *Counsel for Time Warner Cable Inc.*

## **CERTIFICATE OF CONFERENCE**

      I certify that counsel for Non-Party Time Warner Cable Inc. conferred with counsel for Plaintiffs, Mr. Evan Stone, on September 19, 2011 regarding the relief requested in this Motion. Counsel for Plaintiffs stated that Plaintiff is opposed to the relief requested in this Motion.

                                                          */s/ John T. Cox III*
                                                         John T. Cox III

## **CERTIFICATE OF SERVICE**

      I certify that I served true and correct copies of the foregoing document was served upon the following party via ECF notification on September 19, 2011.

Mr. Evan F. Stone
Law Offices of Evan Stone
624 West University Drive
Suite 386
Denton, Texas 76201
469-248-5238


                                                          */s/ John T. Cox III*
                                                         John T. Cox III