FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2011 OCT -7  PM 4:19

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| WELL GO USA, INC. <br> A Texas Corporation, | § <br> § <br> § | |
| Plaintiff, | § <br> § <br> § | |
| VS. | § <br> § | C.A. NO.: 4:11-cv-00554-A |
| UNKNOWN PARTICIPANTS IN <br> FILESHARING SWARM IDENTIFIED BY <br> HASH: B7FEC872874D0CC9B1372ECE- <br> 5ED07AD7420A3BBB | § <br> § <br> § <br> § | |
| Defendants. | § <br> § | |

### PLAINTIFF'S STATEMENTS SUPPORTING
### THE VALIDITY OF ITS CLAIMS, THE APPROPRIATENESS OF JOINDER AND
### WELCOMING THE APPOINTMENT OF ATTORNEYS AD LITEM

In response to the Court's Order of September 28, 2011, Plaintiff comes now to address the Court's concerns regarding joinder and the necessity of lawsuits against unnamed defendants at the federal level. Additionally, Plaintiff notes that it welcomes the appointment of attorneys ad litem for the unknown defendants because such an appointment will obviate the need for the discovery motion at issue and should enable discovery to continue in a more routine fashion. But Plaintiff objects to the notion that it should bear the cost of providing a defense for individuals who have already taken from Plaintiff's pocketbook by unlawfully copying and distributing Plaintiff's film to more than 10,000 other BitTorrent swarm participants.[1]

---

[1] The 10,000+ figure includes all out-of-state defendants witnessed in the swarm by Plaintiff, but excluded from this case. Various nefarious websites report as many as 38,170 unauthorized downloads of Plaintiff's

I.   <u>**RE-ASSERTION OF PRECEDENTS AND A NOTE ON CANDOR**</u>

It is critical to note at once that Plaintiff's counsel was very candid with this Court and Plaintiff maintains its assertion that the overwhelming majority of federal district courts have indeed granted expedited discovery in cases similar to this one. To wit, Plaintiff is including copies of such orders from at least **twenty-four** distinct federal courts outside this district, **including every other federal district in Texas.**[2]   Also included,

---

film (*See* http://www.anysubs.com/subdetails.php?subid=117261)

[2] *See, e.g., IO Group, Inc. d/b/a Titan Media v. John Doe*, Ca. No. 1:11-cv-245-SS (W.D. Tex.); *Pacific Century International, Ltd. v. Does 1-52*, Ca. No. 4:11-cv-02232 (S.D. Tex.); *First Time Videos, LLC. v. Does 1-11*, Ca. No. 1:11-cv-00231-RC (E.D. Tex.); *Liberty Media Holdings, LLC v. Arizona Members of Swarm of November 15, 2010 to January 2, 2011, Sharing Hash File ae340d0560129aFee8d78Ce07F2394c7b5bc9C05 and Does 1 through 27*, CA. No. 2:11-cv-00892-NVW (D. Ariz.); *Xpays, Inc. v. Does 1 through 843*, CA. No. 2:11-cv-00652-SJO-MAN (C.D. Cal.); *IO Group, Inc. d/b/a Titan Media v. Does 1-244*, CA. No. 3:10-cv-03647-WHA (N.D. Cal.); *Liberty Media Holdings, LLC v. Does 1-62*, CA. No. 3:11-cv-00575-MMA-NLS (S.D. Cal); *Patrick Collins, Inc. v. John Does 1-26*, CA. no. 11-cv-01656-CMA-MJW (D. Colo); *G2 Productions, LLC v. John Does 1-83*, CA. No. 1:10-cv-00041-CKK (D.D.C.); *Patrick Collins, Inc. v. John Does 1-7*, CA. No. 6:11-cv-00428-GJK (M.D. Fla.); *Pink Lotus Entertainment, LLC v. John Does*, CA. No. 1-53, 1:11-cv-22103-PAS (S.D. Fla); *Millennium TGA, Inc. v. Does 1-100*, CA. No. Case: 1:10-cv-05603-MTM (N.D. Ill.); *Hard Drive Productions Inc., v. Does 1-21*, CA. No. 4:11-cv-00059-SEB-WGH (S.D. Ind.); *Liberty Media Holdings, LLC. v. Swarm Sharing Hash File a3e6F65F2e3D672400a5908f64ed55b66a0880b8 and Does 1-9*, CA. No. 11-cv-10801-WGY (D. Mass.); *Digital Content, Inc. v. Does 1-37, et al.*, CA. No. 8:10-cv-03403 (D. Md.); *Baseprotect UG, Ltd. v. John Does 1-X (such persons being presently unknown)*, CA. No. 2:11-cv-02021-DMC-JAD (D.N.J.); *Liberty Media Holdings, LLC, v. Swarm of November 15 to December 9, 2010, et al.*, CA. No. 2:11-cv-00637-RLH-GWF (D. Nev.); *Patrick Collins, Inc. v. John Does 1-15*, CA. Nos. 11-cv-1264-JG-RER, 11-cv-1265, 11-cv-1266, 11-cv-1267, 11-cv-1268, 11-cv-1269, 11-cv-1270, 11-cv-1271, 11-cv-1272, 11-cv-1273, 11-cv-1274 (E.D.N.Y.); *K-Beech, Inc. v. John Does 1-21*, CA. No. 1:11-cv-04777-GBD (S.D.N.Y.); *Liberty Media Holding d/b/a Corbin Fisher v. Swarm of November 18 to December 8, 2010, Sharing Hash File a3e6f65f2e3d672400a5908f64ed55b66a0880b8*, CA. No. 1:11-cv-00238-HJW-SKB (S.D. Ohio); *AF Holdings, LLC. v. John Does 1-77*, CA. No. 2:11-cv 00383-RBS-TEM (E.D. Va.); *Liberty Media Holdings, LLC. v. Swarm of November 27, 2010 to January 31, 2011 Sharing Hash File a3e6f65f2e3d672400a5908f64ed55b66a0880b8 and Does 1 through 3*, CA. No. 2:11-cv-00394-RTR (E.D. Wis.); *Liberty Media*

is a copy of District Court Judge Beryl Howell's celebrated
42-page Memorandum Opinion eviscerating Time Warner's same
arguments in its repeated series of Motions to Quash
entertainment industry subpoenas in Washington, DC. *Call of the
Wild Movie, LLC v. Doe*, 770 F. Supp. 2d 332 (D.D.C. 2011)[3]

Even more noteworthy, a majority of judges in *this
District*, six-to-one in fact, have granted discovery requests in
copyright infringement cases involving anonymous, internet-based
infringers. These local district judges are Judge Reed O'Connor,
Judge Jorge Solis and Judge Ed Kinkeade along with Magistrate
Judges Jeff Kaplan, Renee Harris Toliver and Irma Ramirez.[4]

However detrimental to TWC's arguments, Plaintiff does not
begrudge TWC's similar failure to mention the numerous rulings
granting discovery in this District and elsewhere or the rulings
denying TWC's motions to quash in other cases. Plaintiff
understands that TWC and Plaintiff both appear to be pleading

---

*Holdings v. Swarm of November 16, 2010 to January 27, 2011*, CA. No.
3:11-cv-00299-wmc (W.D. Wis.); *Axel Braun Productions v. Does 1-7,098*,
CA. No. 3:10-cv-00112-JPB (N.D.W. Va.). Attached as Exhibit 1
[3] Attached as Exhibit 2
[4] *LFP Internet Group, LLC v. Doe 1*, CA. No. 3:10-cv-01863-F, (N.D. Tex.,
Oct. 7, 2010) (O'Connor, R.); *LFP Internet Group LLC v. Doe 1*, CA. No.
3:10-cv-02094-F (N.D. Tex., Oct, 22, 2010) (Solis, J.); *LFP Internet
Group Internet Group, LLC v. Doe 1, CA. No. 3:10-cv-02096-F, N.D. Tex.,*
Oct. 7, 2010) (O'Connor, R.); *LFP Internet Group LLC v. Doe 1*, CA. No.
3:10-cv-02094-F (N.D. Tex., Oct, 22, 2010) (Solis, J.); *LFP Internet
Group LLC v. Does 1 - 1,106*, CA. No. 3:10-cv-02096-F (N.D. Tex. Nov.
29, 2010) (Kinkeade, E.); *Lucas Entertainment Inc v. Doe 1*, CA. No.
3:10-cv-01537-F, (N.D. Tex. August 16, 2010) (Kaplan, J.); *VCX Ltd.,
Inc. v. Doe 1*, CA. No. 3:10-cv-01702-F (N.D. Tex. Sept. 8, 2010)
(Kaplan, J.); *LFP Internet Group LLC v. Doe 1*, CA. No. 3:10-cv-02139-F
(N.D. Tex. Nov. 2, 2010) (Kaplan, J.); *Harmony Films Ltd v. Doe 1*, CA.
No. 3:10-cv-02412-F (N.D. Tex. Dec. 17, 2010) (Tolliver, R.); *Adult
Source Media v. Doe 1*, CA. No. 3:10-cv-02605-F (N.D. Tex. Feb. 7, 2011)
(Tolliver, R.); *LFP Internet Group, LLC v. John Doe 1*, CA. No. 3:10-cv-
02095-F, (N.D. Tex. Nov. 2, 2010) (Ramirez, I.).

within the boundaries of candor established by Texas Disciplinary
Rules of Professional Conduct, Rule 3.03(a)(4), because none of
the cases omitted by TWC or Plaintiff are of controlling
authority in this jurisdiction.[5]  Counsel's failure to disclose
relevant, but non-controlling authority is an exigency of zealous
advocacy, well within the ethical duties of candor.[6]

### a. The Local Rulings Cited by TWC Were From a Single Judge

It is of utmost importance to further clarify that the *only*
Motions to Quash granted in the Northern District of Texas cases,
which are cited by TWC, were granted by a *single* judge, the
Honorable Judge Royal Furgeson.  Three of these rulings were
reversals of His Honor's own grants to conduct discovery,[7] while
the remainder were reversals of the rulings of the six other
judges mentioned previously.  These grants occurred over a seven-
month period, during which time the Court collectively endured a
deluge of pro-se filings from defendants in these cases, none of
which were found to have merit or were found simply to be
premature.

Plaintiff concedes that the various BitTorrent cases
proceeding across the country are generally, to put it mildly, an

---

[5] *See, e.g.,* Moliterno, James E., Professional Responsibility 168 (Aspen
Publishers, 2006)
[6] "Counsel is not required to make a disinterested exposition of the
law." Texas Disciplinary Rules of Professional Conduct, R 3.03 cmt. 3.
[7] *Serious Bidness, LLC v. Does 1,* 3:11-cv-00002-F (N.D. Tex. Jan. 28,
2011) (Ferguson, R.); *FUNimation Entertainment v. Doe 1,* 3:11-cv-00147-
F (N.D. Tex. Feb. 3, 2011) (Ferguson, R.); *Lucas Entertainment, Inc. vs
Doe 1,* 3:10-cv-01407-F (N.D. Tex. July 26, 2010) (Ferguson, R.);

incredible nuisance for the Court to deal with.[8]  This could

explain why Judge Furgeson reversed his three previous rulings

and those of other judges only *after* the Court collectively

transferred all active BitTorrent cases to his docket, ensuring

that he alone would be forced to respond to these hundreds of

pro-se letters.  The specific reasons for the Court's mass

transfer of these cases to Judge Furgeson are not given, but what

is known is that Judge Furgeson was the first to rule in any of

these cases in Dallas and he himself had granted discovery in

more of these cases than any other judge in this District.  The

Court did not, however, "summarily dismiss" any of these cases

for "improper joinder" as TWC contends.  Rule 21 expressly

prohibits this, stating, "Misjoinder of parties is not a ground

for dismissing an action."  Fed. R. Civ. P. 21.  Rather, the

Court severed all but one defendant in each case and the

plaintiffs then dismissed the cases of their own volition.  This

distinction is not merely the splitting of hairs--the fact that

the Court did not dismiss the underlying infringement claims

indicates that the claims had merit.[9]


   b. **Proper Circumstances for Joinder, But Failure of Pleading**

        Additionally, a critical reading of the Court's rulings

regarding joinder reveals that the real defect was a failure of

---

[8] Congress anticipated this as far back as 1996 and drafted a special
subpoena provision for the Copyright Act, embodied in 17 U.S.C. §
512(h), which was intended to altogether preclude the need for John
Doe suits involving internet piracy.
[9] Even TWC does not go so far as to assert that the infringement did not
take place on its network.

pleading rather than the absence of the elements required for

permissive joinder.  The rulings all include phrases such as

"...there are no **allegations** in Plaintiff's Complaint that the

Defendants are in any way related to each other, or that they

acted in concert..." and "Plaintiff makes no **allegation** in this

case that the claims against the joined defendants 'arise out of

the same transaction, occurrence, or series of transactions or

occurrences.'" and "Plaintiff only **alleges** in its Complaint that

each defendant uses the same method for committing the

infringement..."  Nowhere does the Court hold that joinder is

improper where a group of defendants are specifically alleged to

have simultaneously *connected to one another* in a BitTorrent

swarm.  Though this is, in fact, what happened in the previous

cases, plaintiffs failed to plead it properly.


II.  **APPROPRIATENESS OF JOINDER IN THE INSTANT CASE**

The language of the instant Complaint does not repeat this

failure of pleading.  Instead, this Complaint carefully details

how defendants worked together in the same series of transactions

or occurrences that gave rise to the cause of action.  This joint

effort flows from a technological characteristic inherent to the

core of BitTorrent technology:  BitTorrent technology only

functions properly when connecting a *group* of people to one

another *simultaneously*.  To quote the language from BitTorrent's

developer community website:

> "With BitTorrent, those who get your file tap
> into their upload capacity to give the file to
> others at the same time.  Those that provide the

> most to others get the best treatment in return.
> Cooperative distribution can grow almost without
> limit, because each new participant brings not
> only demand, but also supply."[10]

Despite the *necessity* for persons to be working *together* for
BitTorrent piracy to occur at all, Plaintiff acknowledges that
joinder is not proper in all BitTorrent infringement cases.  For
example, the cases cited in the collective rulings discussed
previously have very different, yet crippling defects.

### a. Distinction from Multi-Swarm Joinder Cases

Defendants in the West Coast Productions case and several
others were rightfully severed because they were not all
participating with each other in the same group, known as a
BitTorrent "swarm."  Plaintiff's counsel called attention to this
distinction publicly as far back as December of 2010.[11]  Counsel
has never proposed that merely infringing the same copyrighted
work as another person via the same methodology is sufficient to
warrant joinder.  Further evidence of counsel's long-standing
knowledge of this distinction can be seen in a collection of
three suits filed by counsel last year regarding the infringement
*of the same film.*[12]  The text of those complaints distinguishes
the three different groups of defendants by the three different

---

[10] What is BitTorrent? http://bittorrent.org/introduction.html

[11] Greg Sandoval, *ISP Won't Reveal Names Of Alleged Porn Pirates*, Media
Maverick|CNET, December 27, 2010, *available at*
http://news.cnet.com/8301-31001_3-20026654-261.html

[12] *LFP Internet Group, LLC v. John Doe 1*, CA. No. 3:10-cv-02095-F, (N.D.
Tex. Nov. 2, 2010) (Ramirez, I.); *LFP Internet Group LLC v. Does 1 -
1,106*, CA. No. 3:10-cv-02096-F (N.D. Tex. Nov. 29, 2010) (Kinkeade,
E.); *LFP Internet Group LLC v. Doe 1*, CA. No. 3:10-cv-02139-F (N.D.
Tex. Nov. 2, 2010) (Kaplan, J.)

BitTorrent swarms unlawfully distributing three different copies of the same film to thousands of other persons.  Though all the proper elements were present, it was counsel's failure of pleading that sank those cases.

A discussion of this single-swarm, multi-swarm distinction can be found in Northern District of California case, *Pacific Century International, Inc. v. Does 1 - 101*.  CA. No. 4:11-cv-02533-DMR (N.D. Cal.).  There, the court noted that because the plaintiff's complaint suggested that the "unnamed defendants participated in one of several swarms ... [they] consequently did not take part in the same transaction, occurrence, or series of transactions or occurrences."  Conversely, where defendants can be shown to have participated in the *same* swarm, joinder *is* proper and the court afforded the plaintiff an opportunity to make that exact showing.

b. **Distinction from Other Peer-to-Peer cases**

The *Fonovisa* case, on the other hand, involves a panoply of separate works, none of which were shared *among* the joined defendants, but only *by* the joined defendants with *the public* at large.  *Fonovisa Inc. et al. v. Does 1-41*, CA. No. A-04-CA-550-LY (W.D. Tex. Nov. 17, 2004).  Plaintiff again acknowledges that this is an entirely insufficient basis for joinder.[13]  The technology used by the *Fonovisa* defendants only allowed for a

---

[13] The attached exhibit to the *Fonovisa* complaint includes 41 pages of different songs, one page for each defendant, with nothing material tying the defendants together.

two-way connection starting from the "sharer" of the media and ending with the individual who copied that media from the "sharer." This transaction would allow for joinder of only those two persons. *Id.* So when the *Fonovisa* plaintiffs filed suit against 41 individuals, who were only "connected" in the sense that they used similar methods to infringe the plaintiffs' copyrights, the court held joinder to be improper. *Id.*

In the present case, Plaintiff specifically alleges that the participants of the BitTorrent swarm not only a) infringed the same copyrighted work, and b) all reproduced/distributed the same unauthorized copy of that work, but also c) each engaged in a series of digital "handshakes" with other members of the swarm that then initiated the unauthorized downloading and uploading of Plaintiff's work to the other participants of the swarm.

### c. **Joinder is in the Interests of Judicial Economy and Does Not Prejudice the Parties or Cause Needless Delay**

Finally, in analyzing why joinder is proper here and why defendants should not be severed, the Court must take into consideration the interests of judicial economy and the outright impossibility for most plaintiffs, including Well Go USA, to afford the time and expense of filing individual suits, drafting individual discovery motions and serving individual subpoenas against the tens of thousands[14] of persons infringing various

---

[14] Ernesto, *Avatar Crowned The Most Pirated Movie of 2010,* TorrentFreak, December 20, 2010, *available at* http://torrentfreak.com/avatar-crowned-the-most-pirated-movie-of-2010-101220/ (showing more than 16,580,000 unauthorized downloads of a single movie)

copyrights daily. *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002). As stated by the district court in Washington, DC, joinder is appropriate "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *Id.*

The unknown defendants in this case are unlikely to suffer any prejudice by being joined. Plaintiff asserts that Defendants, and the Court, will actually benefit from the joinder, much as they were expected to by other courts. *Call of the Wild Movie, LLC; London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008). Specifically the Massachusetts court held that, "Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." *Id.*

III. **NECESSITY FOR SUITS AGAINST UNNAMED DEFENDANTS**

Plaintiff's failure to identify any defendant by name should not warrant dismissal. Even though the "use of unnamed defendants is not favored in the federal courts[15] ... [t]he appropriate treatment of Doe defendants is to delay taking action with regard to them until plaintiff has had an adequate time in discovery to identify them by name." *See also Colle v. Brazos County*, 981 F.2d 237, citing *Gillespie v. Civiletti*, 629 F.2d

---

[15] *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001).

637, 642 (9th Cir.1980). ("As a general rule, the use of 'John Doe' to identify a defendant is not favored. However, ... plaintiff should be given an opportunity through discovery to identify the unknown defendants...")

Peer-to-Peer internet piracy has always been particularly difficult to deal with because of the degree of anonymity inherent to nearly every means of accessing the internet. With BitTorrent piracy, the only identifying information available regarding the persons in the swarm is the information facilitating the transfer of data, namely, the person's IP address and port by which the data is routed.

An IP address is much like an automobile's license plate in that it identifies the "owner" of an internet account or automobile, respectively. If a car is involved in a tort or even a crime, and the driver of that car is unknown and unable to be identified by any witness or photograph, then the persons investigating the incident invariably look up the registered owner by his or her license plate without much fuss, and can then seek to identify the unknown driver--often the same person. Vehicle registrations are maintained by state governments and are subject to disclosure for any number of reasons. IP addresses and their associated account holders, on the other hand, are exclusively maintained by private companies and are rarely disclosed without a warrant or court order.

### a. Copyright Act Subpoenas Once Obviated Doe Suits

As discussed in Plaintiff's Motion for Discovery, Congress

created a special subpoena provision in the Copyright Act found
at 17 U.S.C. § 512(h).  This provision enables any copyright
holders, whose works have been infringed, to prepare their own
subpoenas, have them rubber-stamped by the court clerk, and serve
them on any internet service provider on whose network the
infringing content can be found.[16]  This provision should preclude
the need for John Doe lawsuits altogether, including this one,
and initially it did.  Indeed, Copyright Act subpoenas were used
regularly by copyright holders -- including members of the
Recording Industry Association of America ("RIAA") -- for several
years.  *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet
Servs.*, 351 F.3d 1229 (D.C. Cir. 2003) (*"Verizon II"*).  The RIAA
routinely issued these subpoenas to service providers to identify
alleged infringers of music belonging to the some of the largest
record labels in the world.  But as media coverage increased
about the RIAA's anti-piracy campaign, a very real question was
beckoned of service providers:  will the RIAA scare off their
potential customers?

     This question, of course, assumes that some of the
attraction to broadband internet access is the ability to use the
internet for the very acts of piracy that caused Congress to
draft the DMCA in the first place.  Understandably, no business
wants to acknowledge that a major benefit of its service is that
it can be used for unlawful activity, but many people accept it

---

[16] "A copyright owner or a person authorized to act on the owner's behalf
may request the clerk of any United States district court to issue a
subpoena to a service provider for identification of an alleged
infringer in accordance with this subsection."  17 U.S.C. § 512(h)(1)

as a given.  Put succinctly by one journalist, "While analysts,
ISPs and executives deny or ignore it -- ISPs built their
broadband empires on the shoulders of piracy and the allure of
free content (remember a little thing called Napster?)"[17]
Internet service providers in other countries have been far more
candid.  A provider in Australia, for example, goes so far as to
make the connection between broadband access and piracy in a
public marketing slogan, "If you want unlimited music, unlimited
games and unlimited movies, get unlimited broadband."[18]  The
Australian Federation Against Copyright Theft was not amused.[19]

   b. __Internet Service Providers Ceased Responding to Copyright__
      __Act Subpoenas for Fear of Losing Customers__

      Major service providers in the United States are aware of
this connection and apparently concluded that the threat of
actual repercussions against their countless infringing customers
would indeed impact their bottom line.  With this realization,
they reneged on their promises embodied in the DMCA and ceased
complying with copyright holders' subpoenas.  The most noteworthy
example of this was Verizon's challenge to the RIAA heard by the
United States District Court for the District of Columbia.  *In re*
*Verizon Internet Servs.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2003)

---

[17] Karl Bode, *Verizon Now Kicking P2P Users Off Their Network?  Verizon*
*says yes to CNET, then tells us no...,* Broadband DSLReports.com,
January 20, 2010, *available at*
http://www.dslreports.com/shownews/Verizon-Now-Kicking-P2P-Users-Off-
Their-Network-106516
[18] Staff Reporter, *Broadband and Piracy*, MyBroadband.co.za News, October
7, 2009, *available at* http://mybroadband.co.za/news/Internet/9911.html
[19] *Id.*

("*Verizon I*"). Verizon's argument was that they did not have to comply with Copyright Act subpoenas unless the subpoenas related to infringing content stored directly on their servers. Verizon based this argument on § 512(a) of the Copyright Act, which shields a service provider from liability for *monetary* damages for transmitting information *through* their networks. 17 U.S.C. § 512(a). Verizon asserted that the subpoena provision did not apply to the infringing activities of their customers engaged in peer-to-peer piracy because in these instances Verizon was merely transmitting the infringing content, not storing it on its servers. The court strongly disagreed, stating, "If, as Verizon contends, service providers only have such obligations when the infringing material is stored on their systems, then service providers [] would receive the liability protections of the Act without the corresponding obligation to assist copyright owners in identifying infringers." *Verizon I* at 38. The court went further by explaining that Verizon's reasoning was completely contrary to the purpose of the DMCA, "There is no logical connection between the line Verizon seeks to draw and the objectives Congress sought to achieve through the DMCA. Verizon's reading would thus undermine the balance Congress established in the DMCA, and does not comport with the Act's purpose and history." *Id.*

The district court ruled in favor of the copyright holders, but Verizon appealed the ruling and found a sympathetic ear in the DC Circuit Court. There, the court concluded that if a service provider was acting in the capacity of a mere conduit, as

described in the safe harbor of § 512(a), then that provider was

not amenable to the subpoena power of § 512(h). *Verizon II.*

Following this decision, all major internet service providers in

the United States ceased complying with Copyright Act subpoenas[20]

and would-be pirates continued signing up for broadband access in

droves.

    c. __The Only Viable Option Now is a John Doe Lawsuit__

    Today, most internet service providers will only respond to

a subpoena to identify an account holder [regarding copyright

infringement] if that subpoena is issued pursuant to a court

order.[21]  Plaintiffs have also found that the only practicable way

of obtaining such an order is to file a federal lawsuit for

copyright infringement.

    For the foregoing reasons, Plaintiff respectfully requests

that this Court reinstate its initial Order granting expedited

discovery in this lawsuit.  In the alternative, Plaintiff

requests that the Court order Time Warner Cable and other service

providers to respond to future Copyright Act subpoenas Plaintiff

will issue pursuant to 17 U.S.C. § 512(h), with the same limited

---

[20] ISPs in this jurisdiction are no exception, despite this Court
having admonished that it "is not bound to follow the precedent
of *RIAA v. Verizon.*" *Garrett v. Comcast Communs., Inc.*, CA. No.
3:04-cv-693-P (N.D. Tex, 2004) (Solis, J.).
[21] *See, e.g.*, In Re: Verizon Corporate Services Corp., CA. No.
4:11-mc-00020-RAS (E.D. Tex, 2011) (Schell, R.) (Verizon resisted
a 512(h) subpoena; as the case was not decided on the merits, a
512(h) subpoena remains valid by statute in the Fifth Circuit.)

scope as Plaintiff's proposed discovery in this matter, so that

Plaintiff may dismiss this suit without prejudice and re-file

against the group of named defendants as those names are

obtained.

Respectfully Submitted,

*E F Stone*

Evan Stone
State Bar No. 24072371
624 W. University Dr., #386
Denton, Texas  76201
Phone: 469-248-5238
Fax:  310-756-1201
E-mail: lawoffice@wolfe-stone.com

**Certificate of Service**

I certify that a copy of this response was served on TWC by

e-mail via the Court's ECF notification system, today, October 7,

2011.

*E F Stone*

FILED

2011 APR -8 AM 9: 12

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

BY_____
                        DEPUTY

| | |
|---|---|
| IO GROUP, INC. d/b/a TITAN MEDIA, a California corporation, ) ) ) | |
| Plaintiff, ) | **CIVIL ACTION NO.: 1:11-cv-245-SS** |
| vs. ) | |
| JOHN DOE , an individual, ) ) | |
| Defendant. ) ) ) | |

~~[PROPOSED]~~ **ORDER GRANTING PLAINTIFF'S**
**MOTION FOR LEAVE TO TAKE DISCOVERY**
**PRIOR TO RULE 26 CONFERENCE**

Plaintiff Io Group, Inc. filed a Motion for Leave to Take Discovery Prior to the

Rule 26 Conference.  The purpose of the discovery is to identify the party responsible for

the infringing conduct alleged in the Complaint so that Plaintiff may amend the

complaint to name the proper defendant and proceed against that party.  Having

considered Plaintiff's arguments the court HEREBY GRANTS the motion *and permit the*
*taking of one (1) deposition.*
**IT IS SO ORDERED.**

Date: *April 7, 2011*

*Sam Sparks*
Sam Sparks
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---

PACIFIC CENTURY INTERNATIONAL          CASE NO.   **4:11cv2232**
LTD,

      Plaintiff,

v.

DOES 1 – 52,

      Defendants.

---

## <u>ORDER</u>

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's *Ex Parte*

Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference and all the papers filed

in connection with the motion, and relevant case law.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's *Ex Parte* Motion for Leave to Take

Discovery Prior to the Rule 26(f) Conference is GRANTED.

Plaintiff is hereby allowed to issue subpoenas pursuant to Fed. R. Civ.P.45 limited to the

following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the

Complaint and any other entity identified as a provider of Internet services to one of the

Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity

monitoring: information sufficient to identify each Defendant, including name, current

(and permanent) address, telephone number, e-mail address, and Media Access Control

address; it is further

1

ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash;

Finally, it is ORDERED that Plaintiff may not file an amended complaint until further order of this Court.

DATED: July 18, 2011

Kenneth M. Hoyt
United States District Judge

2

**\*\* NOT FOR PRINTED PUBLICATION \*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FIRST TIME VIDEOS LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 1:11-CV-231 |
| v. | § | |
| | § | JUDGE RON CLARK |
| DOES 1-11, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING IN PART MOTION FOR EXPEDITED DISCOVERY

Plaintiff First Time Videos, LLC filed suit against Defendants Does 1-11 for copyright infringement, alleging that Defendants illegally reproduced and distributed an adult video to which Plaintiff holds the copyright. Plaintiff now moves *ex parte* for leave to take expedited discovery, seeking to serve subpoenas to four Internet Service Providers ("ISPs") in order to discover the name, address, telephone number, email address, and Media Access Control address for each Defendant Doe.

Because this case cannot proceed until the Doe Defendants are identified, the court will grant in part Plaintiff's motion. Plaintiff is authorized to issue subpoenas at this time to ISP providers Road Runner, Verizon Online, Comcast Cable Communications, and AT&T Internet Services, requesting the names and physical street addresses that correspond to the eleven IP addresses identified by Plaintiff in Exhibit A to its Complaint and listed at the end of this Order.

## APPLICABLE LAW

The Federal Rules of Civil Procedure permit the court to authorize discovery on an expedited basis. *See, e.g.*, Fed. R. Civ. P. 26(d)(1); 30(a)(2)(A)(iii); 33(b)(2); 34(b)(2)(A). The Federal Rules do not provide a standard for the court to use when determining whether expedited discovery should be ordered, and the Fifth Circuit has not specifically endorsed a particular standard.

However, many district courts in the Fifth Circuit utilize a "good cause" standard, which essentially looks at the request in light of the totality of the circumstances. *See St. Louis Group, Inc. v. Metals & Additives Corp., Inc.*, —F.R.D.—, 2011 WL 1833460 at *2-3 (S.D. Tex. Apr. 26, 2011) (collecting cases). The burden to show good cause is on the party seeking expedited discovery, and "the subject matter related to requests for expedited discovery should be narrowly tailored in scope." *Id.* at *3. Among other reasons, courts have permitted expedited discovery when failing to do so would substantially impact the case from proceeding, and prevent Plaintiff from pursuing his or her claims. *Id.* at *4 (collecting cases).

## DISCUSSION

Here, Plaintiff requests that the court authorize it to issue subpoenas pursuant to Fed. R. Civ. P. 45 to four ISPs—Road Runner, Verizon Online, Comcast Cable Communications, and AT&T Internet Services—seeking the name, current and permanent address, telephone number, email address, and Media Access Control address[1] for each Defendant Doe. The only information Plaintiff currently has regarding these Defendant Does, whom Plaintiff claims illegally reproduced and distributed one of its copyrighted videos, is an Internet Protocol ("IP") address. In support of this

---

[1]A Media Access Control address is essentially a unique serial number that is assigned to each IP network adapter, set by the manufacturer. A MAC address is sometimes called a physical address.

motion, Plaintiff assets the following as "good cause" for expedited discovery: (1) irreparable harm will result because infringement is ongoing and continuous; (2) the case cannot proceed until the Doe Defendants are identified; and (3) the discovery sought is limited to "basic contact information." Plaintiffs also suggest that Defendants have diminished expectations of privacy in copyright infringement cases and that the First Amendment does not protect copyright infringement.

Several of the arguments put forth by Plaintiff have little to no merit. There is no actual evidence in the record that, as Plaintiff alleges, the infringement is ongoing and continuous. Further, the fact that the First Amendment does not protect copyright infringement is irrelevant to whether expedited discovery should be ordered.

However, because it is clear that the case cannot proceed until the Doe Defendants are identified, the court will grant in part Plaintiff's motion. Plaintiff is authorized to issue subpoenas at this time to ISP providers Road Runner, Verizon Online, Comcast Cable Communications, and AT&T Internet Services, requesting the names and physical street addresses that correspond to the eleven IP addresses identified by Plaintiff in Exhibit A to its Complaint and listed at the end of this Order. *See* Doc. # 1-1 at 2. There is no reason given why Plaintiff would also need the phone number, email address, and Media Access Control addresses for these individuals.

IT IS THEREFORE ORDERED that Plaintiff First Time Videos, LLC's Motion for Expedited Discovery [Doc. # 2] is GRANTED IN PART. Plaintiff is authorized to issue subpoenas at this time to ISP providers Road Runner, Verizon Online, Comcast Cable Communications, and AT&T Internet Services, requesting the names and physical street addresses that correspond to the following eleven IP addresses identified by Plaintiff in Exhibit A to its Complaint:

3

1.   173.174.42.236

2.   24.243.120.171

3.   24.242.0.5

4.   76.185.239.29

5.   76.182.217.100

6.   173.174.227.138

7.   173.74.56.62

8.   173.74.174.138

9.   98.201.144.80

10.   99.71.80.188

11.   99.64.61.218

So **ORDERED** and **SIGNED** this **14** day of **September, 2011.**

Ron Clark, United States District Judge

4

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Liberty Media Holdings, LLC, a California    No. CV-11-00892-PHX-NVW
    corporation,
10                Plaintiff,                      **ORDER**
11   vs.
12   Arizona Members of Swarm of November
13   15, 2010 to January 2, 2011, Sharing Hash
     File  AE340D0560129AFEE8D78CE07F23
14   94C7B5BC9C05; and Does 1 through 27,
15                Defendants.
16

17        Before the Court is "Plaintiff's *Ex-Parte* Motion for Early Discovery" (Doc. 4).

18   Having reviewed all of Plaintiff's filings with respect to this motion, and having

19   considered the requirements of the Cable Privacy Act, 47 U.S.C. § 551, the Court will

20   grant Plaintiff's motion.

21        Plaintiff Liberty Media Holdings is a California entity engaged in creating,

22   marketing, and distributing so-called "adult entertainment," including a motion picture

23   titled "Down on the Farm."   Liberty Media alleges that 27 persons duplicated and

24   distributed unauthorized copies of "Down on the Farm" through the Internet.  Liberty

25   Media has a record of the 27 IP addresses assigned to the computers used to effect this

26   distribution (Doc. 4-2). Each of these IP addresses was administered one of three Internet

27   service providers — Cox Communications, Qwest Communications, or Comcast Cable

28   — but Liberty Media does not know the names of the subscribers to whom those IP

1    addresses had been assigned.  Each of these subscribers is currently named as a Doe

2    Defendant.

3    Liberty Media now seeks pre-service discovery.  Specifically, Liberty Media

4    wants to subpoena Cox, Qwest, and Comcast for documents or information sufficient to

5    identify the subscribers to whom the suspect IP addresses had been assigned.  Liberty

6    Media has shown good cause for such discovery, for the sole purpose of identifying the

7    Doe Defendants.  Where the identity of alleged defendants will not be known prior to the

8    filing of a complaint, "the plaintiff should be given an opportunity through discovery to

9    identify the unknown defendants, unless it is clear that discovery would not uncover the

10   identities, or that the complaint would be dismissed on other grounds." *Gillespie v.*

11   *Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  The Court will therefore exercise its

12   discretion to allow Liberty Media to collect limited pre-service discovery from Cox,

13   Qwest, and Comcast and to excuse Liberty Media from the meet and confer requirements

14   of Rule 26(d) and Rule 26(f) for the sole purpose of ascertaining the identities of the Doe

15   Defendants.  The Court will also order Cox, Qwest, and Comcast — to the extent they are

16   "cable operator[s]" as defined by 47 U.S.C. § 522(5) — to comply with the notice

17   provision contained in 47 U.S.C. § 551(c)(2)(B).

18   Liberty Media also asks for authority to issue interrogatories to, or to depose, these

19   subscribers, once identified by Cox, Qwest, or Comcast.  Liberty Media seeks this

20   authority to determine whether or not each subscriber is a proper defendant (as opposed

21   to, *e.g.*, someone whose computer was being used without his or her knowledge).  The

22   Court will deny this request at this time.  The Federal Rules of Civil Procedure do not

23   permit issuing interrogatories to non-parties, and the authority to do so to a potential Doe

24   Defendant is at least questionable.  Further, depositions would appear to be an instance of

25   "overkill" at this stage.  However, Liberty Media has available to it all the tools of

26   informal discovery and dispute resolution, such as the telephone and the mailbox.

27   IT IS THEREFORE ORDERED that "Plaintiff's *Ex-Parte* Motion for Early

28   Discovery" (Doc. 4) is GRANTED IN PART.  Liberty Media is hereby excused from the

-2-

meet and confer requirement of Rules 26(d) and 26(f) of the Federal Rules of Civil Procedure, and may subpoena Cox Communications, Qwest Communications, and Comcast Cable for the specific purpose of discovering the identities of the subscribers to whom the IP addresses listed in Doc. 4-2 had been assigned at the time the alleged unauthorized distribution of "Down on the Farm" occurred.

IT IS FURTHER ORDERED that, if served with such a subpoena, Cox Communications, Qwest Communications, and Comcast Cable shall each:

1) immediately suspend any process that might delete the information sought by Liberty Media; and

2) have 21 calendar days from the date of service of the subpoena to—

    a) comply with the notice provision contained in 47 U.S.C. § 551(c)(2)(B), if the subpoenaed party is a "cable operator" as defined by 47 U.S.C. § 522(5), and

    b) respond to the subpoena.

Dated this 12th day of May, 2011.

_Neil V. Wake_
Neil V. Wake
United States District Judge

Michael W. Fattorosi, Esq., SBN 193538
michael@fattlegal.com
FATTOROSI & ASSOCIATES, P.C.
5850 Canoga Avenue, Suite 400
Woodland Hills, California 91367
(818) 881-8500, Fax: (818) 881-9008

Attorneys for Plaintiff, XPAYS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPAYS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1 through 843,<br><br>Defendants. | CASE NO. CV 11-652 SJO (MANx)<br><br>*[Assigned to the Honorable S. James Otero, Courtroom 1]*<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR EXPEDITED DISCOVERY**<br><br>Complaint Filed:   January 21, 2011<br>Trial Date:              Not Set |

///

///

///

1

[PROPOSED] ORDER

1    Having considered Plaintiff, XPAYS, INC.'s Plaintiff's Ex Parte Application for Expedited

2  Discovery, all documents filed in opposition thereto, the Cable Privacy Act (47 U.S.C. §551),

3  and good cause appearing therefore,

4    IT IS ORDERED THAT Plaintiff's ex parte application is GRANTED.

5    Plaintiff may engage in immediate discovery in this matter, including the issuing of

6  subpoenas to cable operators and Internet Service Providers to produce any and all

7  documents and/or information sufficient to identify the DOE defendants.

8    For each such subpoena, (a) the Internet Service Provider shall have seven (7)

9  calendar days after service of the subpoena to notify the subscriber that their identity is sought

10  by Plaintiff, and (b) each subscriber whose identity is sought shall have twenty one (21)

11  calendar days from the date of such notice to file any papers contesting the subpoena.

12    This Order is compliant with the requirements of the Cable Privacy Act (47 U.S.C.

13  §551).

14    **IT IS SO ORDERED**

15

16  March   3, 2011

17  _____
Honorable S. James Otero
Judge, United States District Court

18

19

20

21

22

23

24

25

26

27

28

2

D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN
584 Castro Street, Suite 879
San Francisco, California  94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

gill@sperleinlaw.com

Attorney for Plaintiff
IO GROUP, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IO GROUP, INC. d/b/a TITAN MEDIA, a California corporation, | **CASE NO.: 10-3647 (MEJ)** |
| Plaintiff, | ~~[PROPOSED]~~ **ORDER GRANTING PLAINTIFF LEAVE TO TAKE EARLY DISCOVERY** |
| vs. | |
| DOES 1-244, individuals, | |
| Defendants. | |

## ~~[PROPOSED]~~ ORDER

Having considered Plaintiff's Miscellaneous Administrative Request Pursuant to Local Rule 7-11 for Leave to Take Discovery Prior to Rule 26 Conference and finding good cause therefore,

**IT IS HEREBY ORDERED,** that Plaintiff is granted leave to take early discovery. Plaintiff may immediately serve on AT&T Internet a subpoena or subpoenas to obtain subscriber information for subscribers assigned IP addresses identified by Media Protector.  Plaintiff's

-1-

counsel shall issue the subpoena(s) in substantially in the same form as the example attached as Exhibit A to Plaintiff's Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference;

**IT IS FURTHER ORDERED,** that subpoenas authorized by this order and issued pursuant thereto shall be deemed appropriate court orders under 47 U.S.C. §551;

**IT IS FURTHER ORDERED,** that AT&T Internet, Inc. shall have twenty-one (21) days from the date they are served a copy of this order to respond to the subpoena in order that it may have sufficient time to provide notice to the subscribers whose subscriber information Plaintiff seeks to obtain thereby; and

**IT IS FURTHER ORDERED,** that good faith attempts by AT&T, Internet, Inc. to notify the subscribers shall constitute compliance with this order.

Dated:_ October 4, 2010

_____
CHIEF MAGISTRATE JUDGE MARIA-ELENA JAMES,
UNITED STATES DISTRICT COURT

[PROPOSED] ORDER GRANTING PLAINTIFF
LEAVE TO TAKE EARLY DISCOVERY

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

LIBERTY MEDIA HOLDINGS, LLC,          )    Civil No.11cv 575  MMA (NLS)
11                                    )
                   Plaintiff,         )    ORDER GRANTING MOTION TO
12    v.                              )    ALLOW PLAINTIFF LEAVE TO TAKE
                                      )    IMMEDIATE DISCOVERY AND
13    DOES 1-62,                      )    DENYING AS MOOT MOTION TO
                                      )    TREAT MOTION AS EMERGENCY
14                 Defendants.        )    MOTION
                                      )
15    ────────────────────────────    )    [Doc. Nos. 3, 4]

16

17    **I.     INTRODUCTION**

18          Plaintiff Liberty Media Holdings dba Corbin Fisher ("Liberty Media") produces, markets and

19    distributes adult entertainment products.  The products include photographs and videos that it publishes

20    on its websites, DVDs and books, and licenses to third party publishers for a fee.  Members pay Liberty

21    Media a monthly fee to access its website so they can view Liberty Media's photographic and

22    audiovisual works.  Liberty Media filed a complaint against Sixty-two John Doe defendants alleging

23    Copyright Infringement (17 U.S.C. § 501), Contributory Copyright Infringement, Conspiracy, and

24    Negligence.  Liberty Media alleges these John Doe defendants acted in a collective and interdependent

25    manner in the unlawful reproduction and distribution of Plaintiff's Motion Picture "Down on the Farm"

26    using BitTorrent technology.  (Compl. ¶ 2.)  Liberty Media claims that the Doe Defendants are "a group

27    of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a

28    particular unique file, otherwise known as a 'swarm.'" (Compl. ¶ 13.)  Liberty Media does not know the

1   names of the John Doe defendants, but does know their respective Internet Protocol (IP) addresses.

2   (Complaint ¶¶ 11, 18-204).

3        The Complaint alleges: "The Court has personal jurisdiction over Defendants, as Defendants

4   either reside in, solicit, transact, or are doing business within the Jurisdiction; they have committed to

5   [sic] unlawful and tortious acts both within and outside the Jurisdiction with the full knowledge that

6   their acts would cause injury in this Jurisdiction." (Complaint ¶ 6.).  The Complaint also states that

7   venue is proper: "Although the true identities of each and every member of the collective formed by the

8   Defendants is unknown to the Plaintiff at this time, on information and belief, each Defendant may be

9   found in this District and/or a substantial part of the infringing acts complained of herein occurred in

10  this District, and Defendants can reasonably anticipate being haled into court in this District."

11  (Complaint ¶ 9.)

12       Nine days after filing the complaint, Liberty Media filed this motion to take immediate

13  discovery.  Liberty Media seeks a court order allowing it to issue subpoenas to the John Doe

14  Defendants' Internet Service Providers (ISPs) requesting the defendants' personally identifiable

15  information.  Liberty Media asks that the court's order instruct these ISPs and cable operators--

16  specifically Charter Communications, Clearwire Corporation, Comcast Cable, Cox Communications,

17  Earthlink, Insight Communications Company, Qwest Communications, RCN Corporation, Time Warner

18  d/b/a Road Runner, and Verizon Internet Services --to produce any and all documents and/or

19  information sufficient to identify the user or users of the identified IP addresses during the dates and

20  times listed in the exhibit to Liberty Media's complaint.

21       For good cause shown, and with the restrictions described in this Order, the court **GRANTS**

22  Liberty Media's motion.  Liberty Media also filed a Motion to treat the pending motion as an emergency

23  motion. [Docket No. 4.]  The Motion to treat the Motion for Discovery as an Emergency Motion is

24  Denied as Moot.

25  **II.   DISCUSSION**

26       **A.   The Cable Privacy Act**

27       The Cable Privacy Act prohibits cable operators from disclosing personally identifiable

28  information regarding subscribers without either (1) the prior written or electronic consent of the

subscriber; or (2) a court order, provided the cable operator provides the subscriber with notice of the disclosure. 47 U.S.C. § 551(c)(1),(c)(2)(B). A cable operator is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. § 522(5). Accordingly, Liberty Media seeks a court order instructing the ISPs to produce documents and information sufficient to identify the users of the IP addresses.

### B.    Traditional Test for Early Discovery

Normally a party may not seek discovery from any source before the Rule 26(f) conference, unless that party obtains a stipulation or court order to conduct the discovery. Fed. R. Civ. P. 26(d)(1). A court order allowing the discovery may be appropriate "where the need for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). The *Semitool* court rejected a more rigid approach in favor of a good cause test that allows the court to exercise its traditional wide discretion in managing discovery and to consider the interests of justice. *Id.* at 275-76.

While discovery normally only takes place after a defendant has been served, where the alleged tortious activity occurs entirely on-line, "[s]ervice of process can pose a special dilemma for plaintiffs. . . . because the defendant may have used a fictitious name and address in the commission of the tortious acts." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). In determining whether a motion for expedited discovery should be granted to identify anonymous Internet users named as John Doe defendants, courts consider whether:

1.    the plaintiff can "identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court;"

2.    the plaintiff has identified "all previous steps taken to locate the elusive defendant;"and

3.    the "plaintiff's suit against defendant could withstand a motion to dismiss."
*Id.* at 578-580.

1    1.    <u>Identification of Defendants.</u>

2    Liberty Media provides the court with the unique IP addresses and names of the ISPs and/or

3    cable operators that provided internet access for the users of the identified IP addresses. (Complaint at

4    ¶¶ 18-204.) Liberty Media documented the alleged infringement of its registered works by the

5    individuals using the IP addresses. The requested discovery will provide the true names and addresses

6    of the individuals performing the alleged infringing acts. The court finds that Liberty Media has

7    sufficiently identified each John Doe defendant such that the court can determine that the defendants are

8    real persons or entities who may be sued in federal court.

9    2.    <u>Previous Steps Taken to Locate Defendants.</u>

10   Liberty Media has identified the Doe Defendants' IP addresses and ISPs. Because the

11   transactions in question occurred entirely online, the defendants have been elusive and the IP addresses

12   and ISPs are the only available identifying information. Without the requested discovery, there are no

13   other measures Liberty Media can take to identify the personal information for the John Doe defendants.

14   The court finds that Liberty Media has taken all the steps it can on its own to identify the defendants.

15   3.    <u>Withstanding a Motion to Dismiss</u>

16   a.    Copyright Infringement

17   "[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright;

18   and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act."

19   *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004.), *citing* 17 U.S.C. § 501(a) (2003).

20   Plaintiff alleges that it is the owner, and holds the copyright registration certificate, of the motion

21   picture that Defendants reproduced, distributed and publicly displayed without authorization.

22   (Complaint ¶ 1.) Plaintiff also alleges that Defendants acted collectively in the unlawful reproduction

23   and distribution of the motion picture. (Complaint ¶ 2.) Accordingly, it appears that Plaintiff has alleged

24   the prima facie elements of copyright infringement and could withstand a motion to dismiss this claim.

25   b.    Conspiracy

26   There are "three necessary elements of a conspiracy: (1) formation and operation of a

27   conspiracy; (2) wrongful acts done in furtherance of the agreed to plan, and (3) resulting damages."

28   *Jones v. AIG Risk Mgt.,* 766 F.Supp.2d 1049, 1060 (N.D. Cal. 2010), *citing Chicago Title Ins. Co. v.*

1   *Great Western Financial Corp.*, 69 Cal.2d 305, 316 (1968).  Liberty Media alleges that the Defendants

2   acted in a collective manner to effectuate the unlawful reproduction and distribution of the motion

3   picture using BitTorrent technology.  (Complaint ¶ 2.)  Liberty Media also alleges that each Doe

4   Defendant used a particular I.P. address to illegally republish and distribute the copyrighted motion

5   picture.  (Complaint ¶¶ 18-204.)  The Complaint also explains how each BitTorrent user who downloads

6   infringing material must also upload infringing material.  (Complaint ¶¶ 205-210.)  Finally, Liberty

7   Media claims damages in an amount to be proven at trial.  (Complaint, Request for Relief ¶ 2.)

8   Accordingly, it appears that Liberty Media could withstand a motion to dismiss this claim.

9                    c.       Negligence

10       "The elements of a negligence cause of action are a legal duty to use due care, a breach of that

11   duty, and the breach is the proximate or legal cause of the resulting injury." *Iversen v. California Village*

12   *Homeowners Ass'n*, --- Cal.Rptr.3d ----, 2011 WL 1034261 (Mar 23, 2011); *see also, e.g. Groce v.*

13   *Claudat*, 2010 WL 3339406 at *4 (S.D. Cal. Aug. 24, 2010.)  Liberty Media asserts: "Defendants failed

14   to secure their Internet access, which by virtue of this unsecured access, allowed the use of their Internet

15   accounts to perform the complained of copying and sharing of Plaintiff's copyrighted motion picture."

16   (Plaintiff's Points and Authorities at 4.)  This is all the information provided by Liberty Mutual.  The

17   Court has reviewed the Complaint and found no asserted legal duty in connection with the negligence

18   cause of action.  Thus, the Court cannot say that Liberty Media's cause of action for Negligence would

19   withstand a Motion to Dismiss.

20                    d.       Contributory Infringement

21       Because Plaintiff has  failed to address the cause of action for Contributory Infringement, the

22   Court is without sufficient information to assess whether or not that cause of action appears robust

23   enough to withstand a motion to dismiss.

24                    e.       The Complaint Can Withstand a Motion to Dismiss

25       The requirement that a complaint be able to withstand a motion to dismiss exists to "prevent

26   abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing

27   to pursue an action against defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579-80

28   (N.D. Cal. 1999)(comparing requirement to probable cause for a warrant in a criminal prosecution.).  In

1  this case, Liberty Media has alleged sufficient facts to withstand a motion to dismiss on at least one

2  claim asserted in this lawsuit.

3    **C.    Consideration of Joinder, Jurisdiction and Fairness to Doe Defendants**

4        The task before the Court is to weigh the need for discovery in light of the interests of justice.

5  *Semtiool*, 208 F.R.D. at 276. In actions such as this one, where the Defendants have not yet appeared, it

6  is the duty of the court to consider not only the prejudice to the ISP, but also the prejudice to the as yet

7  unnamed Doe Defendants and the interests of the Court in the just determination of every action. *See*

8  *Capitol Records, Inc. v. Does 1-16* 2007 WL 1893603 at * 1 (D. N.M. May 24, 2007) (denying

9  expedited discovery and recognizing  "the harm related to disclosure of confidential information.").

10  This concern is particularly appropriate in cases involving peer-to-peer file sharing. *Elektra*

11  *Entertainment Group, Inc. et al. v. O'Brien et al* 06-cv-5289 SJO (MANx) Docket No. 12 (C.D. Cal.

12  Mar. 2, 2007)("The concern of this court is that in these lawsuits, potentially meritorious legal and

13  factual defenses are not being litigated, and instead, the federal judiciary is being used as a hammer by a

14  small group of plaintiffs to pound settlements out of unrepresented defendants.")

15    1.    Joinder

16        One issue presented is whether all 62 Doe Defendants have properly been joined in this single

17  suit. *See, e.g. IO Group, Inc. v. Does 1-435*, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011)(noting that use

18  of the same ISP and peer to peer network is insufficient to establish proper joinder)(citing cases.) The

19  issue of joinder is one of concern to the court, especially where, as here, there is no named party to raise

20  the issue. As one court has noted, copyright  "plaintiffs have devised a clever scheme to obtain

21  court-authorized discovery prior to the service of complaints, but it troubles me that they do so with

22  impunity and at the expense of the requirements of Rule 11(b)(3) because they have no good faith

23  evidentiary basis to believe the cases should be joined." *IO Group, Inc. v. Does 1-435* at *6,  2011 WL

24  445043 (N.D.Cal. Feb. 3, 2011), *quoting Arista Records, LLC v. Does 1-27*,  at *19 n. 5 2008 WL

25  222283 (D.Me. Jan. 25, 2008).  Also of concern to the court is that: "a consequence of postponing a

26  decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars

27  [from lost filing fees] and only encourages Plaintiffs . . . to join (or misjoin) as many doe defendants as

28  possible." *Arista Records, LLC v. Does* 1-11,2008 WL 4823160, at * 6 (N.D. Ohio Nov. 3, 2008)

1   In this evolving area of law, some courts have found good cause to address the question of

2   joinder early in the litigation. As one court observed: "Postponing the issue of joinder to a day that in

3   all likelihood will never come only serves to aid Plaintiffs' attempt to avoid filing fees. While Plaintiffs

4   are certainly entitled to vindicate their rights, they must play by the Federal Rules in doing so." *Arista*

5   *Records, LLC v. Does 1-11*, 2008 WL 4823160 (N.D. Ohio Nov. 3, 2008), *quoting Sony BMG Music*

6   *Entm't v. Does 1-5*, No. CV 07-2434 SJO (JCx) (C.D.Cal. Aug. 29, 2007): *see also IO Group v. Does 1-*

7   *435*, 2011 WL 1219290 (N.D. Cal. Jan. 10, 2011)(severing doe defendants and modifying order

8   allowing early discovery); *Arista Records, LLC. v. Does 1-27*, 2008 WL 222283 (D. Me. January 25,

9   2008)(suggesting that plaintiffs may have violated Rule 11 by alleging that joinder is proper in order to

10  avoid paying filing fees); *Arista Records, LLC. v. Does 1-11*, 2008 WL 4823160 (N.D. Ohio Nov. 3,

11  2008)(finding that deferring the issue would only "aid Plaintiffs' attempt to avoid filing fees."); *but see,*

12  *e.g., Call of the Wild Movie, LLC, v. Does 1-1,062* — F.Supp.2d — 2011 WL 996786 (D. D.C. March

13  22, 2011)(collecting cases finding issue of joinder premature at early stages.)

14  After careful consideration of the issue, the Court agrees that the issue of joinder should be

15  addressed as early as possible. In this case, the complaint sufficiently *alleges* that defendants are

16  properly joined  due to the use of BitTorrent, which necessarily requires each user to be an uploader as

17  well as a downloader (*See Call of the Wild*, at *2). The Court notes, however, that a serious question is

18  presented as to whether the joinder will be proven appropriate once the necessary facts are established.

19           2.    Jurisdiction and Venue

20  Another serious issue presented is whether this court has personal jurisdiction over the Doe

21  Defendants. Plaintiff admits that they do not know the identity of the Doe Defendants. (Complaint ¶ 2.)

22  Nonetheless, Plaintiff asserts that Jurisdiction and Venue are proper in this court, going so far as to

23  assert "on information and belief, each Defendant may be found in this District and/or a substantial part

24  of the infringing acts complained of herein occurred in this District, and Defendants can reasonably

25  anticipate being haled into court in this District." (Complaint ¶ 9.)  The Court is not privy to any

26  information that would lead to the belief  that either each Defendant can be found within this district or

27  //

28  //

1    that a substantial part of the infringing acts alleged occurred in this District.[1]  Accordingly, the Court is

2    troubled by the notion that the authority of this court could be used to obtain confidential information

3    about Defendants over whom it lacks jurisdiction.  It is particularly troubling to consider that

4    Defendants may feel compelled to settle their cases when faced with the difficulties of litigating in a

5    foreign court.

6         Having carefully considered the issue, the Court  reluctantly concludes that the issue of

7    jurisdiction cannot be resolved without allowing the discovery sought.  Even though the discovery is

8    allowed, the Court notes that a significant issue as to personal jurisdiction remains.  *See IO Group v.*

9    *Laperna* 2009 WL 36608 (N. D. Cal. January 6, 2009)(No specific jurisdiction over Defendant who

10    improperly displayed copyrighted images on website.); *Pavlovich v. Superior Court*, 29 Cal.4th 262

11    (2002)(awareness of possible injury to California based industry is not enough by itself to support

12    jurisdiction.); *but see IO Group, Inc. v. Pivotal, Inc.*, 2004 WL 838164, at *5-6 (N.D.Cal. Apr. 19,

13    2004)(Jurisdiction proper over nonresident alleged to be illegal downloader).

14         3.    <u>Protections for the Doe Defendants</u>

15         In light of the serious issues present in this case relating to jurisdiction, protections for the Doe

16    Defendants are warranted to ensure that no defendant with  potentially valid objections to the

17    jurisdiction and venue of this court is forced to settle to avoid litigation in a distant court.  In order to

18    protect those defendants who have not yet appeared, Plaintiff may not release any information

19    identifying a Doe Defendant without further Order issued by this Court.  Each Doe Defendant shall have

20    the opportunity to challenge the jurisdiction of this Court and the subpoena issued prior to being

21    publicly accused of being an illegal downloader of adult entertainment.[2]  Additionally, Plaintiff shall

22    provide each ISP with a copy of this Order and the Complaint in this action to be sent to each

23    subscriber.  The ISPs shall serve each subscribed located within the jurisdiction of this court (in San

24

25         [1]The Court is aware that it is possible to identify where a person using a particular IP address is

26    likely to be physically located (*See Call of the Wild*, 2011 WL 996786 at * 9), but is not aware of any court requiring this information at this stage of the litigation.

27         [2]Attached as Appendix A to this Order is a Court-Directed Notice Regarding Issuance of Subpoena.  The Court-Directed Notice explains the issues and circumstances surrounding the subpoena

28    and contains a resource list to assist the subscriber in finding a lawyer and/or information about the how to challenge the subpoena.

11cv575 MMA (NLS)

Diego or Imperial county) via regular United States mail and shall serve each subscriber located outside

the jurisdiction of this Court via Federal Express or other overnight mail service.  Liberty Media shall

reimburse the ISPs for all mailing fees.   Moreover, if any Doe Defendant seeks to challenge either the

jurisdiction of this court or the subpoenas issued, they may do so anonymously and shall have the right

to remain anonymous until such time as the Court Orders that the identifying information can be

released.

## III.    CONCLUSION

For Good Cause shown, It Is Hereby Ordered that:

1.      Liberty Media may serve subpoenas, pursuant to Fed. R. Civ. P. 45, on Charter

Communications, Clearwire Corporation, Comcast Cable, Cox Communications, Earthlink, Insight

Communications Company, Qwest Communications, RCN Corporation, Time Warner d/b/a Road

Runner, and Verizon Internet Services  (collectively "the ISPs") that seek information sufficient to

identify the Defendants, including their names, current addresses, telephone numbers and e-mail

addresses;

2.      Liberty Media may only use the information disclosed for the sole purpose of

protecting its rights in pursuing this litigation and may not release any identifying information without a

court order allowing the release of the information;

3.      Within seven calendar days after service of the subpoenas, the ISPs shall notify

the subscribers that their identities are sought by Liberty Media and shall serve a copy of this order and

the Complaint in this action on each subscriber.  The ISP shall serve the subscribers located in Imperial

and San Diego Counties via regular United States Mail and shall notify all other subscribes via Federal

Express or other overnight mail service.  Each subscriber whose identify is sought may, within twenty-

one calendar days from the date of such notice, file documents with the Court that contest the subpoena;

4.      If any of the ISPs wishes to move to quash the subpoena issued to it, the ISP

shall do so before the return date of the subpoena.  If such a motion is brought,  the ISP shall preserve

the information sought by Liberty Media in the subpoena pending resolution of such motion.

5.      Liberty Media shall provide the ISPs with sufficient copies of this Order and the

Complaint in this action  to be served on each subscriber when the subpoenas are served on each of

them.

1          6.      Liberty Media shall reimburse the ISPs for all mailing fees.

2      IT IS SO ORDERED.

3

4    DATED: May 12, 2011

5

6                                              Hon. Nita L. Stormes
                                               U.S. Magistrate Judge
7                                              United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv575 MMA (NLS)

APPENDIX A

**COURT-DIRECTED NOTICE REGARDING ISSUANCE OF SUBPOENA**

A subpoena has been issued directing your Internet Service Provider ("ISP"), to disclose your name. The subpoena has been issued because you have been sued in the United States District Court for the Southern District of California, in San Diego, California as a "John Doe" by Liberty Media Holdings, LLC. You have been sued for infringing copyrights on the Internet by uploading and/or downloading a motion picture. The owner of the copyright to the movie, has identified you only as a "John Doe" and have served a subpoena on your ISP to learn your identity. This notice is intended to inform you of some of your rights and options.

**YOUR NAME HAS NOT YET BEEN DISCLOSED.**
**YOUR NAME WILL BE DISCLOSED IN 21 DAYS**
**IF YOU DO NOT CHALLENGE THE SUBPOENA.**

Your name has not yet been disclosed. The record companies have given the Court enough information about your alleged infringement to obtain a subpoena to identify you, but the Court has not yet decided whether you are liable for infringement. You can challenge the subpoena in Court. You have 21 days from the date that you receive this notice to file a motion to quash or vacate the subpoena. If you file a motion to quash the subpoena, your identity will not be disclosed until the motion is resolved (and the Plaintiff cannot proceed against you until you are identified). The Resource List in this notice can assist you in locating an attorney, and lists other resources to help you determine how to respond to the subpoena. If you do not file a motion to quash, at the end of the 21 day period, your ISP will send the plaintiff your identification information. The Plaintiff may contact you, but may not release your name without a Court Order.

**OTHER ISSUES REGARDING THE LAWSUIT AGAINST YOU**

To maintain a lawsuit against you in the Southern District of California, the Plaintiff must establish jurisdiction over you in California. If you do not live or work in California, or visit the state regularly, you may be able to challenge the California court's jurisdiction over you. If your challenge is successful, the case in California will be dismissed, but the Plaintiff may be able to file against you in another state where there is jurisdiction. Additionally, you can challenge "joinder," the fact that Plaintiff has sued 62 defendants together and Plaintiff must establish that the alleged violations arose out of the same transaction, occurrence, or series of transactions and occurrences.

You may also wish to find your own lawyer (see resource list below) to help you evaluate whether it is in your interest to try to reach a settlement or to defend against the lawsuit.

**RESOURCE LIST**

The organizations listed below provide guidance on how to find an attorney and court process. If you live in or near California or San Diego, the second and third listings below provide referrals for local attorneys.

American Bar Association
http:// www. abanet/org/ legal services/ findlegal help/ home. htm

California Bar Association
http:// www. calbar.org

San Diego County Bar Association
http:// www. sdcba.org

1  Electronic Frontier Foundation
   454 Shotwell Street
2  San Francisco, California 94110-1914
   email: Information@eff. org
3  https://www.eff.org/issues/file-sharing/subpoena-defense

4  The Southern District of California
   www.casd.uscourts.gov
5  The website contains important information, such as the Local Rules, Contact Information and answers
   to Frequently Asked Questions
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01656

PATRICK COLLINS, INC.,
　　　　Plaintiff,

11-CV-01656-CMA-MJW

v.

JOHN DOES 1-26,
　　　　Defendants.

## ORDER GRANTING MOTION FOR LEAVE
## TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f)
### CONFERENCE   ( Docket No. 7 )

THIS CAUSE came before the Court upon Plaintiff's Motion for Leave to Serve
Third Party Subpoenas Prior to a Rule 26(f) Conference (the "Motion"), and the Court
being duly advised in the premises does hereby:

ORDER AND ADJUDGE:

1.　　Plaintiff established that "good cause" exists for it to serve third party
subpoenas on the Defendants' Internet Service Providers (the "ISPs"). See UMG
Recording, Inc. v. Doe, 2008 WL 4104214, *4 (N.D. Cal. 2008); and Arista Records LLC
v. Does 1-19, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008).

2.　　Plaintiff may serve each of the ISPs with a Rule 45 subpoena commanding
each ISP to provide Plaintiff with the true name, address, telephone number, e-mail
address and Media Access Control ("MAC") address of the Defendant to whom the ISP
assigned an IP address. Plaintiff shall attach to any such subpoena a copy of this Order.

3.　　Plaintiff may also serve a Rule 45 subpoena in the same manner as above on
any service provider that is identified in response to a subpoena as a provider of internet
services to one of the Defendants.

4.　　Each of the ISPs that qualify as a "cable operator," as defined by 47 U.S.C.
§ 522(5), which states:

the term "cable operator" means any person or group of persons

　　(A) who provides cable service over a cable system and directly or

　　　　through one or more affiliates owns a significant interest in such

cable system, or

(B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

A cable operator may disclose such [personal identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

by sending a copy of this Order to the Defendant.

5.    The subpoenaed ISPs shall not require Plaintiff to pay a fee in advance of providing the subpoenaed information; nor shall the subpoenaed ISPs require Plaintiff to pay a fee for an IP address that is not controlled by such ISP, or for duplicate IP addresses that resolve to the same individual, or for an IP address that does not provide the name of a unique individual, or for the ISP's internal costs to notify its customers. If necessary, the Court shall resolve any disputes between the ISPs and Plaintiff regarding the reasonableness of the amount proposed to be charged by the ISP after the subpoenaed information is provided to Plaintiff.

6.    Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on an ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint.

DONE AND ORDERED this 11th day of August, 2011.

By: _____

MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

11-cv-01656-CMA-MJW

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

G2 PRODUCTIONS, LLC,

      Plaintiff,

      v.

JOHN DOES 1-83,

      Defendants.

Civil Action No. 10-041 (CKK)

## ORDER
(January 21, 2010)

In accordance with the accompanying Memorandum Opinion, it is, this 21st day of

January, 2010, hereby

**ORDERED** that Plaintiff's [4] Motion for Leave to Take Discovery Prior to Rule 26(f)

Conference is GRANTED; it is further

**ORDERED** that Plaintiff is allowed to serve immediate discovery on the internet service

providers (ISPs) SBC Internet Services, Inc., Comcast Corporation, and Road Runner to obtain

the identity of each John Doe Defendant by serving a Rule 45 subpoena that seeks information

sufficient to identify each Defendant, including name, current (and permanent) addresses,

telephone numbers, email addresses, and Media Access Control addresses; it is further

**ORDERED** that Plaintiff is allowed to serve a Rule 45 subpoena in the same manner as

above to any ISP that is identified in response to a subpoena as a provider of internet services to

one of the John Doe Defendants; it is further

**ORDERED** any information disclosed to Plaintiff in response to a Rule 45 subpoena may

be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its

Complaint; it is further

**ORDERED** that if and when an ISP is served with a subpoena, the ISP shall give written

notice, which may include email notice, to the subscribers in question within five business days;

it is further

**ORDERED** that if the ISP and/or any Defendant wants to move to quash the subpoena,

the party must do so before the return date of the subpoena, which shall be 25 days from the date

of service; it is further

**ORDERED** that the ISP shall preserve any subpoenaed information pending the

resolution of any timely filed motion to quash; and it is further

**ORDERED** that Plaintiff shall provide each ISP with a copy of this Order and

accompanying Memorandum Opinion along with its subpoena.


Date:   January 21, 2010

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PATRICK COLLINS, INC.,

      Plaintiff,

-vs-            Case No.  6:11-cv-428-Orl-31GJK

JOHN DOES 1-7,

      Defendants.

_____

## ORDER

  This cause came on for consideration without oral argument on the following motion

filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 2)** |
| **FILED:** | **March 21, 2011** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

## I.  BACKGROUND

  On March 21, 2011, Patrick Collins, Inc. ("Plaintiff") filed a complaint ("Complaint")

against John Does 1-7 (the "Defendants") alleging violation of the United States Copyright Act

of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). Doc. No. 1.  On the same

day, Plaintiff filed a Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f)

Conference and Incorporated Memorandum of Law (the "Motion"). Doc. No. 2.

In the Complaint, Plaintiff alleges that it is the owner of United States Copyright

Registration Number PA0001691543 (the "Registration") for the motion picture "Brazilian

Babes" (the "Work"). Doc. No. 1 at 3.  Plaintiff maintains that each of the Defendants installed a

BitTorrent Client onto his or her computer, which ultimately enabled them to view and distribute

the Work. *Id.* at 4-8.  In the Motion, Plaintiff explains that it only knows the Defendants by their

respective Internet Protocol ("IP") addresses and the Internet Service Providers ("ISPs") can use

the IP addresses to identify the Defendants.  Doc. No. 2 at 1.  Accordingly, Plaintiff seeks leave

of Court to serve a Rule 45 subpoena on the ISPs and any related intermediaries. *Id.* at 2.

Plaintiff states that the subpoenas will seek "the true name, telephone number, e-mail address

and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP

address." *Id.*[1]   Plaintiff states that without the requested information, Plaintiff will not be able to

serve the Defendants or pursue this lawsuit.  Doc. No. 2 at 2.

## II.    ANALYSIS

Federal Rule of Civil Procedure 26(d)(1) states: "A party may not seek discovery from

any source before the parties have conferred as required by Rule 26(f), except in a proceeding

exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by

stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  In this case, Plaintiff may only obtain

expedited discovery by court order.  "A court may allow expedited discovery upon a showing of

good cause." *Arista Records LLC v. Does 1-7*, 2008 WL 542709, *1 (M.D. Ga. Feb. 25, 2008)

---

[1] Plaintiff explains that a MAC address is a number that identifies the computer used for the infringing activity. *Id.* at n. 1.

(citing *Nassau Terminals, Inc. v. M/V Bering Sea*, 1999 WL 1293476, at *1 (M.D. Fla. July 1, 1999) ("The moving party[] ... must show good cause for departing from the usual discovery procedures.")).

In this case, it appears there is no alternative way for Plaintiff to obtain the information requested.   Furthermore, the ISP logs may be destroyed prior to the Rule 26(f) conference. Accordingly, the Court finds Plaintiff has shown good cause to serve the third party subpoenas prior to the Rule 26(f) conference and the Motion (Doc. No. 2) is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on May 26, 2011.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CV-22103-SEITZ/SIMONTON

PINK LOTUS ENTERTAINMENT, LLC,

      Plaintiff,

  vs.

JOHN DOES 1 – 53,

      Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE

This Matter is before the Court upon the Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to the Rule 26 (f) Conference (DE # 5). The Motion has been referred to undersigned United States Magistrate Judge (DE # 7).

The Court has reviewed the Complaint and the attached Exhibit A, the Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference and all the papers filed in connection with the motion, and relevant case law. Accordingly, it is hereby

**ORDERED** that Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference (DE # 5) is **GRANTED**. It is further

**ORDERED** that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to the following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the Complaint and any other entity identified as a provider of Internet services to one of the Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity monitoring: information sufficient to identify each Defendant, including name, current (and permanent) address, telephone number, e-mail address, and Media Access Control address.

It is further

**ORDERED** that any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint. It is further

**ORDERED** that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers. It is further

**ORDERED** that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity. It is further

**ORDERED** that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order. It is further

**ORDERED** that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service. It is further

**ORDERED** that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash. It is

**ORDERED** that Plaintiff may not file an amended complaint until further order of

2

this Court.

   **DONE AND ORDERED** at Miami, Florida, this 23rd day of June 2011.


                                        _Andrea M. Simonton_
                                        _____
                                        ANDREA M. SIMONTON
                                        UNITED STATES MAGISTRATE JUDGE


Copies furnished via CM/ECF:
The Honorable Patricia A. Seitz
        United States District Judge

All Counsel of Record

3

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MILLENNIUM TGA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 10 CV 5603 |
| | ) | |
| DOES 1-100, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

### Order

Plaintiff Millennium TGA, Inc.'s *Ex Parte* Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference [5] is granted as follows:

1)   Plaintiff is allowed to serve immediate discovery on the Internet Service Providers (ISPs) listed in Exhibit A to the Complaint filed in this matter to obtain the identify of each Doe Defendant by serving a Rule 45 subpoena that seeks information sufficient to identify each Defendant, including name, current (and permanent) addresses, telephone numbers, email addresses and Media Access Control addresses.

2)   Plaintiff may also serve immediate discovery on any ISP identified by the same means detailed in the Declaration and Motion, or identified as providing network access or online services to one or more Doe Defendants, by an ISP upon whom a Rule 45 subpoena is served, for which an infringing download has been identified by individual IP address together with the date and time access to a torrent swarm by such IP address was made for the purpose of downloading an unlawful copy of the Plaintiff's copyrighted creative works.  Such Rule 45 subpoena shall seek information sufficient to identify each Doe Defendant, including his or her name, current (and permanent) addresses,

telephone number, e-mail address, and Media Access Control Address.

3) Plaintiff is allowed to serve a Rule 45 subpoena in the same manner as above to any ISP that is identified in response to a subpoena as a provider of Internet services to one of the Doe Defendants.

4) Any information disclosed to Plaintiff in response to a Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint.

5) Plaintiff shall provide each ISP with a copy of this Order.

Michael T. Mason
United States Magistrate Judge

Dated: September 13, 2010

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

Hard Drive Productions Inc.,                        CASE NO. 4:11-cv-00059-SEB-WGH

     Plaintiff

                                           Judge: Sarah Evans Barker

v.                                          Magistrate Judge: William G. Hussmann

DOES 1 – 21,


     Defendants

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY
## PRIOR TO THE RULE 26(f) CONFERENCE

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's *Ex Parte*

Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference and all the papers filed

in connection with the motion, and relevant case law.  Accordingly, it is hereby

ORDERED that Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to the

Rule 26(f) Conference is GRANTED; it is further

ORDERED that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to

the following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the

Complaint and any other entity identified as a provider of Internet services to one of the

Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity

monitoring: information sufficient to identify each Defendant, including name, current

(and permanent) address, telephone number, e-mail address, and Media Access Control

address; it is further

1

ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash;

Finally, it is ORDERED that Plaintiff may not file an amended complaint until further order of this Court.

DATED:   06/06/2011

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MEDIA HOLDINGS, LLC,

        Plaintiff,

vs.

SWARM SHARING HASH FILE
A3E6F65F2E3D672400A5908F64ED55B66A
0880B8; AND DOES 1 through 9,

        Defendants.

Civil Action No. 11-cv-10801-WGY

## ~~[PROPOSED]~~ ORDER GRANTING
## PLAINTIFF'S EMERGENCY EX-PARTE MOTION FOR EARLY DISCOVERY

Upon consideration of plaintiff's Emergency Motion for Leave For Early Discovery (D.N 2), plaintiff's supporting memorandum and the Dinkela Declaration (D.N. 3, 4), plaintiff's Motion is hereby **GRANTED**. It is further **ORDERED** as follows:

1.  Plaintiffs may take immediate discovery of Comcast Cable, Charter Communications, Verizon Internet Services (collectively, the "ISPs") to obtain the identity of each Doe defendant by serving a Rule 45 subpoena that seeks information sufficient to identify each Doe defendant, including name, address (present and at the time of infringement), telephone number, e-mail address, Media Access Control ("MAC") address, and the ISPs' terms of service applicable for each defendant.

2.  The ISPs are authorized, pursuant to the Cable Privacy Act, 47 U.S.C. § 551(c)(2)(B), to comply with this subpoena, subject to the further conditions set forth in this Order.

3.  Plaintiffs may use the information obtained by this Rule 45 subpoena solely for the purpose of protecting plaintiffs' rights under the Copyright Act.

4. Plaintiffs shall attach the Court Directed Notice Regarding Issuance of Subpoena, a copy of which is attached to this Order, to its Rule 45 subpoena.  The Rule 45 subpoena shall instruct the ISPs to distribute a copy of the Notice to each Doe defendant within seven days of service of the subpoena.

5. The ISPs shall not respond to the Rule 45 subpoena until twenty one days after it has sent the Notice to each Doe defendant.

6. The Plaintiff may serve additional limited discovery on a Doe defendant, once identified, for the sole purpose of ascertaining whether the individual identified is a proper defendant in the case.

**SO ORDERED**

Dated: *May 10, 2011*                                   *William H. Young*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIGITAL CONTENT, INC., Plaintiff, | * * * * * | |
| v. | * | Civil Action No. 10-cv-03403-AW |
| DOES 1 - 37, *et al.*, Defendants. | * * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Order**

Pending before the Court is Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference. *See* Doc. No. 5. Plaintiff Digital Content, Inc. filed this action against 37 John Doe defendants for copyright infringement. Plaintiff allegedly owns exclusive distribution rights to a pornographic movie that is being illegally distributed over the Internet by various peer-to-peer file-sharing technologies, including BitTorrent. Plaintiff claims to know the Internet protocol address ("IP address") of each infringing defendant, but not their real names, addresses, or other identifying information.

The entity that possesses information linking an IP address to real identifying information is the Internet Service Provider ("ISP") for that IP address. ISPs, such as Comcast or Verizon, maintain temporary internal logs that record the date, time, and customer identity for each IP address serviced by that ISP. However, Plaintiff indicates that these records are only temporary, and that ISPs delete them after a short period of time. Plaintiff's motion seeks limited discovery from the ISPs that service the allegedly infringing IP addresses so that Plaintiff can discover the identity of the defendants and serve them with process.

1

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). When a plaintiff seeks to learn the identities of unknown defendants through pre-service subpoenas under Rule 45 of the Federal Rules of Civil Procedure, he or she should be allowed to do so "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Here, it is far from "clear that discovery would not uncover the identities" of the defendants, *id.*; indeed, unless the ISPs have already deleted the temporary IP logs, they should have all of the identifying information for the alleged infringers in their records.

Furthermore, the Court is not prepared to hold, at this early, *ex parte* stage, that it is "clear" that "the complaint would be dismissed." *Id.* If there are clear reasons why the case should be dismissed or why the discovery requests are otherwise improper, the ISPs or the John Doe defendants can raise those objections by filing motions to quash the subpoenas. Accordingly, it is, this 10th day of December, 2010, ordered that:

1) Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference, Doc. No. 5, is GRANTED,

2) From each ISP that the Plaintiff has linked to an allegedly infringing IP address, Plaintiff may seek information about the name, current (and permanent) addresses, telephone numbers, e-mail addresses, and Media Access Control addresses of each allegedly infringing user serviced by that ISP,

2

3)  Any information disclosed to Plaintiff in response to a Rule 45 subpoena may be used

solely for the purpose of identifying the defendants for purposes of this litigation,

4)  Any ISP receiving a subpoena must preserve any information subject to the subpoena

pending the resolution of any motion to quash,

5)  Any motion to quash must be filed before the return date of the subpoena, which shall

be thirty (30) days from the date of service, and

6)  The Clerk transmit a copy of this Order to Counsel.

                                        /s/
                    _____
                    Alexander Williams, Jr.
                    UNITED STATES DISTRICT JUDGE

**The McDaniel Law Firm, PC**
54 Main Street
Hackensack, New Jersey 07601
(201) 845-3232
(201) 845-3777 - facsimile
*Attorneys for Plaintiff Baseprotect UG, Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BASEPROTECT UG, LTD., a German Corporation, <br><br>            Plaintiff, <br><br>    v. <br><br> JOHN DOES 1-X (such persons being presently unknown), <br><br>           Defendants. | Civ. Action. No. 2:11-cv-02021(DMC)(JAD) <br><br> **ORDER** |

**THIS MATTER** having been brought before the Court upon application of The McDaniel Law Firm, P.C., Jay R. McDaniel, Esq. appearing for Plaintiff Baseprotect UG, Ltd., seeking leave to take expedited discovery prior to the Rule 26 conference and the Court having considered the supporting papers filed and good cause having been shown;

It is on this 6ᵗʰ day of May , 2011

**ORDERED** that Plaintiff is hereby granted leave to take expedited discovery prior to the Rule 26 conference; it is further

**ORDERED** that Plaintiff may immediately serve Rule 45 subpoenas to each and every Internet Service Providers (ISPs) identified in the Exhibit A attached to the Complaint, as well as any other entity later identified, as a provider of Internet services to one of the Doe

Defendants to obtain all information sufficient to identify each Defendant based on supplied IP addresses, but limited to name, current (and permanent) address; it is further

**ORDERED** that any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of prosecuting Plaintiff's rights as set forth in its Complaint; it is further

**ORDERED** that the ISPs shall produce such information in an expeditious manner, but on a rolling basis as the information can be obtained and as it becomes available; it is further

**ORDERED** that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

**ORDERED** that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

**ORDERED** that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order to the necessary entities; it is further

**ORDERED** that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 20 days from the date of service; and it is further

**ORDERED** that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

DATED: 3/6/11

_____
Hon. Joseph A. Dickson, U.S.M.J.

1
2
3
4
5

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

6   LIBERTY MEDIA HOLDINGS, LLC,        )
7                      Plaintiff,       )        Case No.  2:11-cv-00637-RLH-GWF
                                        )
8   vs.                                 )        **ORDER**
                                        )
9   SWARM OF NOVEMBER 15 to             )
    DECEMBER 9, 2010, *et al.*,          )        Motion for Early Discovery (#2)
10                                       )
                       Defendants.      )
11  _____ )

12        This matter is before the Court on Plaintiff Liberty Media Holdings, LLC's Motion for

13   Early Discovery (#2), filed April 22, 2011.

## BACKGROUND

15        Plaintiff is a California-based multimedia company suing a series of John Doe defendants

16   for copyright infringement.  Plaintiff alleges that the defendants used the internet services of cable

17   providers Cox Communications, Charter Communications and Clearwire Corporation to download

18   and distribute unauthorized copies of Plaintiff's media in violation of its copyrights.  The

19   Complaint (#1) identifies the Defendants by their internet protocol ("IP") addresses which have

20   been assigned to them by the cable or internet service providers.   Plaintiff states that it is otherwise

21   unable to identify the Defendants unless it can obtain subscriber identity information from the cable

22   service providers.  Plaintiff requests that the Court enter an order authorizing it to serve subpoenas

23   on the third-party cable providers Cox Communications, Charter Communications and Clearwire

24   Corporation to require them to disclose personal identification information for the John Doe

25   defendant/subscribers who are identified in the Complaint by their internet protocol ("IP")

26   addresses  (*Id.*)

27   . . .

28   . . .

**DISCUSSION**

Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding that is exempt from initial disclosure under Rule 26(a)(1)(B), or when authorized by the rules, stipulation or court order. Other courts have found good cause to permit early discovery to obtain the identities of individuals named as Doe defendants where the Plaintiff is unable to obtain their identities without discovery. Such circumstances occur when the defendants are persons who have allegedly engaged in wrongful conduct through internet communications or activities, and their identities are unknown to the plaintiff, except for the internet protocol ("IP") addresses assigned to them. *See Arista Records LLC v. John Does, 1-19*, 551 F.Supp.2d 1, (D.D.C. 2008).

Non-parties Cox Communications, Charter Communications and Clearwire Corporation are arguably cable service providers within the meaning of the Cable Communications Act, 47 U.S.C. § 551. Pursuant to that Act, and in the absence of a cable subscriber's express consent, a party seeking to obtain a subscriber's personal identification information from a cable service provider must obtain "a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." 47 U.S.C. § 551(c)(2)(B). Regardless of whether the Act applies to the provider, the Court may enter such an order pursuant to Fed.R.Civ.P. 26. *See Arista Records LLC v. John Does 1-19*, 551 F.Supp.2d at 5-9. Plaintiff has shown good cause for the issuance of an order pursuant to Rule 26 and/or 47 U.S.C. § 551 in that it will not otherwise be able to identify and serve the John Doe Defendants without such discovery.

Accordingly, Plaintiff is authorized to serve a Rule 45 subpoena, together with a copy of this order, on Cox Communications, Charter Communications and Clearwire Corporation to obtain the identity of each subscriber John Doe Defendant identified by an Internet Protocol ("IP") address in Plaintiff's Complaint, including the subscriber's name, his or her current (or permanent) address, telephone number, email address and IP address. Any information disclosed to Plaintiff in response to the Rule 45 subpoenas may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in the Complaint.

. . .

2

Within five (5) business days of being served with the subpoena and this Order, Cox Communications, Charter Communications and Clearwire Corporation shall give written notice of the subpoena and order, which may include email notice, to the Defendant subscribers in question. If the cable service providers and/or any Defendant intend to file a motion to quash the subpoena, they must do so before the return date of the subpoena, which shall be 25 days from the date of service of the subpoena on Cox Communications, Charter Communications and Clearwire Corporation. The cable service providers **shall not respond** to the subpoenas until 25 days after the date of service of the subpoena, unless the subscriber communicates that they have no objection to disclosure, so that Defendants may have an opportunity to file a motion to quash. Cox Communications, Charter Communications and Clearwire Corporation shall preserve any subpoenaed information pending the resolution of any timely filed motion to quash.

Plaintiff's request to serve interrogatories on the Defendants or to take their depositions once they have been identified, but prior to service of the Complaint, the filing of responsive pleadings by the Defendants, or a Rule 26(f) conference between the parties is denied. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Liberty Media Holdings, LLC's Motion for Early Discovery (#2) is **granted**, in part, and **denied**, in part, in accordance with the foregoing order.

DATED this 9th day of May, 2011.

GEORGE FOLEY, JR.
United States Magistrate Judge

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

PATRICK COLLINS, INC.,
                       Plaintiff,

           vs.

JOHN DOES 1-15,
                    Defendants.

-------------------------------------------------------------X

**Civil Action Nos**: 11-CV-1264
11-CV-1265, 11-CV-1267,
11-CV-1268, 11-CV-1269,
11-CV-1270, 11-CV-1271,
11-CV-1272, 11-CV-1273,
11-CV-1274

## ORDER GRANTING MOTION FOR LEAVE
## TO SERVE THIRD PARTY SUBPOENAS PRIOR TO RULE 26(f) CONFERENCE

Upon the Plaintiff's motion for leave to serve third party subpoenas prior to a Rule 26(f) Conference (the "Motion"), the Declaration of Tobias Fieser, and the accompanying memorandum of law, it is hereby ordered that:

1.     Plaintiff established that "good cause" exists for it to serve third party subpoenas on the Internet Service Providers listed on Exhibit A to the Motion (the "ISPs"). See UMG Recording, Inc. v. Doe, 2008 WL 4104214, *4 (N.D. Cal. 2008); and Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008);

2.     Plaintiff may serve each of the ISPs with a Rule 45 subpoena commanding each ISP to provide Plaintiff with the true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP assigned an IP address as set forth on Exhibit A to the Motion. Plaintiff shall attach to any such subpoena a copy of the Complaint, Motion and this Order;

3.     Plaintiff may also serve a Rule 45 subpoena in the same manner as above on any service provider that is identified in response to a subpoena as a provider of internet services to one of the Defendants;

{00006447.DOC:1 }

1

4.    Each of the ISPs that qualify as a "cable operator," as defined by 47 U.S.C. § 522(5),

which states:

the term "cable operator" means any person or group of persons

(A)   who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or

(B)   who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

A cable operator may disclose such [personal identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

by sending a copy of the Complaint, the Motion and this Order to the Defendant;

5.    The subpoenaed ISPs shall not require Plaintiff to pay a fee in advance of providing the subpoenaed information; nor shall the subpoenaed ISPs require Plaintiff to pay a fee for an IP address that is not controlled by such ISP, or for duplicate IP addresses that resolve to the same individual, or for an IP address that does not provide the name of a unique individual, or for the ISP's internal costs to notify its customers.  If necessary, the Court shall resolve any disputes between the ISPs and Plaintiff regarding the reasonableness of the amount proposed to be charged by the ISP after the subpoenaed information is provided to Plaintiff; and

6.    Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on an ISP for purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint.

**ORDERED** this 7 day of ___Apri l___ , 2011.

By _____

UNITED STATES MAGISTRATE JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 01 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

K-BEECH, INC.,

                Plaintiff,

        vs.                        Civil Action No.11-4777(GBD)

JOHN DOES 1-21,

                Defendants.

------------------------------------------------------------X

## [PROPOSED] ORDER GRANTING MOTION FOR LEAVE
## TO SERVE THIRD PARTY SUBPOENAS PRIOR TO A RULE 26(f) CONFERENCE

**THIS CAUSE** came before the Court upon Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (the "Motion"), and the Court being duly advised in the premises does hereby:

### FIND, ORDER AND ADJUDGE:

1.     Plaintiff established that "good cause" exists for it to serve third party subpoenas on the Internet Service Providers listed on Exhibit A to the Motion (the "ISPs"). See UMG Recording, Inc. v. Doe, 2008 WL 4104214, *4 (N.D. Cal. 2008); and Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008).

2.     Plaintiff may serve each of the ISPs with a Rule 45 subpoena commanding each ISP to provide Plaintiff with the true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP assigned an IP address as set forth on Exhibit A to the Motion. Plaintiff shall attach to any such subpoena a copy of this Order.

3.     Plaintiff may also serve a Rule 45 subpoena in the same manner as above on any service provider that is identified in response to a subpoena as a provider of internet services to one of the Defendants.

EXHIBIT B                       1

4.     Each of the ISPs that qualify as a "cable operator," as defined by 47 U.S.C. § 522(5),

which states:

the term "cable operator" means any person or group of persons

(A)  who provides cable service over a cable system and directly or through one or
more affiliates owns a significant interest in such cable system, or

(B)  who otherwise controls or is responsible for, through any arrangement, the
management and operation of such a cable system.

shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

A cable operator may disclose such [personal identifying] information if the
disclosure is . . . made pursuant to a court order authorizing such disclosure, if the
subscriber is notified of such order by the person to whom the order is directed.

by sending a copy of this Order to the Defendant.

5.     The subpoenaed ISPs shall not require Plaintiff to pay a fee in advance of providing

the subpoenaed information; nor shall the subpoenaed ISPs require Plaintiff to pay a fee for an IP

address that is not controlled by such ISP, or for duplicate IP addresses that resolve to the same

individual, or for an IP address that does not provide the name of a unique individual, or for the ISP's

internal costs to notify its customers.  If necessary, the Court shall resolve any disputes between the

ISPs and Plaintiff regarding the reasonableness of the amount proposed to be charged by the ISP

after the subpoenaed information is provided to Plaintiff.

6.     Plaintiff may only use the information disclosed in response to a Rule 45 subpoena

served on an ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its

Complaint.

SEP 0 1 2011

**DONE AND ORDERED** this ___ day of _____, 2011.

By_____

**UNITED STATES DISTRICT JUDGE**

EXHIBIT B                                    2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTY MEDIA HOLDING, LLC,
d/b/a Corbin Fisher,

        Plaintiff,

        v.

SWARM OF NOVEMBER 18 TO DECEMBER 8, 2010,
SHARING HASH FILE,
A3E6F65F2E3D672400A5908F64ED55B66A0880B8, et al.,

        Defendants.

Case No. 1:11-cv-238

Dlott, J.
Bowman, M.J.

## MEMORANDUM ORDER

### I. Background

On April 20, 2011, Plaintiff filed a Complaint alleging violations for copyright infringement, contributory copyright infringement, and civil conspiracy against Doe Defendants 1 through 5. (Doc. 1). On April 25, 2011, Plaintiff submitted a motion seeking permission to take early discovery for the limited purpose of identifying these Doe Defendants. Although not noted by Plaintiff, the Court takes judicial notice of the fact that the same Plaintiff has filed a substantially similar complaint against different John Doe defendants, and sought substantially similar early discovery, from the United States District Court in the Southern District of California in Civil Case No. 11-cv-619. On April 26, 2011, a day after the instant motion was filed, the presiding magistrate judge in the California case determined that Plaintiff was entitled to most of the early discovery that Plaintiff had

requested. *See Liberty Media Holdings, LLC v. Swarm of November 16, 2010, Sharing Hash File*, 2011 WL 1597495 (S.D. Cal. April 26, 2011). Finding both the California case and other case authority cited by Plaintiff to be persuasive here, I likewise will permit Plaintiff to proceed with a portion of the discovery Plaintiff seeks.

Specifically, Plaintiff seeks to subpoena Time Warner d/b/a Road Runner, in its capacity as an Internet Service Provider ("ISP"), to determine the names and addresses of certain subscribers connected to certain Internet protocol ("IP") addresses that have been linked to infringements of Plaintiff's copyrighted works. Plaintiff also seeks permission to issue interrogatories to and depose the subscribers identified by these ISPs in order to determine whether the subscriber is the proper defendant in this action.

## II. Analysis

Although discovery proceedings generally take place only after the defendant has been served, courts have made exceptions permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). This is because within the Internet context, Courts have recognized "[s]ervice of process can pose a special dilemma for plaintiffs in cases . . . [where] the tortious activity occurred entirely online." *Seescandy.com*, 185 F.R.D. at 577. As such, "[a] number of district courts have found good cause to permit expedited discovery where the recording industry has IP addresses for individuals who have illegally distributed or downloaded [copyrighted] music, but do not have the name of the person whose computer was assigned that address." *LaFace Records, LLC v. Does 1-5*, 2007 WL 2867351, at *1. (W.D. Mich. 2007). In these types of

2

cases, early "discovery to allow the identity of 'Doe' defendants is 'routine.'" *Id.* at *2.

Federal Rules allow for discovery prior to a Rule 26 conference by court order and upon a showing of good cause. *See Zomba Recording, LLC v. Does 1-24*, 2008 WL 123839, at *1 (E.D. Tenn. 2008) ("upon a demonstration of good cause, a party may seek expedited discovery prior to a Rule 26(f) conference."); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Fed.R.Civ.P. 26(d)(1). In this Circuit, "Courts typically find good cause based upon (1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought, (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward." *LaFace Records, LLC v. Does 1-5*, 2007 WL 2867351, *1 (additional citation omitted); *see also, e.g., Arista Records, LLC v. Does 1-4*, 2007 WL 4178641 (W.D. Mich. 2007) (same); *Arista Records v. Does 1-9*, 2008 WL 2982265, at *5 (S.D. Ohio 2007)(citing with approval Magistrate Judge's application of these same factors); *Zomba*, 2008 WL 123839, at *1 (analyzing similar, but not identical factors).

Here, the Court finds that Plaintiff has satisfied each of these four factors, and therefore finds that there is good cause to permit early and expedited discovery in the present case. First, Plaintiff's Complaint (Doc. 1) alleges a claim of copyright infringement (as well as related claims of contributory copyright infringement and civil conspiracy). Plaintiff has alleged that (a) it owns and has registered the copyright in the work at issue and (b) the Defendants made unauthorized reproductions of those works and distributed them without Plaintiff's authorization. Plaintiff alleges Defendants knew of their infringement, were conscious of their uploading of Plaintiff's copyrighted work, and

3

substantially participated in others' infringement of the Plaintiff's copyrighted work, which would have been impossible without Defendants' uploading and sharing of the file. The Court finds that these allegations state a claim for copyright infringement.

Second, there is a danger that the ISP will not preserve the information sought. Many ISPs (including, it is alleged by Plaintiff, the ISP noted here) routinely cleanse, delete, or otherwise destroy the activity logs and similar information which are necessary for Plaintiff to identify the individuals associated with the IP addresses that are the subject of the instant Motion. Thus, the Court finds there is a significant and likely danger that the ISP will not preserve the information sought without the requested early discovery.

Third, a portion of the discovery request is narrowly tailored. Plaintiff is seeking the name, phone numbers, mailing address, email address, and other similar personally identifiable information of the subscribers for the IP addresses during the corresponding dates and times specified in Exhibit 1 of Plaintiff's Motion. Plaintiff asserts that it will only use this information to prosecute the claims made in its Complaint. To this extent, the Court finds that the requested expedited discovery is limited and no broader than what is necessary for Plaintiff to determine the true name and address of the individuals who allegedly performed the infringing acts.

By contrast, I will deny, as overly broad at this time, Plaintiff's additional request to serve interrogatories and depositions on any individual identified by these ISP's in order to determine whether or not the actual Internet subscriber is the proper Defendant. The Court finds it more appropriate for Plaintiff to return to this Court rather than obtaining this

4

discovery on an expedited pre-Answer basis. The preliminary information authorized by this Order should permit Plaintiff to identify the John Doe defendants and/or amend its complaint in conformity with Rule 11. Even if some additional investigation is required, it is far from clear that broad additional written and oral discovery sought by Plaintiff would be necessary for this limited purpose.

The very limited expedited discovery that is permitted in this Order will substantially contribute to moving the case forward. Plaintiff alleges that it has observed and documented infringement of its registered works by the individuals identified as Does 1-5 in the Complaint, and asserts that without further discovery, it would be impractical—if not impossible—for Plaintiff to determine the identities of the proper Defendants. Due to the nature of on-line transactions, Plaintiff has no way of determining Defendants' identities except through a third-party subpoena. And expedited discovery is necessary here because ISPs routinely and regularly cleanse the information being sought. Thus, the Court finds that early discovery would substantially contribute to moving the case forward by permitting Plaintiff to identify the proper Defendants and amend its Complaint. In sum, the Court finds that Plaintiff has satisfied each of the relevant factors, and that, accordingly, there is good cause to grant Plaintiff most of the relief it seeks.

One further point deserves brief mention. Plaintiff requests that this Court authorize the early discovery specifically with reference to 47 U.S.C. §551(c)(2)(B). Indeed, many courts- including the California court that recently reviewed the same Plaintiff's virtually identical request - have authorized early discovery in part through reference to that Act.

5

This Court has fully considered the ramifications of the Cable Privacy Act, and finds the release of the requested information by a "cable operator" to be appropriate to the extent it is sought, under the circumstances presented. The Court would merely point out that this Court cannot determine on the present record whether Time Warner d/b/a Road Runner, *in its capacity as an ISP* rather than strictly as a "cable operator," would be subject to the referenced statute. *See e.g., Klimas v. Comcast Cable Communications, Inc.,* 465 F.3d 271 (6th Cir. 2006)(holding that Cable Communication Policy Act's prohibition against "collection of personally identifiable information using cable system," 47 U.S.C. §551(b), does not apply to broadband Internet service delivered via cable).

### III. Conclusion and Order

Having found good cause to permit limited early and expedited discovery in this case, **IT IS ORDERED:**

1. Plaintiff's motion for expedited discovery (Doc. 4) is **GRANTED IN PART AS FOLLOWS:**

a. Plaintiff may serve subpoenas, pursuant to Rule 45, on Time Warner d/b/a Road Runner, that seek the names, addresses, telephone numbers, and email addresses of the Defendants;

b. Plaintiff may only use the disclosed information for the sole purpose of protecting its rights in pursuing this litigation;

c. Within seven (7) calendar days after service of any subpoenas, Time Warner d/b/a Road Runner shall notify the subscribers that their identities are sought by Plaintiff.

6

Each subscriber whose identity is sought may, within twenty-one (21) calendar days from the date of such notice, file documents with the Court that contest the subpoena;

d.  If Time Warner d/b/a Road Runner wishes to move to quash any subpoenas issued to it, it shall do so before the return date of the subpoena.  If such a motion is brought, Time Warner shall preserve the information sought by Plaintiff in the challenged subpoena pending resolution of such motion; and

e.  Plaintiff shall provide a copy of this Order to Time Warner d/b/a Road Runner with service of any subpoena.

2.     Plaintiff's request to conduct additional discovery, including serving interrogatories or deposing individuals, is **DENIED** at this time in the absence of a stronger showing that such broad expedited discovery is necessary.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

FILED

JUL 2 7 2011

AF HOLDINGS LLC,

     Plaintiff,

v.

JOHN DOES 1-77,

     Defendants.

CASE NO. 2:11-cv-00383-RBS-TEM

Judge: Hon. Rebecca Beach Smith

Magistrate Judge: Hon. Tommy E. Miller

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY**
**PRIOR TO THE RULE 26(f) CONFERENCE**

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's *Ex Parte*

Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference and all the papers filed

in connection with the motion, and relevant case law.  Accordingly, it is hereby

ORDERED that Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to the

Rule 26(f) Conference is GRANTED; it is further

ORDERED that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to

the following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the

Complaint and any other entity identified as a provider of Internet services to one of the

Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity

monitoring: information sufficient to identify each Defendant, including name, current

(and permanent) address, telephone number, e-mail address, and Media Access Control

address; it is further

1

ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash;

Finally, it is ORDERED that Plaintiff may not file an amended complaint until further order of this Court.

/s/

DATED: JUL 2 7 2011

Tommy E. Miller
United States Magistrate Judge

United States District Judge

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**LIBERTY MEDIA HOLDINGS, LLC,**

Plaintiff,

**Case No. 11-C-394**

-vs-

**SWARM OF November 27, 2010 to January 31, 2011,
SHARING HASH FILE
A3E6F65F2E3D672400A5908F64ED55B66A0880B8,
AND DOES 1 through 3,**

Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR EARLY DISCOVERY

The Court, having read all papers filed in connection with the plaintiff's

Motion for Early Discovery [D. 2], having considered the issues raised therein, including the

requirements of the Cable Privacy Act, 47 U.S.C. § 551, plaintiff's Motion for Early

Discovery is GRANTED.

On April 22, 2011, plaintiff filed a Complaint alleging violations for copyright

infringement against Doe Defendants 1 through 3 [D. 1].  On April 22, 2011, plaintiff

submitted a motion seeking permission to take early discovery for the limited purpose of

identifying these Doe Defendants. [D. 2].  Specifically, plaintiff seeks to subpoena Time

Warner Cable d/b/a Road Runner and Comcast Cable, in its capacity as an Internet Service

Provider ("ISP"), to determine the names and addresses of certain subscribers connected to

certain IP addresses that have been linked to infringements of plaintiff's copyrighted works.

Additionally, plaintiff seeks permission to then issue interrogatories to and depose the

subscribers identified by these ISPs in order to determine whether the subscriber is the proper defendant in this action.

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).   These requests are allowed upon a showing of good cause. *Semitool, Inc. v. Tokyo Elec. Am., Inc.*, 208 F.R.D. 273, 275-76 2 (N.D. Cal. 2002).   Within the internet context, Courts have recognized "[s]ervice of process can pose a special dilemma for plaintiffs in cases . . . [where] the tortious activity occurred entirely online." *Seescandy.com*, 185 F.R.D. at 577.

A three-factor test has been developed for instances where courts are considering motions requesting early discovery to assist in the identification of certain defendants. *Seescandy.com*, 185 F.R.D. at 578-80.   Factor 1: The moving party should be able to identify "the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court." *Seescandy.com*, 185 F.R.D. at 578 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 420 n.24 (9th Cir. 1977)).   Here, given the facts shown, plaintiff has identified the missing party(s) with as much clarity as possible. Plaintiff has stated that these missing "Does" are persons or entities and that these person/entities have been observed and

-2-

documented as infringing on its copyrighted works. Thus, as real persons/entitles, these Does can be sued in federal court.

Factor 2: The moving party should be able to identify "all previous steps taken to locate the elusive defendant." *Seescandy.com*, 185 F.R.D. at 578 (citing *Plant v. Doe*, 19 F. Supp. 2d 1316, 1320 (S.D. Fla, 1998)). The only information plaintiff has regarding the defendants is his/her IP address and his/her cable ISP. Therefore, there are no other measures plaintiff could take to identify the defendants other than to obtain his/her identifying information from his/her ISP. Consequently, plaintiff must serve subpoenas on defendants' ISPs to obtain the information it seeks.

Factor 3: The moving party should be able to "establish to the Court's satisfaction that [its] suit against defendant could withstand a motion to dismiss." *Seescandy.com*, 185 F.R.D. at 578 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Here, Plaintiff, has alleged a prima facie claim of copyright infringement. 17 U.S.C. § 106(1)(3). Specifically, plaintiff claimed: (1) it owns and has registered the copyrighted work at issue in this case; (2) the defendants reproduced and distributed those works without authorization; and (3) plaintiff was damaged by defendants' actions. Accordingly, since plaintiff has alleged all the elements of copyright infringement in the Complaint [D. 1], its suit against defendants could withstand a motion to dismiss.

Plaintiff has also alleged a prima facie case of contributory copyright infringement. Plaintiff claimed (1) it owns and has registered the copyrighted work at issue in this case; (2) defendants knew of the infringing activity and were conscious of their

-3-

infringement; and (3) defendants actively participated in this infringement by inducing, causing and contributing to the infringement of plaintiff's copyright work. As each element has properly been alleged by the plaintiff in its Complaint [D. 1], this cause of action could withstand a motion to dismiss.

Thus, plaintiff has adequately satisfied the three-factor test for the claims raised in the Complaint. Furthermore, the scope of this order has been sufficiently tailored to achieve the reasonable and necessary purpose of identifying already known alleged offenders. In sum, the Court finds good cause to grant plaintiff the relief it seeks.

Each Internet Service Provider shall have seven (7) days after service of the subpoenas to notify the subscriber(s) that their identity(y/ies) has been subpoenaed by plaintiff. Each subscriber whose identity has been subpoenaed shall have twenty-one (21) calendar days from the date of such notice to file a responsive pleading or motion to quash.

Thereafter, upon receipt of the subscriber's information from the ISP, the plaintiff may send written discovery requests to the relevant subscriber and may take the subscriber's deposition, if necessary.

**IT IS SO ORDERED**:

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2011.

**BY THE COURT**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

-4-

# Western District of Wisconsin (Madison)CIVIL DOCKET FOR CASE #: 3:11-cv-00299-wmc

Liberty Media Holdings v. Swarm of November 16, 2010 to January 27, 2011.

** TEXT ONLY ORDER **

Plaintiff's motion for early discovery 2 is GRANTED. Plaintiff has shown good cause to discover immediately the actual identities of the defendants it is suing in this case. More specifically, plaintiff has: (1) identified the Doe defendants with sufficient specificity for this court to determine that they are real people or entities capable of being sued in this court; (2) sufficiently explained the steps it already has taken--unsuccessfully--to identify the Doe defendants; and (3) has sufficiently established a prima facie case of copyright infringement and contributory copyright infringement against these Doe defendants. Therefore, plaintiff may serve its discovery subpoenas on the third party Internet Service Providers (ISPs), which must, within seven calendar days of service, notify each subscriber that his/her/its identity has been subpoenaed in this lawsuit. Each subscriber shall have fourteen calendar days thereafter to file in this court a motion to quash plaintiff's subpoena. Failure to file a timely motion to quash constitutes waiver of any objection to plaintiff's subpoena. After receipt of a subscriber's identifying information from an ISP, plaintiff may undertake additional discovery from each such subscriber for the limited purpose of determining who are the proper defendants in this lawsuit. Signed by Magistrate Judge Stephen L. Crocker on 5/5/11. (rep) Modified on 5/18/2011 (llj). (Entered: 05/05/2011)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### Martinsburg

**AXEL BRAUN PRODUCTIONS,**

        Plaintiff,

v.                                                  **Case No. 3:10-CV-112**
                                                    Judge Bailey

**DOES 1 - 7098,**

        Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE
## TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

Pending before this Court is plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (Doc. 3). This Court, having reviewed the Complaint (Doc. 1) and Motion (Doc. 3) and the Memorandum of Points and Authorities in Support of Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (Doc. 4), is of the opinion that the Motion should be **GRANTED**. Accordingly, it is hereby **ORDERED** as follows:

1.      That the plaintiff is allowed to serve immediate discovery on the Internet Service Providers ("ISPs") listed in Schedule A to plaintiff's Complaint in order to obtain the identity of each Doe defendant, including those Doe defendants for which plaintiff has already identified an Internet Protocol (IP) address and those Doe defendants for which plaintiff identifies IP addresses during the course of this litigation, by serving a Rule 45 subpoena that seeks information sufficient to identify each defendant, including name, current and permanent addresses, telephone numbers, email addresses, and Media Access Control addresses;

2.      That the plaintiff may serve immediate discovery on any ISP identified by the

same means detailed in the Motion and Declaration of Matthias Schroeder Padewet (Doc. 4), or identified as providing network access or online services to one or more Doe defendants, by an ISP upon whom a Rule 45 subpoena is served, for which an infringing download has been identified by individual IP address together with the date and time access to the torrent network by such IP address was made for the purpose of downloading unlawful copies of plaintiff's copyrighted motion picture, "*Batman XXX: A Porn Parody*." Such Rule 45 subpoena may seek information sufficient to identify each Doe defendant, including his or here name, address, telephone number, email address, and Media Access Control Address;

     3.     That plaintiff is permitted to serve a Rule 45 subpoena in the same manner as above to any ISP that is identified in response to a subpoena as a provider of internet services to one of the Doe defendants;

     4.     That any information disclosed to plaintiff in response to a Rule 45 subpoena may be used in this action by plaintiff for the purpose of protecting plaintiff's rights as set forth in its Complaint and for no other purpose;

     5.     That if the ISP and/or any defendant wishes to move to quash the subpoena, such party must do so before the return date of the subpoena, which shall be at least thirty days from the date of service;

     6.     That the ISP shall preserve any subpoenaed information pending the resolution of any timely filed motion to quash; and

     7.     That the plaintiff shall provide each ISP to which a subpoena is directed with a copy of this Order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** November 12, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALL OF THE WILD MOVIE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-1,062, <br><br> Defendants. | Civil Action No. 10-455 (BAH) <br> Judge Beryl A. Howell |
| MAVERICK ENTERTAINMENT GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-4,350, <br><br> Defendants. | Civil Action No. 10-569 (BAH) <br> Judge Beryl A. Howell |
| DONKEYBALL MOVIE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-171, <br><br> Defendants. | Civil Action No. 10-1520 (BAH) <br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

Currently before the Court are Time Warner Cable's (hereinafter "Time Warner")

Motions to Quash or Modify subpoenas that were issued in three pending copyright infringement

cases: *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-455 (hereinafter "*Wild*");

*Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-cv-569 (hereinafter "*Maverick*");

and *Donkeyball Movie, LLC v. Does 1-117*, No. 10-cv-1520 (hereinafter "*Donkeyball*"). In the

interest of judicial economy, this Memorandum Opinion will address and resolve the issues

1

related to Time Warner's motions to quash pending before the Court in all three of the captioned actions. In so doing, however, the Court emphasizes that these cases have not been consolidated for any purpose. This Memorandum Opinion, moreover, should in no way leave the parties with the impression that the Court views these cases as inextricably related; rather, with respect to Time Warner's pending motions to quash, the relevant factual allegations, legal theories and asserted burdens are the same and may be addressed in a unitary opinion.

Time Warner claims that the subpoenas issued to it in each of the three cases should be quashed due to the undue burden that Time Warner faces with compliance. *Wild*, ECF No. 7, May 13, 2010; *Maverick*, ECF No. 18, Nov. 22, 2010; *Donkeyball*, ECF No. 7, Dec. 13, 2010. Alternatively, Time Warner argues that the subpoenas should be substantially modified to require production of the requested information on a schedule that would likely take about three years. *See* Time Warner Mem. Supp. Mot. Quash, *Wild*, at 11, ECF No. 7 (requesting the Court to modify subpoena to limit Time Warner's production responsibilities to 28 IP addresses a month); *see generally* Time Warner Mem. Supp. Mot. Quash, *Maverick*, ECF No. 18, at 4-5; Time Warner Mem. Supp. Mot. Quash, *Donkeyball*, ECF No. 7, at 4-5. After reviewing Time Warner's Motions, the plaintiffs' opposition papers, the amicus briefs, supplemental filings, as well as the accompanying declarations and applicable law, the Court denies Time Warner's motions to quash in *Wild* and *Donkeyball* and grants Time Warner's Motion to Quash in *Maverick* because the plaintiff failed to serve Time Warner with its subpoena in accordance with Federal Rule of Civil Procedure 45(b).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

*Wild, Maverick*, and *Donkeyball* are cases in which copyright owners of separate movies allege that their copyrights are being infringed in the same manner. Specifically, the plaintiffs

allege that varying numbers of defendants, who are currently unnamed, are illegally downloading and distributing copyrighted works using a file-sharing protocol called BitTorrent. In *Wild,* the Amended Complaint, filed on May 12, 2010, accuses 1,062 unnamed Doe defendants of infringing the copyright of the motion picture *Call of the Wild. Wild*, ECF No. 6. In *Maverick,* the Amended Complaint, filed on August 10, 2010, accuses 4,350 unnamed Doe defendants of infringing the copyrights of the motion pictures *13 Hours in a Warehouse, A Numbers Game, Border Town, Deceitful Storm, Fast Track No Limits, He Who Finds a Wife, Hellbinders, Locator 2, Smile Pretty (aka Nasty), Stripper Academy, The Casino Job, The Clique (aka Death Clique),* and *Trunk. Maverick*, ECF No. 9. In *Donkeyball,* the Complaint, filed on September 8, 2010, accuses 171 unnamed Doe defendants of infringing the copyrights of the motion picture *Familiar Strangers. Donkeyball*, ECF No. 1.

The putative defendants in each case are alleged to have used a file sharing protocol called BitTorrent, which allows users to share files anonymously with other users. When a user downloads a specific file through BitTorrent -- in this case, plaintiffs' copyrighted motion pictures -- data is transferred in a "piecemeal" fashion whereby "a different piece of the data [is received] from each user who has already downloaded the file . . . ." Amended Compl., *Wild,* ¶ 3, ECF No. 6; Amended Compl., *Maverick,* ¶ 3, ECF No. 9; Compl., *Donkeyball,* ¶ 3, ECF No. 1; *see also* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2, Benjamin Perino Decl., ¶¶ 7-8; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, ECF No. 4, Benjamin Perino Decl., ¶¶ 7-8; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4, Benjamin Perino Decl., ¶¶ 7-8. The nature of the BitTorrent file-sharing technology "makes every downloader also an uploader of the illegally transferred file(s)." Amended Compl., *Wild,* ¶ 3, ECF No. 6; Amended Compl., *Maverick,* ¶ 4,

3

ECF No. 9; Compl., *Donkeyball*, ¶ 4, ECF No. 1. Since users download material from a number

of other individuals, "every infringer is simultaneously stealing copyrighted material from many

ISPs in numerous jurisdictions around the country." Amended Compl., *Wild*, ¶ 4, ECF No. 6;

Amended Compl., *Maverick*, ¶ 4, ECF No. 9; Compl., *Donkeyball*, ¶ 4, ECF No. 1.

In an effort to combat illegal transfer of their copyrighted movies, the plaintiffs in *Wild*,

*Maverick*, and *Donkeyball* contracted with Guardaley Limited, an anti-piracy firm that uses

proprietary technology to identify BitTorrent users sharing the plaintiffs' copyrighted works.

*See* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2, Benjamin

Perino Decl., ¶ 10.[1] The plaintiffs assert that Guardaley was able to identify the users that were

illegally sharing the plaintiffs' motion pictures, and then provided the plaintiffs with the alleged

infringers' Internet Protocol (IP) addresses, as well as the date and time the alleged infringement

activity occurred. *Id.*; *see also* Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference,

*Wild*, ECF No. 2, Patrick Achache Decl., at ¶¶ 13-14. The difficulty for the plaintiffs, however,

is that they have no identifying information for these alleged infringers aside from the IP

addresses that Guardaley supplied.

To obtain certain identifying information for the putative defendants, plaintiffs moved for

expedited discovery. Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF

No. 2; Pl.'s Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, ECF No. 4; Pl.'s

Mot. Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4. The Court in

each case granted plaintiffs leave to subpoena Internet Service Providers (ISPs) to compel

production of the names, addresses, emails, phone numbers, and Media Access Control numbers

---

[1] For clarity, this opinion will cite primarily to material docketed in *Wild*, No. 10-cv-455. Plaintiffs are represented by the same counsel, and the plaintiffs and Time Warner's briefs and filings in *Wild, Maverick,* and *Donkeyball* generally assert the same claims and factual matters, differing only in the copyrighted material at issue, the putative defendants and, in *Maverick*, assertion of a jurisdictional basis for quashing the subpoena. Any other differences will be noted in the opinion.

associated with the alleged infringing IP addresses that the plaintiffs identified as engaging in infringing distribution of their respective movies. Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, Apr. 15, 2010, ECF No. 4 (Urbina, J.); Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Maverick*, No. 10-569, May, 24 2010, ECF No. 7 (Leon, J.); Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, Oct. 19, 2010, ECF No. 6 (Sullivan, J.). Time Warner received subpoenas for information relating to 224 Time Warner subscribers in *Wild*, 783 subscribers in *Maverick*, and 21 subscribers in *Donkeyball*. Time Warner Mot. Quash, *Wild*, ECF No. 7, Ex. 1; Time Warner Mot. Quash, *Maverick*, ECF No. 18, Ex. 1; Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 1. Time Warner responded by moving to quash the subpoenas on grounds that producing the requested information would impose an undue burden and expense. *Wild*, May 13, 2010, ECF No. 7; *Maverick*, Nov. 22, 2010, ECF No. 18; *Donkeyball*, Dec. 13, 2010, ECF No. 7. In support of Time Warner's motion to quash in *Wild*, amicus briefs were submitted collectively by Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation, and American Civil Liberties Union of the Nation's Capital. Minute Order, *Wild*, dated Jan. 3, 2011 (granting Amici leave to file amicus brief) (Urbina, J.). Amici urge the Court to quash the subpoena issued to Time Warner based upon improper joinder, lack of personal jurisdiction over the putative defendants, and the putative defendants' First Amendment right to anonymity.

Following re-assignment to this Court, on March 1, 2011, the Court held a joint conference in these cases to hear oral argument on Time Warner's motions. Time Warner,

Amici, the plaintiffs, and an attorney representing three putative defendants participated.[2]  At the conference, the Court stated that it would accept supplemental filings in the case in order to more fully develop the record on the burdens faced by Time Warner.[3]  *See* Minute Order, *Wild*, March 9, 2011. Amici, plaintiffs, and Time Warner each filed supplemental material.

If the Court were to accept the Amici's arguments, not only would the Court quash the subpoenas directed toward Time Warner, but plaintiffs' cases would face significant obstacles.[4] For this reason, the Court addresses Amici's contentions before turning to Time Warner's arguments in support of quashing or modifying the plaintiffs' subpoenas.

## II.  AMICI'S CONTENTION THAT THE PUTATIVE DEFENDANTS ARE IMPROPERLY JOINED

Amici argue that the Court should quash the subpoenas directed to Time Warner because the plaintiffs have improperly joined the putative defendants. *See* FED. R. CIV. P. 20(a)(2).  For the reasons stated below, the Court finds that the plaintiffs' allegations against the putative defendants in each case meet the requirements for permissive joinder.  After the putative

---

[2] Counsel identified his clients in *Maverick* as Lori Pearlman, Calvin Johnson, and Xu Xiangping.  Transcript of Mot. Hearing, at 52-53, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011)

[3] Counsel for Time Warner was unable to address certain questions posed by the Court during oral argument on Time Warner's Motions to Quash:
"MR. MALTAS: Well, as to the specifics of what's done in each location, I grant I'm not sure I can answer the question of what is done specifically at the central office and what is done specifically at regional offices. I do know that it requires work at both, and it requires --…-- people at both.
THE COURT: One of the declarations said that at the regional office, it takes about 20 minutes per IP look-up to do something, but it doesn't exactly explain … what takes 20 minutes per IP look-up? What are they doing that takes 20 minutes?
MR. MALTAS: I don't want to give an answer that is not technically correct, and I don't know the answer to that, so I can go back and we can file a supplemental affidavit, if that would help the Court."
Transcript of Mot. Hearing, at 27-28, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011).

[4] Time Warner also raises the argument that its burdens are caused by the plaintiffs' "failure to observe jurisdictional limitations and improper joinder."  Time Warner Mem. Supp. Mot. Quash, *Maverick*, at 13-15 (addressing joinder and personal jurisdiction issues); Time Warner Mem. Supp. Mot. Quash, *Donkeyball*, at 13-15 (addressing joinder and personal jurisdiction issues); *see also* Time Warner Mem. Supp. Mot. Quash, *Wild*, at 10 (addressing joinder).  Time Warner does not argue, however, that it is precluded from producing its subscribers' identifying information due to the putative defendants' First Amendment right to anonymity.  The Court addresses these issues *sua sponte* under its duty to supervise discovery in these cases. *See* FED. R. CIV. P. 26(b)(2)(C) ("On motion or *on its own*, the court must limit the frequency or extent of discovery otherwise allowed by these rules…")(emphasis added).

defendants have been identified and named in the Complaints, the defendants may raise the

argument that they are improperly joined under Federal Rule of Civil Procedure 20 and move to

sever the joined defendants under Federal Rule of Civil Procedure 21. Severance at this stage,

however, as numerous other courts both in and outside this District have held, is premature. *See,*

*e.g., Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1 - 4,577*, No. 10-cv-00453,

ECF No. 34 (D.D.C. July 2, 2010) (Collyer, J.); *West Bay One, Inc. v. Does 1-1653*, No. 10-cv-

00481, ECF No. 25 (D.D.C. July 2, 2010) (Collyer, J.); *Arista Records LLC v. Does 1-19*, 551 F.

Supp. 2d 1, 11 (D.D.C. 2008) (Kollar-Kotelly, J.); *London-Sire Records, Inc. v. Doe 1*, 542 F.

Supp. 2d 153, 161 n.7 (D. Mass. 2008); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d

556, 568 (S.D.N.Y. 2004).

## A. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, defendants may be joined in one action when

claims arise from the same transaction or occurrence or series of transactions or occurrences; and

any question of law or fact in the action is common to all defendants. FED. R. CIV. P. 20(a)(2);

*see also Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. Jan. 30, 2008)

(interpreting Rule 20(a)(1), which has the same requirements as Rule 20(a)(2)).

Permissive joinder is appropriate "to promote trial convenience and expedite the final

resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss

of time to the court as well as the litigants appearing before it." *M.K. v. Tenet*, 216 F.R.D. 133,

137 (D.D.C. 2002). The requirements for permissive joinder are "liberally construed in the

interest of convenience and judicial economy in a manner that will secure the just, speedy, and

inexpensive determination of the action." *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at

*7 (D.D.C. July 10, 2007) (quoting *Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W.Va. 1993));

*see also Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010). Thus, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The remedy for improper joinder is severance under Federal Rule of Civil Procedure 21. This rule does not set forth what constitutes misjoinder, but "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)). Courts have also read Rule 21 in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party. *Tenet*, 216 F.R.D. at 138 (citing *Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C.1987)); *see also* FED. R. CIV. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). In addition to the two requirements of Rule 20(a)(2), the Court therefore also considers whether joinder would prejudice any party or result in needless delay. *See Lane,* 2007 WL 2007493, at *7; *Tenet*, 216 F.R.D. at 138.

## B. DISCUSSION

Consideration of the two requirements for permissive joinder under Rule 20(a)(2) and their application to the allegations in the Complaints in *Wild*, *Maverick*, and *Donkeyball* make clear that, at this procedural juncture, joinder of the putative defendants is proper. Joinder will avoid prejudice and needless delay for the only party currently in the case, namely the plaintiff, and promote judicial economy.

*1. Same Transaction, Occurrence, or Series of Transactions or Occurrences*

Rule 20(a)(2)(A) states that joinder is proper if "any right to relief is asserted against [the joined defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." This essentially requires claims asserted against joined parties to be "logically related." *Disparte*, 223 F.R.D. at 10. This is a flexible test and courts seek the "broadest possible scope of action." *Lane*, 2007 WL 2007493, at *7 (quoting *Gibbs*, 383 U.S. at 724). In the present case, the plaintiffs allege that the putative defendants in each case used the BitTorrent file-sharing protocol to illegally distribute the plaintiffs' motion pictures. Amended Compl., *Wild*, ECF No. 6, ¶12. Amici counter, however, that engaging in "separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement" does not satisfy Rule 20(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. Mem. of Amici Curiae Electronic Frontier Foundation, Public Citizen, American Civil Liberties Union Foundation and American Civil Liberties Union of the Nation's Capital in Supp. Time Warner's Mot. Quash, *Wild* (hereinafter "Amici Mem."), at 11-12, ECF No. 18. Despite Amici's arguments, at this nascent stage of the case, the plaintiffs have sufficiently alleged that the infringing activity at issue in each of the cases may involve multiple computers, based in various jurisdictions, which are using the BitTorrent protocol to make available for sharing the same copyrighted content.

Specifically, the plaintiffs allege that the BitTorrent file-sharing protocol "makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file." Amended Compl., *Wild*, ¶3, ECF No. 6. The plaintiffs further assert that the "nature of a BitTorrent protocol [is that] any

9

seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file

is automatically a source for the subsequent peer so long as that first seed peer is online at the

time the subsequent peer downloads a file." *Id.* at ¶ 4.

Based on these allegations, the plaintiffs' claims against the defendants are logically

related. Each putative defendant is a possible source for the plaintiffs' motion pictures, and may

be responsible for distributing the motion pictures to the other putative defendants, who are also

using the same file-sharing protocol to copy the identical copyrighted material. *See Disparte*,

223 F.R.D. at 10 (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is

"flexible."). While the defendants may be able to rebut these allegations later, the plaintiffs

have sufficiently alleged that their claims against the defendants potentially stem from the same

transaction or occurrence, and are logically related. *See Arista Records LLC v. Does 1-19,* 551

F. Supp. 2d 1, 11 (D.D.C.) ("While the Courts notes that the remedy for improper joinder is

severance and not dismissal, . . . the Court also finds that this inquiry is premature without first

knowing Defendants' identities and the actual facts and circumstances associated with

Defendants' conduct.").

### 2. *Question of Law or Fact Common to All Defendants*

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain

a common question of law or fact. *See Disparte*, 223 F.R.D. at 11. The plaintiffs meet this

requirement. In each case, the plaintiff will have to establish against each putative defendant the

same legal claims concerning the validity of the copyrights in the movies at issue and the

infringement of the exclusive rights reserved to the plaintiffs as copyright holders.

Furthermore, the plaintiffs allege that the putative defendants utilized the same BitTorrent

file-sharing protocol to illegally distribute and download the plaintiffs' motion pictures and,

consequently, factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant. Amended Compl., *Wild*, ¶ 3; Amended Compl, *Maverick*, ¶ 3; Compl., *Donkeyball*, ¶ 3.

The Court recognizes that each putative defendant may later present different factual and substantive legal defenses but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).

### 3. *Prejudice to Any Party or Needless Delay*

Finally, the Court must assess whether joinder would prejudice the parties or result in needless delay. At this stage in the litigation, the Court believes it will not. To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

Notably, as part of the motion to modify the subpoena, Time Warner asks the Court to intervene in a cost dispute with plaintiffs' counsel and require payment for each IP address for which the subpoena requires identifying information rather than payment per customer. Time Warner Mem. Supp. Mot. Quash, *Wild*, at 12, ECF No. 7. The import of this request is that

11

some IP addresses may relate to the same person, who is engaged in the allegedly infringing

activities claimed by plaintiffs. Severance of the putative defendants associated with different IP

addresses may subject the same Time Warner customer to multiple suits for different instances of

allegedly infringing activity and, thus, would not be in the interests of the putative defendants.

Moreover, the putative defendants are currently identified only by their IP addresses and

are not named parties. Consequently, they are not required to respond to the plaintiffs'

allegations or assert a defense. The defendants may be able to demonstrate prejudice once the

plaintiffs proceed with their cases against them, but they cannot demonstrate any harm that is

occurring to them before that time.

The plaintiffs, by contrast, are currently obtaining identifying information from ISPs so

that they can properly name and serve the defendants.  If the Court were to consider severance at

this juncture, plaintiffs would face significant obstacles in their efforts to protect their copyrights

from illegal file-sharers and this would only needlessly delay their cases.  The plaintiffs would be

forced to file 5,583 separate lawsuits, in which they would then move to issue separate

subpoenas to ISPs for each defendant's identifying information. Plaintiffs would additionally be

forced to pay the Court separate filing fees in each of these cases, which would further limit their

ability to protect their legal rights.  This would certainly not be in the "interests of convenience

and judicial economy," or "secure a just, speedy, and inexpensive determination of the action."

*Lane*, 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time

being promotes more efficient case management and discovery" and no party prejudiced by

joinder).

Given the administrative burden of simply obtaining sufficient identifying information to

properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect

their copyrights in a cost-effective manner. Indeed, Time Warner urges the Court to sever the defendants for this very reason. Time Warner asserts that, if joinder were disallowed, its burden of complying with subpoenas would be diminished because the plaintiffs would not be able to proceed against all of the putative defendants individually. *See* Transcript of Mot. Hearing, 14-16, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011).

At this procedural juncture, the plaintiffs have met the requirements of permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely benefited by joinder, and severance would debilitate the plaintiffs' efforts to protect their copyrighted materials and seek redress from the putative defendants who have allegedly engaged in infringing activity. Courts are instructed to "entertain[] the broadest possible scope of action consistent with fairness to the parties.'" *Lane*, 2007 WL 2007493, at *7. While this Court is fully cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers *pro se*, severing the putative defendants is no solution to ease the administrative burden of the cases. The Court therefore declines to sever the putative defendants at this time.

## III. AMICI'S CONTENTION THAT THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE PUTATIVE DEFENDANTS

Amici further argue that the Court should quash the subpoenas issued to Time Warner because the plaintiffs have failed to properly establish personal jurisdiction over each putative defendant. Amici contend that the plaintiffs "failed to allege specific facts" to support jurisdiction and that the likelihood of the defendants uploading or downloading the plaintiffs' copyrighted movies in the District of Columbia is "exceedingly small." Amici Reply Brief, at 5-6, ECF No. 22. Given that the defendants have yet to be identified, the Court believes that evaluating the defendants' jurisdictional defenses at this procedural juncture is premature.

## A. LEGAL STANDARD

To establish personal jurisdiction, the Court must examine whether jurisdiction is applicable under the District of Columbia's long-arm statute, D.C. CODE § 13-423, and must also determine whether jurisdiction satisfies the requirements of due process. *See GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Due Process requires the plaintiff to show that the defendant has "minimum contacts" with the forum, thereby ensuring that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also GTE New Media Servs.*, 199 F.3d at 1347.

In cases where a party's contacts with the jurisdiction are unclear and the record before the court is "plainly inadequate," courts have allowed for a discovery period within which to gather evidence to support jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). "This Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and jurisdictional discovery is available when a party has "at least a good faith belief" that it has personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Courts have permitted discovery even when a party has failed to establish a prima facie case of personal jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 (". . . as the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these

14

matters."); *see also In re Vitamins Antitrust Litigation*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (discussing *GTE New Media Servs.* and stating that "the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue [discovery]."). In such cases, a party is entitled to pursue "precisely focused discovery aimed at addressing matters relating to personal jurisdiction." *GTE New Media Services, Inc.*, 199 F.3d at 1351-52.

## B. DISCUSSION

Amici argue that the plaintiffs have failed to demonstrate with sufficient specificity the basis for personal jurisdiction for each defendant. To be sure, such a showing is certainly required when parties are identified and named. The Court would then be able to evaluate personal jurisdiction defenses. The present situation, however, is different. Here, the plaintiffs have only limited information about the putative defendants, namely their IP addresses and information about the methodology used to engage in allegedly infringing activity. *See Id.* at 1352 (record before the court was "plainly inadequate" and "[j]urisdictional discovery will help to sort out these matters."). Without additional information, the Court has no way to evaluate the defendants' jurisdictional defenses. *See, e.g., London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 180-181 (D. Mass. 2008) ("premature to adjudicate personal jurisdiction" and permitting plaintiff to engage in jurisdictional discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d. 556, 567 (S.D.N.Y. 2004) (evaluating personal jurisdiction premature without defendants' identifying information).

Amici contend that the plaintiffs do not have a "good faith" basis to assert personal jurisdiction over the putative defendants, and the Court should therefore not allow the defendants

to proceed with discovery. According to Amici, such a good faith basis could be established by reliance upon geolocation information embedded in each IP address. Specifically, Amici assert that IP addresses can be used to detect an individual's location and the plaintiffs should be forced to justify the putative defendants' personal jurisdiction by using tools "freely available to the public [that] help reveal where a person using a particular IP address is likely to be physically located." Amici Mem., at 5. Amici cite 'reverse domain name service lookup' ("reverse DNS") and the American Registry for Internet Numbers (the "ARIN database") as tools that would help reveal where a specific IP address is "likely to be physically located." Amici Mem., *Wild*, ECF No. 11, Seth Schoen Decl., at ¶¶ 5, 13.

The Court rejects this argument for three reasons. First, as the Amici concede, publicly available IP lookups reveal only where a defendant is "likely" to be located. *Id.* at ¶ 4. Given that these lookup tools are not completely accurate, this does not resolve the question of whether personal jurisdiction would be proper. Ultimately, the Court would still be unable to properly evaluate jurisdictional arguments until the putative defendants are properly identified and named. *See Sony,* 326 F. Supp. 2d. at 567-68 ("Assuming personal jurisdiction were proper to consider at this juncture, the [publicly available IP lookup] techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located [outside this jurisdiction]. This, however, does not resolve whether personal jurisdiction would be proper.").

Second, the nature of the BitTorrent technology enables every user of the file-sharing protocol to access copyrighted material from other peers, who may be located in multiple jurisdictions "around the country," including this one. Amended Compl., *Wild*, ECF No. 6, ¶ 4. Amici raise the prospect that the consequence of this theory is that any Internet user may be haled into court in any jurisdiction in the country for any online activity. Transcript of Mot.

Hearing at 34-35, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011)

("If merely placing information online were enough to establish personal jurisdiction in the

District or anyplace their information could be obtained and downloaded and accessed, the limits

on personal jurisdiction would be abolished."). While that broad prospect would indeed be

troubling, that is not the situation here. *See generally GTE New Media Servs.*, 199 F.3d at 1350

("[T]he advent of advanced technology, say, as with the Internet, should [not] vitiate long-held

and inviolate principles of federal court jurisdiction."). The allegations in the Complaints in

*Wild, Maverick* and *Donkeyball* do not involve general Internet access, but specific use of a file-

sharing protocol that may touch multiple jurisdictions to effectuate a download of a single

copyrighted work. Moreover, so far, no putative defendant has been named or "haled" before this

Court. The plaintiffs in each case will be able to proceed only against those named defendants

over whom this Court has personal jurisdiction.

Finally, at this juncture when no putative defendant has been named, the Court has

limited information to assess whether any putative defendant has a viable defense of lack of

personal jurisdiction or to evaluate possible alternate bases to establish jurisdiction. *See, e.g.,*

*London-Sire Records, Inc.*, 542 F. Supp. 2d at 181 ("Even taking all of the facts in [the putative

defendant's] affidavit as true, it is possible that the Court properly has personal jurisdiction.");

*Humane Soc'y of the United States v. Amazon.com, Inc.*, No. 07-623, 2007 U.S. Dist. LEXIS

31810, at *10 (D.D.C. May 1, 2007) ("[A] plaintiff faced with a motion to dismiss for lack of

personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction

of a federal court by withholding information on its contacts with the forum," quoting *Virgin*

*Records Am., Inc. v. Does 1-35,* No. 05-1918, 2006 WL 1028956, at *3 (D.D.C. Apr. 18, 2006)).

Certainly, the Court concurs with Amici that the putative defendants deserve to have dispositive

issues, such as personal jurisdiction, decided promptly. Amici Reply Brief, *Wild*, ECF No. 22, at

10. When the defendants are named, they will have the opportunity to file appropriate motions

challenging the Court's jurisdiction and that will be the appropriate time to consider this issue.

*See Virgin Records*, 2006 WL 1028956, at *3 (Amici's personal jurisdiction arguments rejected

since "Defendant's Motion to Quash is without merit [] because it is premature to consider the

question of personal jurisdiction in the context of a subpoena directed at determining the identity

of the Defendant," citing *Elektra Entm't Grp., Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581,

at *5 (S.D.N.Y. Sept. 8, 2004); *Sony*, 326 F. Supp. 2d 556, 567-68 (S.D.N.Y.2004); *UMG

Recordings v. Does 1-199*, No. 04-0093, at *2 (D.D.C. Mar. 10, 2004)).

The Court and parties are in no position yet to evaluate each putative defendant's specific

connection with this jurisdiction. Quashing the subpoenas would effectively bar the plaintiffs'

from obtaining discovery pertinent to that evaluation, and this Court declines to cut off

jurisdictional discovery prematurely.

## IV.  THE PUTATIVE DEFENDANTS' FIRST AMENDMENT RIGHT TO ANONYMITY

Amici contend that the putative defendants' are entitled to First Amendment protection

for their "anonymous communication." Amici Mem., at 14. Amici request, therefore, that the

Court consider whether the First Amendment prevents disclosure of the defendants' identifying

information and whether the plaintiffs have demonstrated a need to override that protection.[5]

Amici's request raises two questions for the Court to evaluate: First, are the putative defendants'

---

[5] Amici also urge the Court to "set an example of what appropriate procedures must be followed before individuals' identities can be disclosed," including that notice be required to be sent to a customer before identifying information is provided in response to the subpoenas. Amici Mem., *Wild*, ECF No. 18, at 14-19. Such notices are already provided. Transcript of Mot. Hearing at 51, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (plaintiffs' counsel: "Every single subpoena we sent to an ISP has [Amici's suggested] notice attached to it. And Time Warner, I believe, reached an agreement on the form of that notice . . . and every single subpoena we sent since that date in every new case has that notice.").

BitTorrent activities covered by the First Amendment right to engage in anonymous speech? Second, if the First Amendment protects BitTorrent activity, does the plaintiffs' need for the defendants' identifying information override that protection?

## A. THE DEFENDANTS' RIGHT TO ENGAGE IN ANONYMOUS BITTORRENT ACTIVITY

The First Amendment protects an individual's right to anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995) ("The freedom to publish anonymously extends beyond the literary realm"), and this protection extends to anonymous speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]"); *accord, Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C. 2009) ("Such rights to speak anonymously apply . . . to speech on the Internet."). Although the right to anonymity is "an important foundation of the right to speak freely," *London-Sire Records*, 542 F. Supp. 2d at 163, the right to free speech is not absolute, and certain classes of speech, such as defamation, libel, and obscenity, for example, are deemed to be beyond the purview of the First Amendment. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942)(". . . the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem."); *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952) (libel); *Miller v. California*, 413 U.S. 15, 23 (1973) (obscenity). Copyright infringement is not protected by the First Amendment. *See Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-57, 560 (1985) (discussing copyright, the fair use doctrine, and the First Amendment). Amici argue, however, that the First Amendment protects "the anonymous publication of expressive works on the Internet even where, as here, the publication is alleged to infringe

copyrights." Amici Mem., at 14. The question for this Court is whether the putative defendants are engaging in any expressive communication when they share files through BitTorrent that is entitled to some First Amendment protection of their anonymity.

While copyright infringement is not afforded First Amendment protection, file-sharing does involve aspects of expressive communication. *See Sony,* 326 F. Supp. 2d at 564 ("the file sharer may be expressing himself or herself through the music selected and made available to others."); *see also London-Sire,* 542 F. Supp. 2d at 163 ("there are some creative aspects of downloading music or making it available to others to copy: the value judgment of what is worthy of being copied; the association of one recording with another by placing them together in the same library; the self-expressive act of identification with a particular recording; the affirmation of joining others listening to the same recording or expressing the same idea . . . . [W]hile the aspect of a file-sharer's act that is infringing is not entitled to First Amendment protection, other aspects of it are."). File-sharers, for example, indicate the artistic works they prefer when they decide to share or download a particular file. This expression can be noticed by other BitTorrent users and can indicate the relative popularity of particular files among a group of individuals.

File-sharers therefore do engage in expressive activity when they interact with other users on BitTorrent. The First Amendment interest implicated by their activity, however, is minimal given that file-sharers' ultimate aim "is not to communicate a thought or convey an idea" but to obtain movies and music for free. [6] *Sony,* 326 F. Supp. 2d at 564. Even if expression were an

---

[6] Amici provide a declaration from Seth Schoen, in which Mr. Schoen states: "BitTorrent provides users with less ability to identify and communicate with the peers with whom they exchange files than other technologies do . . . . There is no easy way for the various BitTorrent users who have uploaded or downloaded parts of a file to recognize, name, or communicate with one another." Amici Reply Brief, Seth Schoen Decl. in Support of Reply Brief ¶9, *Wild,* ECF No. 22. Although this information was supplied to support Amici's contention that the putative defendants are improperly joined, it demonstrates rather that the putative defendants' BitTorrent activities deserve

ancillary aim, the underlying method of the users' communication is illegal. This Court therefore joins a number of other jurisdictions who have deemed that a file sharer's First Amendment right to anonymity is "exceedingly small." *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights."); *see also Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. DOES 1-4,577,* No. 10-453, 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ("the protection afforded to such speech is limited and gives way in the face of a prima facie showing of copyright infringement"); *West Bay One, Inc. v. Does 1-1653*, 270 F.R.D. 13, 16 n.4 (D.D.C. July 2, 2010) (utilizing same language as *Achte/Neunte,* 2010 U.S. Dist. LEXIS 94594, at *10 n.2); *Sony,* 326 F. Supp. 2d at 567 (First Amendment right of alleged file-sharers to remain anonymous "must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims."); *Elektra Entm't Group, Inc. v. Does 1-9,* No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y. Sept. 8, 2004) (finding that First Amendment right to anonymity overridden by plaintiff's right to protect copyright).

Nevertheless, file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants' anonymity by compelling the production of these defendants' identifying information. *See Sony,* 326 F. Supp. 2d at 564 ("Although this is not political expression entitled to the broadest protection of the First Amendment, the file sharer's speech is still entitled to some level of First Amendment protection.") (internal quotations omitted).

---

even less First Amendment protection because BitTorrent allows for less communication between users than other file-sharing programs.

## B. PLAINTIFFS' NEED TO OVERRIDE FIRST AMENDMENT PROTECTIONS AND IDENTIFY THE PUTATIVE DEFENDANTS

To assess whether the plaintiffs' subpoena should override the putative defendants' First Amendment rights, the Court uses the five-part test originally explicated in *Sony Music Entertainment v. Does 1-40*,[7] 326 F. Supp. 2d at 564-65. This test has been applied by numerous courts across the country and in this district to similar file-sharing copyright infringement actions. *See, e.g., Arista Records*, 551 F. Supp. 2d at 8 (D.D.C. 2008) (Kollar-Kotelly, J.); *Achte/Neunte*, 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. 2010) (Collyer, J.); *West Bay One*, 270 F.R.D. at 16 n.4 (D.D.C. 2010) (Collyer, J.); *London-Sire*, 542 F. Supp. 2d at 164 (D. Mass 2008); *Arista Records, LLC v. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *Virgin Records v. Doe*, No. 5:08-cv-389, 2009 U.S. Dist. LEXIS 21701 (E.D N.C. Mar. 16, 2009); *Elektra Entm't Group Inc. v. Does 1-9*, No. 04-cv-2289, 2004 WL 2095581, at *3-4 (S.D.N.Y. Sept. 8 2004). The *Sony* test calls for the court to assess whether the plaintiffs' need for identifying information outweighs the putative defendants' right to First Amendment anonymity by balancing: (1) the

---

[7] Amici urge the Court to adopt a more rigorous five-part balancing test that was originally set forth in *Dendrite International v. Doe*, a New Jersey state case that required: "(1) that the plaintiff undertake to notify the anonymous posters that they are the subject of a subpoena seeking their identity; (2) that the plaintiff specify the exact statement alleged to constitute actionable speech; (3) that the court review the complaint and other information to determine whether a viable claim against the anonymous defendants is presented; (4) that the plaintiff produce sufficient evidence to support, prima facie, each element of its cause of action; and (5) that the court then balance the First Amendment right of anonymous speech against the strength of the plaintiff's prima facie claim and the need for disclosure of the anonymous defendant's identity." *Dendrite Int'l v. Doe*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001); *see also Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) (discussing, but not adopting the *Dendrite* test) (Bates, J.). The *Dendrite* test was applied in a defamation case; the case that discusses the *Dendrite* test in this district was also a defamation action. *Sinclair*, 596 F. Supp. 2d 128 (defamation action in which plaintiff sought identifying information for three anonymous online posters). This test has generally not been adopted in file-sharing cases. *See, e.g., London-Sire*, 542 F. Supp. 2d at 164 n.2 ("*Dendrite*, like many other cases involving internet speech, is not directly applicable to [file-sharing cases]. In that case, the plaintiff asserted that the anonymous defendant had defamed it on an internet bulletin board-an act much more clearly in the wheelhouse of the First Amendment's protections."); *Sony BMG Music Entm't v. Doe*, No. 5:08-109, 2009 WL 5252606, at *7 n.14 (E.D.N.C. Oct. 21, 2009)(" The protected speech at issue in *Dendrite* was allegedly defamatory comments posted on an internet bulletin, not the less expressive act of distributing music over the internet. In addition, the claim in *Dendrite* was for defamation, not copyright infringement, a unique area of particular federal concern."). The First Amendment interests implicated in defamation actions, where expressive communication is the key issue, is considerably greater than in file-sharing cases. The Court therefore believes that the *Sony* test is more applicable to the present case.

concreteness of the plaintiffs' showing of a prima facie claim of actionable harm; (2) the specificity of the plaintiffs' discovery request; (3) alternative means to get the information the plaintiffs seek; (4) the need for the information to advance the plaintiffs' claim; and (5) the objecting party's expectation of privacy. *Sony,* 326 F. Supp. 2d at 564-65.

### 1. Plaintiffs' Showing of a Prima Facie Claim

The first factor of the *Sony* analysis seeks to protect against gratuitous disclosure of identifying information when an individual's First Amendment anonymity rights are implicated. As one court noted, "people who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573, 578 (N.D. Cal. 1999) (pre-dating the *Sony* test, but recognizing the difficulty facing courts when confronted with civil subpoenas seeking disclosure of identifying information for anonymous Internet users). To this end, courts must ensure that plaintiffs have made a "concrete" showing of a prima facie claim. *Sony,* 326 F. Supp. 2d at 565. For the plaintiffs to establish a prima facie claim of copyright infringement, they must demonstrate: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991).

Plaintiffs have adequately demonstrated a prima facie claim of copyright infringement against the putative defendants. First, the plaintiffs allege that they are "holder[s] of the pertinent exclusive rights infringed by Defendants" and cite to certificates of copyrights issued by the Registrar of Copyrights. Amended Compl., *Wild,* ¶ 10; *see also* Amended Compl. *Maverick,* ¶ 9; Compl., *Donkeyball,* No. 10-1520, ¶ 10. The plaintiffs further assert that the putative defendants violated the plaintiffs' exclusive rights of reproduction and distribution when

they, "without the permission or consent of Plaintiff[s], distributed the Copyrighted Motion

Picture[s] to the public, including by making available for distribution to others." *Id.* at ¶ 12.

The plaintiffs support these allegations by supplying the date and time that the alleged

infringement occurred, along with affidavits from Messrs. Benjamin Perino and Patrick Achache

describing the process by which the defendants' infringement was observed, recorded, and

verified.[8] Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild*, ECF No. 2,

Benjamin Perino Decl., Patrick Achache Decl.; Pl.'s Mot. for Leave to Take Disc. Prior to Rule

26(f) Conference, *Maverick*, ECF Nos. 4-6, Benjamin Perino Decl., Patrick Achache Decl.; Pl.'s

Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Donkeyball*, ECF No. 4, Benjamin

Perino Decl., Patrick Achache Decl. Accordingly, the plaintiffs have appropriately pled a prima

facie claim of copyright infringement against the putative defendants.

   *2. The Specificity of the Plaintiffs' Discovery Requests*

   The second *Sony* factor weighs the specificity of the plaintiffs' requests for identifying

information. This factor is intended to keep the plaintiffs' request narrow so as to prevent

overbroad discovery requests that "unreasonably invade[] the anonymity of users who are not

alleged to have infringed . . . ." *London-Sires,* 542 F. Supp. 2d. at 178. In *Wild, Maverick,* and

*Donkeyball*, the Court granted the plaintiffs leave to subpoena ISPs for the putative defendants'

name, current and permanent address, telephone number, e-mail address, and Media Access

---

[8] During oral argument, Amici noted that the declarations of Messrs. Perino and Achache submitted by plaintiffs in support of their motions for leave to take expedited discovery in *Wild* and *Maverick* are dated December 31, 2009, even though a number of the putative defendants are alleged to have engaged in infringing activity after that date. Transcript of Mot. Hearing, at 46-47, Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011); *see also* Pl.'s Mot. Leave to Take Expedited Disc., *Maverick*, ECF No. 4, Benjamin Perino Decl., ¶ 11; Pl.'s Mot. Leave to Take Expedited Disc., *Donkeyball*, ECF No. 4, Benjamin Perino Decl., ¶ 11. These declarations only purport to describe the procedures used to identify those accused of illegally distributing plaintiffs' motion pictures and, thus, the date of that description does not undercut the claims against the putative defendants, as Amici appear to imply.

Control address.  Order Granting Pl.'s Mot. Expedited Discovery, at 2, *Wild*, Apr. 15, 2010, ECF

No. 4; Order Granting Pl. Mot. Expedited Discovery, *Maverick*, May, 24 2010, ECF No. 7,;

Order Granting Expedited Discovery, *Donkeyball*, Oct. 19, 2010, ECF No. 6.  This information

will enable the plaintiffs to properly name and serve the putative defendants.  By court order, this

information "may be used by the plaintiff solely for the purpose of protecting the plaintiff's

rights as set forth in the complaint." *Id.*  These limited discovery requests, along with the

restrictions imposed by the Court, are specifically targeted to obtain the information plaintiffs

need to prosecute their lawsuits.

### 3. No Alternate Means to Obtain the Information

The third *Sony* factor inquires whether the plaintiffs have any other means to obtain the

defendants' identifying information other than compelling the information from ISPs.  The

plaintiffs state that without expedited discovery the "Plaintiff[s] ha[ve] no way of serving

Defendants with the complaint and summons in this case.  Plaintiff[s] do[] not have Defendants'

names, addresses, e-mail addresses, or any other way to identify or locate Defendants, other than

the unique IP address assigned to each Defendant by his/her ISP on the date and at the time of

the Defendant's infringing activity." Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f)

Conference, *Wild*, ECF No. 2, Benjamin Perino Decl., ¶ 11.  Amici and Time Warner do not

dispute that the plaintiffs have no other sources for the information they seek.

### 4. Plaintiffs' Need for the Information

The plaintiffs have sufficiently alleged prima facie claims of copyright infringement

against the putative defendants, and have also demonstrated that there are no alternate means to

obtain the defendants' identifying information.  Without this information from the ISPs, the

plaintiffs cannot name and serve those whom they allege to have infringed upon their copyrights.

Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference, *Wild,* ECF No. 2, Benjamin

Perino Decl., ¶ 11. ("Without expedited discovery . . . Plaintiff[s] [have] no way of serving

Defendants with the complaint and summons in this case."). The putative defendants'

identifying information is therefore critical to the plaintiffs' cases.

   *5. The Putative Defendants' Expectation of Privacy*

   As previously discussed, the putative defendants have minimal First Amendment

protection against disclosure of their identities in the face of the plaintiffs' allegations that they

infringed the plaintiffs' copyrights. Their expectation of privacy is similarly minimal in this

context.

   This conclusion is underscored by Time Warner's Terms of Service, which specifically

warns customers against engaging in illegal infringing activity, with the penalty of termination or

suspension of service:

> "Time Warner Cable's subscribers and account holders may not upload, post,
> transmit or otherwise make available on or via the Road Runner Service any
> material protected by copyright in a manner that infringes that copyright. In
> accord with the Digital Millennium Copyright Act, it is the policy of Time
> Warner Cable to terminate in appropriate circumstances the Road Runner Service
> of any subscriber or account holder who is a repeat infringer. . . . Time Warner
> Cable expressly reserves the right to terminate or suspend the service of any
> subscriber or account holder even for a single act of infringement."

Time Warner's Reply to Pl.'s Opposition to Time Warner's Mot. Quash, *Donkeyball,* ECF No.

16, at 8 n.2.

   Further, available on Time Warner's website is the Time Warner Cable Subscriber

Privacy Notice, which is provided to users "upon initiation of service and annually thereafter."

TIME WARNER CABLE SUBSCRIBER PRIVACY NOTICE (July 2010), *available at http://help.tw*

*cable.com/html/twc_privacy_notice.html.* This notice informs customers that Federal law

requires Time Warner to "disclose personally identifiable information to a governmental entity

or other third parties pursuant to certain legal process . . . [Time Warner] will comply with legal process when we believe in our discretion that we are required to do so. We will also disclose any information in our possession to protect our rights, property and/or operations, or where circumstances suggest that individual or public safety is in peril." *Id.*

Time Warner informed its customers that it was monitoring for instances of copyright infringement, and if a customer did engage in such conduct, Time Warner would likely terminate or suspend the customer's service. Time Warner's privacy notice also explicitly informs customers that their information could be disclosed upon court order. Thus, under these circumstances, the putative defendants have little to no expectation of privacy while engaging in allegedly infringing activities about which they are warned against. *See generally Sony*, 326 F. Supp. 2d at 566-67 (minimal expectation of privacy when ISP's terms of service prohibit copyright infringement and state that information can be relayed to law enforcement).

## C. DEFENDANTS' FIRST AMENDMENT RIGHTS DO NOT PREVENT DISCLOSURE OF IDENTIFYING INFORMATION

Upon balancing the putative defendants' First Amendment rights to anonymity and the plaintiffs' need for the identifying information, the Court finds that the plaintiffs' need overrides the putative defendants' right to use BitTorrent anonymously. The putative defendants' asserted First Amendment right to anonymity in this context does not shield them from allegations of copyright infringement. The plaintiffs therefore may obtain from ISPs information identifying the putative defendants.

## V. TIME WARNER'S MOTION TO QUASH

Having considered the arguments put forth by Amici in support of Time Warner's Motion to Quash, the Court turns to Time Warner's own arguments to quash the plaintiffs'

subpoenas pursuant to Federal Rule of Civil Procedure 45(c). Time Warner argues that
producing the requested information would subject it to an undue burden and, if the subpoenas
are not quashed, seeks to modify the subpoenas to limit Time Warner's compliance to production
of identifying information for 28 IP addresses per month.[9]  For the reasons discussed below,
Time Warner has failed to demonstrate that the burdens associated with producing the requested
information justify quashing the plaintiffs' subpoenas or limiting Time Warner's production
obligations.

## A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45, the Court must quash a subpoena issued
to a nonparty if the subpoena subjects the nonparty to an undue burden or expense. FED. R. CIV.
P. 45(c).  The nonparty seeking relief from subpoena compliance bears the burden of
demonstrating that a subpoena should be modified or quashed. *See Linder v. Dep't of Defense*,
133 F. 3d 17, 24 (D.C. Cir. 1998); *In re Micron Technology Inc. Securities Lit.*, 264 F.R.D. 7, 9
(D.D.C. 2010); *Achte/Neunte*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010).

Quashing subpoenas "goes against courts' general preference for a broad scope of
discovery, [but] limiting discovery is appropriate when the burden of providing the documents
outweighs the need for it." *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51
(D.D.C. 2005) (internal citations omitted).  When evaluating whether the burden of subpoena
compliance is "undue," the court balances the burden imposed on the party subject to the
subpoena by the discovery request, the relevance of the information sought to the claims or

---

[9] Time Warner notes that another judge in this district also denied Time Warner's motions to quash in two file-sharing cases, but granted a protective order limiting Time Warner's subpoena production obligations in those cases to only 28 IP addresses a month. *See Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1 - 4,577*, No. 10-cv-00453, ECF No. 33 (D.D.C. July 2, 2010) (Collyer, J.); West *Bay One, Inc. v. Does 1-1653*, No. 10-cv-00481, ECF No. 24 (D.D.C. July 2, 2010) (Collyer, J.).  This Court is not bound by findings in other cases and, in any event, this Court evaluated information not directly considered by the other court, including Time Warner's efforts to preserve the requested information, and supplemental affidavits from plaintiffs, Time Warner, and Amici.

defenses at issue, the breadth of the discovery request, and the litigant's need for the information.

*See id.* at 51; *Linder,* 133 F.3d at 24 ("Whether a burdensome subpoena is reasonable must be

determined according to the facts of the case, such as the party's need for the documents and the

nature and importance of the litigation.") (internal quotations omitted); *Achte/Neunte*, 736 F.

Supp. 2d at 214. The court must limit discovery when the "burden or expense of the proposed

discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the

importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). The 'undue

burden' test also requires the court to be "generally sensitive to the costs imposed on third-

parties." *In re Micron Tech.,* 264 F.R.D. at 9.

### B. EVALUATING TIME WARNER'S BURDEN

At the outset, Time Warner does not dispute that the identifying information sought by

the subpoenas is critical to the plaintiffs' lawsuits since without production of this information,

the plaintiffs are unable to name and serve the putative defendants. In addition, Time Warner

does not claim that the subpoenas seek any more information than the Court authorized: namely,

"information sufficient to identify each defendant, including his or her name, current and

permanent address(es), telephone number(s), e-mail address(es), and Media Access Control

address(es)."  Order Granting Expedited Disc., *Wild*, ECF No. 4, Apr. 15, 2010; Order Granting

Expedited Disc., *Maverick*, ECF No. 7, May, 24 2010; Order Granting Expedited Disc.,

*Donkeyball*, ECF No. 6, Oct. 19, 2010.  Thus, the plaintiffs' requests are not unspecific,

undefined or unduly broad. *Cf. North Carolina Right to Life*, 231 F.R.D. at 52 (quashing

subpoena in part because discovery request sought "vast array of documents arising from

'contacts'" between parties).

Nevertheless, Time Warner characterizes plaintiffs' discovery demands as "overbroad." Time Warner Mem. Supp. Mot. Quash, *Wild*, at 12. The respective plaintiffs in these three cases subpoenaed Time Warner for information relating to a total of 1,028 IP addresses. Time Warner Mot. Quash, *Wild*, ECF No. 7, Ex. 1 (224 IP addresses); Time Warner Mot. Quash, *Maverick*, ECF No. 18, Ex. 1 (783 IP addresses); Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 1 (21 IP addresses). The overbreadth that Time Warner complains of is due to the large number of Time Warner's customers allegedly engaging in infringing activities and prompting the plaintiffs' need for their identifying information. This, however, does not render the subpoenas overbroad in terms of the information requested about each defendant.

Thus, Time Warner's principle contention is that, due to the large number of its customers allegedly engaging in online infringing activities, it would "suffer significant harms" and "incur significant costs" because compliance with requests for identifying information about those customers would "overwhelm" its capacity and "completely absorb the resources for many months." Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. dated Dec. 10, 2010, ¶¶ 9,12; *see also* Time Warner Mot. Quash, *Maverick*, ECF No. 18, Craig Goldberg Aff. dated Nov. 22, 2010, ¶¶ 9,12; Time Warner Mot. Quash, *Wild*, ECF No. 7, Craig Goldberg Aff. dated May 10, 2010, ¶¶ 7, 9. To support its motions, Time Warner initially submitted a single four-page affidavit by Craig Goldberg, Assistant Chief Counsel, Litigation and Time Warner's Chief Privacy Officer, in all three cases. This affidavit provided general and conclusory information about the Time Warner subpoena compliance process. Following oral argument on Time Warner's motions to quash, the company supplemented the record with an

additional affidavit.[10] Notwithstanding the supplemental affidavit, Time Warner has failed to

demonstrate that complying with the plaintiffs' subpoenas would subject it to an undue burden.

Time Warner describes its subpoena compliance operations as follows: Within its legal

department, Time Warner has a "subpoena compliance team" comprised of five full-time

employees and one temporary employee who focus "exclusively" on responding to subpoena

requests, court orders, and National Security Letters. Time Warner Mot. Quash, *Donkeyball*,

ECF No. 7, Goldberg Aff. dated Dec. 10, 2010, at ¶ 3; *see also* Time Warner Mot. Quash,

*Maverick*, ECF No. 18, Craig Goldberg Aff. dated Nov. 22, 2010; Time Warner Mot. Quash,

*Wild*, ECF No. 7, Craig Goldberg Aff. dated May 10, 2010. In both its unsealed and sealed

affidavits, Time Warner indicates that it received approximately 567 IP lookup requests a month,

mostly from law enforcement, but does not specify over what period of time this was the average

number.[11] *Id.* at ¶ 6. In both affidavits Time Warner also contends that it cannot divert any more

resources toward responding to subpoena requests "without harming its efforts to assist law

enforcement and overburdening [Time Warner's] subpoena response team." *Id.* at ¶ 8. Time

Warner complains that, from February to December 2010, Time Warner "received over two

---

[10] Time Warner moved for, and the Court granted, leave to file a supplemental affidavit under seal because Time Warner represented that the supplemental affidavit relayed "highly proprietary" and "competitively sensitive information the disclosure of which could harm TWC's business interests," and prejudice both TWC and law enforcement. Time Warner's Mot. for Leave to File Affidavit Under Seal, *Wild*, ECF No. 38, March 17, 2011; Minute Order, *Wild*, March 22, 2011 (granting leave to file affidavit under seal); Time Warner's Mot. for Leave to File Affidavit Under Seal, *Maverick*, ECF No. 45, March 17, 2011; Minute Order, *Maverick*, March 17, 2011 (granting leave to file affidavit under seal); Time Warner's Mot. for Leave to File Affidavit Under Seal, *Donkeyball*, ECF No. 23, March 17, 2011; Minute Order, *Donkeyball*, March 17, 2011 (granting leave to file affidavit under seal). The sealed, supplemental affidavit contains certain information already provided to the Court in the initial, public affidavit, and the Court is hard-pressed to understand why the names of commercially available software and hardware equipment and tools used by Time Warner warrant sealing. Therefore, the Court will order Time Warner to review the sealed, supplemental affidavit and to file publicly a version from which Time Warner has redacted only the information that reflects clearly proprietary and security sensitive information. For each item redacted, Time Warner is required to provide the Court with an explanation specifying what makes the redacted information "proprietary" or "security sensitive."

[11] Time Warner states this was the average number of IP lookup requests "[p]rior to requests associated with file-sharing litigation." Without more specific information about the time period, it is unclear whether that was the average number over the past year, the past five years, or some other time period.

dozen subpoenas" for 4,100 IP lookups in file-sharing cases from "private litigants," *id.* at ¶ 7, but provides no information about how many of these subpoenas originated from the plaintiffs or plaintiffs' counsel.

Time Warner states that producing the information requested by the plaintiffs is a "multi-step process" that "requires both centralized efforts at [Time Warner]'s corporate offices, as well as efforts at the local operations center where the relevant subscriber is located." *Id. at* ¶ 5. This "multi-step process" is not unusual. Most consumer IP addresses are 'dynamic' as opposed to 'static.' *See generally London-Sires*, 542 F. Supp. 2d at 160. Static IP addresses are addresses which remain set for a specific user. *Id.* Dynamic IP addresses are randomly assigned to internet users and change frequently. *Id.* Consequently, for dynamic IP addresses, a single IP address may be re-assigned to many different computers in a short period of time. *Id.* Associating a dynamic IP address with a particular customer at a given moment makes the task of "discovering the identity of a particular infringer more difficult." *Id.*; *see also U.S. v. Steiger*, 318 F.3d 1039, 1042 (11th Cir. 2003)("Static addresses are undoubtedly easier to trace, but ISPs generally log the assignments of their dynamic addresses."). This requires ISPs to maintain logs and other records, and to use commercially available or customized software tools, to correlate the IP address assigned to a computer at a specific moment with the subscriber's account information in order to identify a customer from the IP address, either for the ISPs own internal business purposes or to respond to subpoenas requesting identifying information about a customer. *See, e.g., Klimas v. Comcast Cable Commc'n, Inc.*, 465 F.3d 271, 275 (6th Cir. 2006)("dynamic IP addresses constantly change and unless an IP address is correlated to some other information, such as Comcast's log of IP addresses assigned to its subscribers…, it does not identify any single subscriber by itself.")(internal quotations omitted);

Time Warner describes the process as "time consuming and can require the work of multiple people at multiple locations." Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. at ¶5. This information, even when supplemented by Time Warner's sealed affidavit, does not support Time Warner's contention that compliance with the plaintiffs' subpoenas in *Wild, Maverick*, and *Donkeyball* subject it to an undue burden. Time Warner concedes that in order to pursue its motions to quash it has already taken steps to isolate and preserve the information necessary to provide customer identifying information for the requested IP addresses. *See* Transcript of Mot. Hearing at 9, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (Time Warner's counsel states that its client has "incurred a substantial burden already" by preserving the data.). It has been eleven months since Time Warner was issued a subpoena in *Wild*, six months since the subpoena in *Maverick* was issued, and four months since the subpoena in *Donkeyball* was issued. Time Warner's Mot. Quash, *Wild*, ECF No. 7, Ex. 1, Subpoena dated April 30, 2010; Time Warner's Mot. Quash, *Maverick*, ECF No. 18, Ex. 1, Subpoena dated Sept. 14, 2010; Time Warner's Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 1, Subpoena dated Nov. 11, 2010. In this timeframe, Time Warner accomplished "fifty-percent or more" of the work necessary to respond to the subpoenas by isolating and preserving the data. Transcript of Mot. Hearing, at 12, *Call of the Wild Movie LLC v. Does 1-1,063*, No. 10-cv-455 (Mar. 1, 2011) (Time Warner's counsel stating that "something on the order of, you know, 50 percent or more [of the work] may have already been done"). If it took less than one year to complete fifty percent of the work, it is difficult to see why it will take over three more years, at 28 IP address lookups per month, to complete the production.

Time Warner's contention that it can only produce 28 IP addresses per month seems extraordinarily dilatory compared to the rate at which other ISPs are able to produce the

requested information. *See* Supplemental Declaration of Nicholas Kurtz, *Maverick*, ECF No. 42,

¶ 6 (relaying that in *Achte,* No. 10-cv-453 (D.D.C.) (Collyer, J.) and *West Bay One*, No. 10-cv-

481 (D.D.C.) (Collyer, J.) Comcast averaged 141 IP lookups a month, Charter averaged 199 IP

lookups a month, Cox averaged 113.43 IP lookups a month, and Verizon averaged 294.5 IP

lookups a month). Time Warner's description of its "multi-step" process indicates that, in

addition to the five-person subpoena compliance team, employees in its regional offices are able

to assist in the process of identifying the customers associated with particular IP addresses. This

suggests that when confronted with a large volume of subpoenas for identifying information

about its customers that may strain its subpoena compliance team, Time Warner has additional

resources already on staff in regional offices to address the production.

In addition, as part of the effort to resolve this discovery dispute without judicial

intervention, the plaintiffs' counsel offered to pay Time Warner to employ another temporary

worker to help respond to the plaintiffs' subpoena requests. Transcript of Mot. Hearing at 64,

Call of the Wild Movie LLC v. Does 1-1,063, No. 10-cv-455 (Mar. 1, 2011) (plaintiffs' counsel

states: "As a quick aside, in prior negotiations, we have offered to basically pay for a temporary

employee. We have paid for the production, even though I argue -- and I think it is legitimate --

that we arguably don't have to pay for these productions because it is already part of their

business."). Time Warner already employs a temporary worker to handle the volume of

subpoena requests it must process as part of its business operations. Thus, while the company is

under no obligation to accept this offer to defray costs, use of another temporary worker is not an

extraordinary or unusual solution but instead consistent with its normal business practice to

facilitate timely compliance with subpoenas.

Time Warner included with its general description of the subpoena compliance process a summary statement that the cost of producing identifying information for one IP address is $45. Time Warner Mot. Quash, *Donkeyball*, ECF No. 7, Ex. 2, Craig Goldberg Aff. at ¶ 11. The study underlying this cost estimate contains no detail about the process used for subpoena compliance, but only general numbers regarding total employee compensation and alleged time spent responding to IP lookup requests. Pl.'s Opposition Time Warner's Mot. Quash, *Wild*, ECF. No. 9, Ex. 2. Based on this estimate, the total cost to produce information in *Wild* would be "approximately $10,080," Time Warner Mem. Supp. Mot. Quash, *Wild,* ECF No. 7, at 9, and in *Maverick* and *Donkeyball* approximately "$36,180 (804 IP x $45 IP addresses), plus the costs of notifying each subscriber." Time Warner Mem. Supp. Mot. Quash, *Donkeyball,* ECF No. 7, at 9-10.

When granting the plaintiffs leave to subpoena ISPs, the Court allowed the ISPs to charge the plaintiffs for the costs of producing the requested information. Order Granting Pl.'s Mot. for Expedited Discovery, *Wild*, ECF No. 4, April 15, 2010, at 3-4 ("ORDERED that any ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP . . ."); Order Granting Pl.'s Mot. for Expedited Discovery, *Maverick*, ECF No. 7, May 24, 2010, at 3 ("ORDERED that any ISP which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP. . .) ; *See also* Order Granting Pl.'s Mot. for Expedited Discovery, *Donkeyball*, ECF No. 6, Oct. 19, 2010 (not specifically mentioning billing provision, but see Pl.'s Mot. for Expedited Discovery, *Donkeyball*, ECF No. 4, Ex. 3, Text of Proposed Order, at 2). In so far as Time Warner argues

that cost alone serves as a basis to quash plaintiffs' subpoenas, that position is unavailing since the plaintiffs will cover the cost, per the court order.

Time Warner has failed to demonstrate that compliance with the plaintiffs' subpoena requests would impose an undue burden. Although Time Warner asserts that producing the requested information is a "multi-step process," it admits that "more than fifty percent" of the work has already been done, with the identifying information subject to the subpoena isolated and preserved. The Court sees no reason why Time Warner cannot expeditiously complete the processing of this information for production to the plaintiffs.

Time Warner's motions to quash in *Wild, Maverick*, and *Donkeyball* on the basis that the subpoenas are unduly burdensome are therefore denied.

## C. TIME WARNER'S ALTERNATE ARGUMENTS TO QUASH PLAINTIFFS' SUBPOENAS

In *Wild* and *Maverick*, Time Warner proffers additional arguments to quash the plaintiffs' subpoenas. In *Wild*, Time Warner (1) asserts that plaintiffs' counsel breached an agreement that limited subpoena requests to 28 IP addresses a month, and (2) requests the Court to alter the parties' costs arrangement so as to order the plaintiff to pay Time Warner in advance of producing the requested information. Time Warner Mem. Supp. Mot. Quash, *Wild*, ECF No. 7, at 8, 11-12. In *Maverick*, Time Warner contends that the plaintiff did not properly serve Time Warner with its subpoena. Time Warner Mem. Supp. Mot. Quash, *Maverick*, ECF No. 18, at 15-17.

Time Warner has failed to demonstrate that the plaintiffs' subpoenas should be quashed in *Wild*. In *Wild*, there was no meeting of the minds between plaintiffs' counsel and Time Warner; and the Court additionally declines to alter the cost arrangement previously ordered by the Court. In *Maverick*, however, the plaintiff did not abide by the Federal Rules of Civil

Procedure when serving its subpoena. Time Warner's Motion to Quash in *Maverick* is therefore granted.

### 1. Purported Agreement to Limit Production in Wild

The Court first dispenses with Time Warner's argument that the Court should quash the plaintiff's subpoena in *Wild* because of a purported agreement with plaintiff's counsel to limit Time Warner's subpoena production to 28 IP addresses a month. In the District of Columbia, a valid contract requires "both (1) agreement as to all material terms; and (2) intention of the parties to be bound." *T Street Development, LLC v. Dereje and Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009). The Court primarily looks to intent of the parties entering into the agreement. *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 194 (D.C. 1990). Intent is an objective inquiry that the Court assesses by asking "what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (quoting *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C.1984)). The burden of proof that a contract exists falls on the party attempting to enforce the agreement. *See Novecon Ltd. v. Bulgarian-American Enterp. Fund*, 190 F.3d 556 (D.C. Cir. 1999).

Time Warner argues that it reached a "negotiated agreement" with plaintiffs' counsel that Time Warner would provide the plaintiff with information for 28 IP addresses a month "with the specific acknowledgement that it applied to all future subpoenas that [plaintiffs' counsel] served on [Time Warner]." Time Warner Mem. Supp. Mot. Quash, *Wild*, at 8. This agreement was not memorialized in a signed document, but rather, according to Time Warner, was negotiated and agreed to in string of emails dated March 19, 2010 discussing subpoena production in other file-sharing cases. Time Warner's Mot. Quash, *Wild*, ECF No. 7, Ex. 3. The Court has reviewed the emails cited by Time Warner and finds that there was no meeting of the minds and no evidence

37

that plaintiff's counsel agreed to limit Time Warner's obligations under the subpoenas to

production of 28 IP addresses a month for all his clients, present and future. On the contrary, the

last email sent by plaintiff's counsel Thomas Dunlap makes clear that he anticipated additional

requests for IP lookups. *Id.*, Ex. 3 (email from Thomas M. Dunlap to Craig Goldberg Re:

Subpoenas to TWC, dated March 19, 2010, 3:47 PM states: "[w]e may need to request more

subpoenas, however we will discuss this with you before we send it over so we can work out a

timetable and method.") Time Warner's contention that a prior agreement limits Time Warner's

subpoena compliance obligations in *Wild* is therefore unsuccessful.

    *2. Cost-Shifting in Wild*

    In *Wild,* Time Warner requests that the Court alter the cost arrangement set forth in the

Court's April 15, 2010 order, in which the Court granted the plaintiff leave to subpoena ISPs for

identifying information regarding the putative defendants. Order Granting the Plaintiff's Mot. for

Expedited Discovery, *Wild*, ECF No. 4. In that Order, the Court specifically stated that:

> ". . . any ISP that receives a subpoena pursuant to this Memorandum Order shall
> *not assess any charge to the plaintiff before providing the information* requested
> in the Rule 45 subpoena, nor shall the ISP assess a charge to the plaintiff in
> connection with IP addresses that are not controlled by that ISP, *duplicate IP*
> *addresses that resolve to the same individual*, other IP addresses that do not
> provide the name and other information requested of a unique individual or for
> the ISP's internal costs incurred to notify the ISP's customers; and it is
>
> **ORDERED** that any ISP that receives a subpoena and elects to charge for the
> costs of production shall provide a billing summary and any cost reports that
> serve as a basis for such billing summary and any costs claimed by such ISP . . ."

*Id.* at 3-4 (emphasis supplied). Time Warner now requests that the Court alter that arrangement

so that Time Warner is paid in advance of providing the requested information to the plaintiff,

and is paid "on a per-IP-address basis, rather than per subscriber." Time Warner Mem. Supp.

Mot. Quash, *Wild*, at 11-12. Time Warner has proffered no complaints about plaintiffs' inability

or refusal to pay for subpoena compliance that would justify alteration of the order to a pre-payment plan. Nor does Time Warner contend that it is under such a financial hardship that pre-payment is required.

No other ISP subpoenaed by the plaintiff in *Wild* has come forward requesting that the order to be modified on grounds that this cost arrangement is unfair and the Court declines to make an exception for Time Warner, particularly given the paucity of the reasons proffered for the requested changes.

### 3. Improper Service of the Plaintiff's Subpoena in Maverick

As an alternate basis to quash the plaintiff's subpoena in *Maverick*, Time Warner asserts that the plaintiff did not serve its subpoena in accordance with Rule 45(b) of the Federal Rules of Civil Procedure. Specifically, Time Warner asserts that the plaintiff faxed and emailed Time Warner the *Maverick* subpoena, but never delivered the subpoena to a named person.

Under Federal Rule of Civil Procedure 45(b), "serving a subpoena requires delivering a copy to the named person." The "longstanding interpretation of Rule 45 has been that personal service of subpoenas is required. The use of the word "delivering" in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2454 (2010). A minority of courts have broadened the interpretation of Rule 45(b) and held that personal in-hand service is not required. *See, e.g., Hall v. Sullivan*, 229 F.R.D. 501, 506 (D. Md. 2005) ("no reason to require in-hand delivery of subpoenas [*duces tecum*]-so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness."). Courts in this jurisdiction have not followed this path. *See, e.g., U.S. v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 36-37 (D.D.C. 2004) (stating that "FED. R. CIV. P. 45(b) (1) requires personal service of deposition

subpoenas" and quashing subpoenas left in the party's mail room); *Alexander v. F.B.I.*, 186

F.R.D. 128, 130 (D.D.C. 1998) (stating that it is "well settled that, under FED. R. CIV. P. 45(b),

[the non-party's] deposition subpoena must have been personally served upon him").

It is undisputed that in *Maverick* plaintiff's counsel forwarded the subpoena as an

attachment to an email to Time Warner's counsel on September 14, 2010. Pl.'s Opp'n To Time

Warner Mot. Quash, ECF No. 22, Ex. 1 (email from Nicholas Kurtz to Alexander Maltas dated

Sept. 14, 2010, 3:53 PM). In the text of the email, plaintiff's counsel asked Time Warner's

counsel to accept service by email of the plaintiff's subpoena. *Id.* The following day, Time

Warner's counsel responded via email that he was not authorized to accept such service. Time

Warner's Mot. Quash, *Maverick*, ECF No. 18, Ex. 5 (Letter from Alexander Maltas to Thomas

Dunlap and Nicholas Kurtz dated October 13, 2010). Despite this disavowal of service, a week

later, on September 22, 2010, a Time Warner representative named "Tammi" called plaintiff's

counsel and told him that she would be working on the subpoena and requested that he email a

copy to her. Pl.'s Opp'n Time Warner's Mot. Quash, *Maverick*, ECF No. 22, Nicholas Kurtz

Decl., ¶ 4 and Ex. 2 (Kurtz email to 'subpoena.compliance@twccable.com' dated Sept. 22, 2010:

"Pursuant to my telephone conversation with Tammi, attached is the Excel spreadsheet for the

Maverick civil subpoena. I have also attached a PDF of the subpoena for your convenience.").

On October 13, 2010, Time Warner sent the plaintiff a letter stating that Time Warner had yet to

be properly served with plaintiff's subpoena in *Maverick*. Time Warner's Mot. Quash, *Maverick*,

ECF No. 18, Ex. 5 (Letter from Alexander Maltas to Thomas Dunlap and Nicholas Kurtz, dated

October 13, 2010). Nevertheless, the plaintiff did not take steps to deliver the subpoena

personally and relied solely upon service by fax and email.[12]

---

[12] Plaintiff argues that Time Warner's "own subpoena compliance website states that [Time Warner] 'accepts lawful process by fax.'" Pl.'s Mem. Opp'n Time Warner's Mot. Quash, *Maverick*, ECF No. 22, at 16; Kurtz Decl., Ex. 6

The Federal Rules of Civil Procedure requires personal service of subpoenas. *See* FED. R. CIV. P. 45(b) (1). The Court acknowledges that strict adherence to the literal interpretation of Rule 45(b)(1) may place form over substance, particularly when, as here, the subpoenaed party acknowledges that it received the subpoena at issue and has a history of multiple contacts over subpoena compliance with the sender of the subpoena. At the same time, however, the plaintiff is required to comply with Rule 45(b) (1).

In a last gasp effort to avoid the quashing of the subpoena in *Maverick*, plaintiff's counsel argues -- without citation to any legal authority for this waiver argument -- that Time Warner's filing of the instant motion constitutes a waiver of its jurisdictional claim of improper service. Pl.'s Mem. Opp'n Time Warner's Mot. Quash, ECF 22 at 16. This argument is specious. The federal rules permit defendants to simultaneously seek relief and raise a jurisdictional defense without waiver. *See* FED. R. CIV. P. 12(b)(2), (4)-(5) (defendant may move for dismissal based on the court's lack of personal jurisdiction, the insufficiency of process, or the insufficiency of service of process). It simply would be unfair to treat a motion premised on a jurisdictional objection as simultaneously operating as a waiver of that very objection. *United States v. Ligas*, 549 F.3d 497, 503 (7th Cir. 2008) (party's motion to quash does not mean that by making the motion he waived his objection to personal jurisdiction, citing *PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 461 (5th Cir. 2001); *Neifeld v. Steinberg*, 438 F.2d 423, 425 n.4 (3d Cir. 1971) (declining to find defendant waived jurisdictional objection

(TIME WARNER CABLE, NOTES FOR LAW ENFORCEMENT AND PSAPs WHEN SERVING SUBPOENAS, COURT ORDERS, AND OTHER LAWFUL PROCESS ON TIME WARNER CABLE SEEKING HIGH-SPEED DATA (INTERNET), TELEPHONE, AND VIDEO SUBSCRIBER DATA (Nov. 16, 2010), *available at* http://www.timewarnercable.com/corporate/subpoena compliance.html.). The website referenced by plaintiff provides guidance only for subpoena requests from "law enforcement and PSAPs." PSAP is an acronym for "Public Safety Answering Points," which are emergency call centers responsible for answering calls for police, firefighters, and ambulance services. The website does not apply to the subpoenas issued in civil legal proceedings and is not intended to apply to the plaintiff. Plaintiff's contention that Time Warner waived FED. R. CIV. P. 45(b)'s requirements for proper service for all subpoena requests through directions to law enforcement and emergency personnel on this website is therefore baseless.

when it filed a motion to extinguish a writ of attachment and a motion to dismiss for lack of jurisdiction).

The Court grants Time Warner's motion to quash the subpoena in *Maverick* because the plaintiff did not abide by the requirements of Rule 45(b)(1) and personally serve its subpoena to a named person. The plaintiff is granted leave to re-issue its subpoena to Time Warner within ten days from entry of the order quashing the subpoena. If plaintiff fails to serve its subpoena within 10 days and file proof of service with the Court, the putative defendants listed in the plaintiff's original subpoena to Time Warner, dated September 14, 2010, shall be dismissed.

## CONCLUSION

For the reasons set forth above, the Court DENIES Time Warner's Motions to Quash the Subpoena in *Wild*, No. 10-cv-455, and *Donkeyball*, No. 10-cv-1520; and GRANTS Time Warner's Motion to Quash in *Maverick*, No. 10-cv-569. An Order consistent with this Memorandum Opinion will be entered.

**SO ORDERED**.

March 22, 2011

/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge